UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALLISON GIORGIO, ASHLEY RODRIGUEZ, JENNIFER TORRES, NANCY OWEN, ANTOINETTE WACHTL, individually and on behalf of all other similarly situated,

Plaintiffs,

-against-

WW INTERNATIONAL, INC., WW.COM, LLC WEEKEND HEALTH OF TEXAS, PA, WEEKEND HEALTH OF NEW JERSEY P.C., WEEKEND HEALTH OF PENNSYLVANIA, P.C., AND BRANTLEY T. JOLLY, J.D., PROF. CORP.,

Defendants.

Case No.: 1:25-CV-02944-RA

**DEFENDANTS' REPLY MEMORANDUM**
**IN SUPPORT OF MOTION TO COMPEL INDIVIDUAL ARBITRATION**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 1

I. The Motion Should be Granted ..... 1

A. Defendants Have Demonstrated That An Agreement To Arbitrate Exists ..... 1

1. Wachtl Had Notice and Agreed to the December 2024 Membership Agreement ..... 2

2. Wachtl Accepted Additional Terms Containing An Arbitration Provision ..... 8

B. Wachtl Has Not Met Her Burden To Avoid Arbitration ..... 8

1. The December 2024 Membership Agreement is the Operative Agreement ..... 8

2. Wachtl's Inability to Recall Her Sign Up Experience Does Not Establish Lack of Consent ..... 10

3. The Scope of the Arbitration Provision Is Delegated to the Arbitrator ..... 11

4. The Arbitration Provision Encompasses Wachtl's Claims ..... 12

5. Wachtl Has Waived Her Right To File A Class Action ..... 13

CONCLUSION ..... 13

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Bennett v. Barclays Bank Delaware*
No. 24 CIV. 6549 (LGS), 2025 WL 2690390 (S.D.N.Y. Sept. 19, 2025)................................9

*Cape Flattery Ltd. v. Titan Maritime, LLC*
647 F.3d 914 (9th Cir. 2011) ....................................................................................11

*Chabolla v. ClassPass Inc.*
129 F.4th 1147 (9th Cir. 2025) ...............................................................................5, 6

*Cullum v. Wyndham Hotels & Resorts Corp*.
No. 1:22-CV-09700-LTS-SN, 2024 WL 552494 (S.D.N.Y. Feb. 12, 2024), *reconsideration denied*, No. 1:22-CV-09700-LTS-SN, 2024 WL 3104517 (S.D.N.Y. June 24, 2024), *aff'd*, No. 24-1949, 2025 WL 2020942 (2d Cir. Apr. 10, 2025) ......................1

*Davitashvili v. Grubhub Inc*.
131 F.4th 109 (2d Cir. 2025) .......................................................................................9

*Edmundson v. Klarna, Inc*.
85 F.4th 695 (2d Cir. 2023) ....................................................................................6, 7

*Flores v. Chime Fin., Inc*.
No. 21-CV-4735 (RA), 2022 WL 873252 (S.D.N.Y. Mar. 23, 2022)...........................8, 10, 11

*FUJIFILM N. Am. Corp. v. Geleshmall Enters. LLC*
239 F. Supp. 3d 640, 649 (E.D.N.Y. 2017). ..............................................................13

*Greene v. Subcontracting Concepts, LLC*
No. 13 CIV. 01500 AJN, 2014 WL 1087999 (S.D.N.Y. Mar. 19, 2014)...............................12

*Lapina v. Men Women N.Y. Model Mgmt. Inc*.
86 F. Supp. 3d 277 (S.D.N.Y. 2015)...........................................................................12

*Moise v. Family Dollar Stores of New York*
No. 16-CV-6314 (RA), 2017 WL 2378193 (S.D.N.Y. June 1, 2017) (Abrams, J.) ..........10, 11

*Mullo v. DoorDash, Inc*.
No. 22-CV-2430 (VEC), 2023 WL 1971897 (S.D.N.Y. Jan. 17, 2023).................................13

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*
770 F.3d 1010 (2d Cir. 2014)........................................................................................12

*PB Life & Annuity Co. v. Universal Life Ins. Co*.
No. 20-CV-2284 (LJL), 2020 WL 2476170 (S.D.N.Y. May 12, 2020) ...........................11, 12

*Rodriguez v. Festival Fun Parks, LLC*
763 F. Supp. 3d 336 (E.D.N.Y. 2025) ....................................................................2, 3, 4

*Sacchi v. Verizon Online LLC*
No. 14-CV-423-RA, 2015 WL 765940 (S.D.N.Y. Feb. 23, 2015).....................................9, 10

*Specht v. Netscape Commc'ns Corp.*
306 F.3d 17 (2d Cir. 2002)..........................................................................................13

*Starke v. Gilt Groupe, Inc.*
No. 13 CIV. 5497 LLS, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014)...............................7, 13

*Teta v. Go New York Tours, Inc.*
738 F. Supp. 3d 502 (S.D.N.Y. 2024), *motion to certify appeal denied*, No. 24-CV-01614 (ER), 2024 WL 4850844 (S.D.N.Y. Nov. 21, 2024) ..................................................8, 9

## PRELIMINARY STATEMENT

Defendants[1] have more than met their burden to compel arbitration by providing clear evidence that Plaintiff Wachtl[2] assented to the December 2024 Membership Agreement—an agreement that contains a broad Arbitration Provision. The record demonstrates both that the relevant screens seen by Wachtl provided conspicuous notice of the relevant terms and that Wachtl could not have created her account without affirmatively indicating her assent to them. Critically, Plaintiffs offer no competing evidence of what occurred during Wachtl's account creation. Instead, they attempt to muddy the waters by mischaracterizing documents and testimony, and arguing about the Clinic Quiz which his not the basis for the Motion, all while ignoring evidence that does not suit them. No amount of misdirection can change the fact that the Arbitration Provision encompasses Wachtl's claims, and Plaintiffs have not—and cannot—meet their burden to avoid enforcement.

## ARGUMENT

### I. The Motion Should be Granted

#### A. Defendants Have Demonstrated That An Agreement To Arbitrate Exists

Defendants have carried their burden to require arbitration of Wachtl's claims. As explained in the Motion (ECF 48-1), "the party seeking arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made' however, '[t]his burden may be satisfied by the actual production of the arbitration agreement[.]" *Cullum v. Wyndham Hotels & Resorts Corp.*, 2024 WL 552494, at *5 (S.D.N.Y. Feb. 12, 2024), *reconsideration denied*, 2024 WL

---

[1] Capitalized terms not otherwise defined have the meanings ascribed to them in the Motion.

[2] As noted by Plaintiffs in their Opposition ("Opp.") (ECF 75), Plaintiff Owens intends to dismiss her claims. She also did not sit for the Court-ordered deposition. Accordingly, this reply addresses only Wachtl.

3104517 (S.D.N.Y. June 24, 2024), *aff'd*, 2025 WL 2020942 (2d Cir. Apr. 10, 2025) (internal citations omitted). Defendants met their burden by (1) producing the December 2024 Membership Agreement containing the Arbitration Provision; (2) submitting a declaration attesting that Wachtl agreed to the December 2024 Membership Agreement; and (3) providing Edward Cai's (WeightWatchers' Vice President of Engineering) testimony confirming the December 2024 Membership Agreement was live when Wachtl signed up and she could not create her account without assenting.[3]

1. <u>Wachtl Had Notice and Agreed to the December 2024 Membership Agreement</u>

Plaintiffs' argument that Defendants "did not provide notice or obtain Plaintiff Wachtl's assent" to the December 2024 Membership Agreement (Opp. 12-13) is wholly meritless—the sign-up flow constitutes a valid clickwrap. Plaintiffs' contention that a checkbox was too far from the hyperlinked "Membership Agreement" to create a valid clickwrap agreement does not withstand scrutiny. (*See id*. at 14.) Plaintiffs rely on *Rodriguez v. Festival Fun Parks, LLC*, 763 F. Supp. 3d 336, 354 (E.D.N.Y. 2025), which found no assent where the action button was not "directly adjacent" to the presentation of the terms. (Opp. 14.) One need only look at the screen in *Rodriguez*, however, to see it is clearly distinguishable:

**<u>FIGURE 1</u>**[4]

[3] (Ex. 1, 98:15-99:13 (Cai checked the code that was live on December 31, 2024 and confirmed that a user could not click "next step" without checking the boxes on the sign up screen).) Plaintiffs do not dispute that WW's systems were configured to prevent account creation unless the Membership Agreement checkbox was selected.

[4] *Rodriguez*, 763 F. Supp. 3d at 343.




As explained in *Rodriguez* (which was not a clickwrap case with mandatory checkbox to allow the system to proceed), "[b]ased on this layout, organization, and formatting, it is not clear and conspicuous that the 'Terms&Conditions' link is associated with the act of purchasing a ticket through engagement with the material in the light grey rectangle on the right-hand side of the page." 763 F. Supp. 3d at 353. The *Rodriquez* screen is nothing like what Wachtl saw when creating her WW account:

**<u>FIGURE 2</u>**[5]

[5] The only sign up screen relevant to the Motion is depicted in Figure 2, which is what Wachtl saw when creating her account. While the Opposition devotes substantial attention to subsequent modifications to the sign-up process, the fact that Defendants updated the Website does not "confirm [its] prior inadequacy" (Opp. 6), and Plaintiffs cite no authority to support such inference.




Here, unlike in *Rodriguez*, the layout and text ("I acknowledge …") makes it clear that Defendants employed a valid clickwrap agreement format with assent to the Membership Agreement directly tied to the act of creating an account.

Plaintiffs misstate Cai's testimony, claiming he conceded the checkbox did not equate to assent for the Membership Agreement. (Opp. 14.) Although Cai initially did not see the checkbox, he clarified: "Oh, there is next to it. It's … sort of like, one section with a checkbox next to it." (Ex. 1, 100:9-13.) Cai did not give the testimony Plaintiffs attribute to him. Assent does not turn

on an engineer's recollection of pixel placement, but on whether the system permitted account creation absent agreement and the undisputed evidence is that it did not.

Even if the Court were to disregard the checkbox mechanism, Wachtl still manifested assent by clicking the "Next Step" button after being presented with clear language stating that account creation constituted agreement to the Membership Agreement—which would be an enforceable modified browsewrap structure under Second Circuit law. (Fig. 2, *supra,* ("I acknowledge …"); Ex. 1, 152:9-23 (explaining that agreement to terms is manifested by either clicking "next" or checking a box and then clicking "next"); *id*. 156:17-20 ("Q: And, again, when you use the word 'agreed,' you mean they clicked the 'next' button or something like that? A: Yes.")).

In a mischaracterization of the relevant screen (Fig. 2), Plaintiffs argue there could be no valid hybridwrap agreement because the assent terms were presented in small font and without clear language tying them to an action. (Opp. 14-15.) Plaintiffs assert that "[t]he sole reference to the Membership Agreement occurs in a sentence, a paragraph below the checkboxes, in a gray font much smaller than the text field boxes and next button" and that there is no "agreement" language. (*Id*. 3, 15.) However Figure 2 clearly shows "Membership Agreement" in bold, purple font that is not appreciably smaller than surrounding text and accompanied by the language "I acknowledge that I have read and agree to…". This is positioned logically to indicate its connection to account creation: it appears on an "Account Creation" page and is followed by the required terms and checkboxes that must be clicked before creating an account. The final, "Next Step" button could not be clicked unless the checkbox agreeing to the Membership Agreement was selected. (ECF 48-3 ¶¶ 5-8; Ex. 1, 98:15-99:13.) This layout renders Plaintiffs' cases distinguishable. For example, in *Chabolla v. ClassPass Inc.*, the consent mechanism was ambiguous because the

language near the action buttons on the "Continue" and "Redeem Now" screens did not indicate the significance of those actions. 129 F.4th 1147, 1158-59 (9th Cir. 2025). Here, there is no ambiguity—Wachtl's assent is clearly linked to the creation of her account.

Plaintiffs claim Defendants' cases "each—unlike here—clearly directed the user what action to take to show their notice of, and assent to, the terms." (Opp. 16.) However, a review of the relevant screens from these modified browsewrap cases demonstrates that the screen Wachtl saw provided notice and assent mechanisms that are at least equivalent to, if not clearer than, those found sufficient in Defendants' cases. For instance, at issue in *Edmundson v. Klarna, Inc.*, 85 F.4th 695 (2d Cir. 2023) was:

**FIGURE 3**[6]




After reviewing this screen, the Second Circuit explained:

> In these circumstances, it would be unreasonable for an internet user to read the conspicuous and clear statement, "I agree to the payment terms," with the button marked "Confirm and continue" directly below it, and not understand that the "Confirm and continue" button is the mechanism by which the user "[c]onfirm[s]" his or her "agree[ment] to the payment terms" and "continue[s]" the transaction

[6] *Edmundson*, 85 F.4th at 711.

with Klarna.

*Id*. at 708. Here, like in *Edmunson*, a reasonable internet user would understand that checking the box and hitting the "Next Step" button is the mechanism by which a user agrees to the Membership Agreement and continues with account creation. Similarly sufficient was this screen in *Starke v. Gilt Groupe, Inc*., 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014):

**FIGURE 4**[7]




The court found notice and assent where the language at the bottom of the screen stated, "By joining Gilt through email or Facebook sign-up, you agree to the Terms of Membership," and the user clicked "Shop Now" to proceed. *Id*. at *3. Both these cases, and the others cited in the Motion, enforced agreements where clear language, accessible hyperlinks, and affirmative action were present—even if the formats varied. (*See* Mot. 7-8.) As in Defendants' cited cases, there can

[7] *Starke*, No. 13 CIV. 5497 LLS (S.D.N.Y. March 19, 2014) (ECF 14-1, Ex. A to Stahl Declaration).

be no doubt that Wachtl had conspicuous notice that creating her WW account manifested assent to the December 2024 Membership Agreement.

2. Wachtl Accepted Additional Terms Containing An Arbitration Provision

Although not the basis for the Motion,[8] Defendants also produced indisputable evidence that Wachtl separately agreed to arbitrate when she completed the Registered Dietician flow and agreed to the "WW Clinic Terms"[9] found there. (Exs. 2; 4, 28:1-8.)

**B. Wachtl Has Not Met Her Burden To Avoid Arbitration**

Since Defendants established the existence of a valid arbitration agreement, the burden shifted to Plaintiffs to demonstrate: (i) Wachtl did not consent; (ii) the arbitration agreement is invalid or unenforceable; or (iii) the arbitration agreement does not encompass her claims. *Flores v. Chime Fin., Inc.*, 2022 WL 873252, at *3 (S.D.N.Y. Mar. 23, 2022) (Abrams, J.). Plaintiffs have not carried their burden.

1. The December 2024 Membership Agreement is the Operative Agreement

Under the relevant caselaw, contract formation occurred during account creation, and therefore the Court's inquiry should turn on the terms presented and accepted by Plaintiff during her sign-up flow—*i.e.*, the December 2024 Membership Agreement. Plaintiffs argue that this is *not* the operative membership agreement, and instead point to the version sent later via hyperlink in her confirmation email, which lacked an arbitration clause. (Opp. 11.) Notably, Wachtl testified she did not recall receiving, reading, or clicking any of the hyperlinks included in the later-sent email.[10] But in any event, as explained in *Teta v. Go New York Tours, Inc.*, "[i]n determining

[8] Defendants became aware of this separate basis to compel arbitration after filing the Motion. If it becomes relevant and necessary, then Defendants may seek leave to file a supplemental motion to compel arbitration.

[9] (Ex. 3.)

[10] (Ex. 4, 36:11-38:22.)

whether a user sufficiently assented to the terms of a clickwrap arbitration agreement, courts 'look to the *design and content of the relevant interface* to determine if the contract terms were presented to the offeree in a way that would put [the offeree] on inquiry notice of such terms.'" 738 F. Supp. 3d 502, 509 (S.D.N.Y. 2024), *motion to certify appeal denied*, 2024 WL 4850844 (S.D.N.Y. Nov. 21, 2024) (emphasis added); *see also Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 116 (2d Cir. 2025) ("'[W]e look to the design and content of the relevant interface to determine if the contract terms were presented to the offeree in way that would put her on inquiry notice of such terms.'"). Because Wachtl saw and agreed to the December 2024 Membership Agreement during her account creation, the Arbitration Provision is binding on her.

The cases cited by Plaintiff do not require a different analysis. In *Bennett v. Barclays Bank Delaware*, 2025 WL 2690390 (S.D.N.Y. Sept. 19, 2025), the decision to enforce the arbitration provision turned on the terms presented and accepted at contract formation. Specifically, a cardmember agreement containing an arbitration provision was physically sent to the customer with a credit card, and the terms clearly stated that by using the card the plaintiff agreed to be bound by the agreement. *Id*. at *3. The court found that using the card "objectively manifested [] assent to the terms of the cardmember agreement, including the arbitration provision." *Id*. *Sacchi v. Verizon Online LLC*, 2015 WL 765940 (S.D.N.Y. Feb. 23, 2015), is likewise readily distinguishable. There, the court enforced an arbitration clause added through an amendment because plaintiff received clear, direct notice of the new terms: the terms were posted online, emailed to two addresses associated with plaintiff (with confirmation that at least one was opened), and included in a billing statement. *Id*. at *3. Each communication explicitly advised plaintiff that continued use of the service would constitute assent to amended terms containing an arbitration provision. *Id*. By contrast, the email sent to Wachtl has no language communicating it

was intended to be a notice of a superseding agreement, nor did it state that by continuing to use her WW membership Wachtl would be bound by updated terms. (ECF 75-5.) Wachtl received a transaction receipt that included a courtesy link to relevant policies, and the membership agreement mistakenly linked to an earlier version.[11] These circumstances fall far short of the targeted notice that was critical to the court's enforcement of amended terms in *Sacchi.*[12]

2. Wachtl's Inability to Recall Her Sign Up Experience Does Not Establish Lack of Consent

Wachtl's testimony makes clear she remembers almost nothing of her sign up experience: she did not remember where she signed up, providing her email address, seeing a create-your-account page, providing a password, or if she checked the box stating agreement to the Membership Agreement. (Ex. 4, 14:7-17, 17:2-18, 18:5-14, 21:18-22:5, 39:9-25; *see* Opp. 10.) But, not recalling the experience does not equate to a lack of notice, nor is it sufficient for Plaintiffs to carry their burden. "It is well-established that a 'mere assertion that one does not recall signing a document does not, by itself, create an issue of fact as to whether a signature on a document is valid—especially in the absence of any evidence the document was fabricated." *Moise v. Family Dollar Stores of New York*, 2017 WL 2378193, at *3 (S.D.N.Y. June 1, 2017) (Abrams, J.). In granting a motion to compel arbitration in *Flores*, this Court found that a plaintiff's failure to recall the particular screens during the sign-up process did not create a genuine issue of fact regarding assent:

> Plaintiff does not dispute that she successfully created a Chime account, which required her to agree to the terms. Rather, she alleges that she "do[es] not recall

[11] Cai confirmed the email hyperlink was inadvertently not updated but was intended to direct to the December 2024 Membership Agreement. (Ex. 1, 110:15-25; 113:15-114:25; 115:12-20.)

[12] Because the December 2024 Membership Agreement is operative and has a New York choice of law clause, Plaintiffs' arguments against New York choice of law fail out of the gate. Even if there was a dispute, though, the record facts support granting the Motion, under either Plaintiffs' or Defendants' caselaw.

> which screens were displayed during the Chime accounts sign up process." Flores Decl. ¶ 13. While that may be true, it does not create an issue of fact as to whether she assented to the contract's terms.

2022 WL 873252 at *5. Inability to recall her sign-up is insufficient, as a matter of law, to create a triable issue as to her agreement to the Arbitration Provision. *See id.*; *Moise*, 2017 WL 2378193 at *3. As stated in the Motion and above, Wachtl had notice of and assented to the December 2024 Membership Agreement.

3. <u>The Scope of the Arbitration Provision Is Delegated to the Arbitrator</u>

Plaintiffs' assertion that the Arbitration Provision is "categorically too narrow" to delegate questions of arbitrability to the arbitrator is refuted by caselaw, including Plaintiffs' own citations. (Opp. 17-18.) For example, in *Cape Flattery Ltd. v. Titan Maritime, LLC*, the Ninth Circuit—citing the Second Circuit—distinguished between narrow arbitration clauses applying only to disputes "arising under" or "arising out of" an agreement, and broader clauses that cover disputes "arising out of or relating to" the agreement. 647 F.3d 914, 922-24 (9th Cir. 2011). The Court noted that "arising out of or relating to" is the hallmark of a broad arbitration provision:

> We agreed with the Second Circuit that when parties intend to include a broad arbitration provision, **they provide for arbitration 'arising out of or relating to' the agreement**. Because of the absence of the "***relating to***" language in the arbitration provision, we had 'no difficulty finding that 'arising hereunder' is intended to cover a much narrower scope of disputes, i.e., only those relating to the interpretation and performance of the contract itself."

*Id.* at 922 (emphasis added) (internal cites omitted). Here, the Arbitration Provision covers "any dispute, claim, question, or disagreement arising from ***or relating to*** these Terms & Conditions[.]" (Mot. 8.) The inclusion of "relating to" marks this as a broad clause, and supports that the question of arbitrability should be decided by the arbitrator. *Accord*, *PB Life & Annuity Co. v. Universal Life Ins. Co.*, 2020 WL 2476170, at *11 (S.D.N.Y. May 12, 2020) (arbitrability should be decided by the arbitrator due to inclusion of "all disputes" "arising under or relating to" the agreement).

Further, the incorporation of the AAA rules in the Arbitration Provision supports arbitrability being decided by the arbitrator.[13] *Id.*; *Lapina v. Men Women N.Y. Model Mgmt. Inc.*, 86 F. Supp. 3d 277, 283-84 (S.D.N.Y. 2015). Regardless, these minutia focused scope arguments must be resolved by the arbitrator in the first instance.

4. <u>The Arbitration Provision Encompasses Wachtl's Claims</u>

Plaintiffs' attempts to avoid arbitration by arguing Wachtl's claims have "nothing to do with" the December 2024 Membership Agreement, or by referencing hypothetical class members who did not agree to arbitrate, are unavailing. First, the Arbitration Provision at issue is not "self-limiting" (Opp. 19), but as shown is broad. Such broad language has been consistently interpreted as encompassing all claims that have any connection to the parties' contractual relationship. *See Greene v. Subcontracting Concepts*, *LLC*, 2014 WL 1087999, at *2 (S.D.N.Y. Mar. 19, 2014) (finding the arbitration provision applied to "any dispute, claim, question, or disagreement arising from or relating to" the agreement).

Furthermore, the December 2024 Membership Agreement, which Wachtl affirmatively accepted through her account creation on December 31, 2024, expressly governs access to and use of both the Website and mobile app (collectively, the "WW Digital Platforms"). (ECF 48-2, p. 2.) Defendants' records, as well as Plaintiffs' representations, confirm Wachtl took the Clinic Quiz—the activity underlying her claims—on January 7, 2025.[14] On that date, her use of the WW Digital Platforms was governed by the December 2024 Membership Agreement. This case is therefore

[13] Plaintiffs' reliance on *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, is misplaced. There, the court determined the dispute was not covered by the arbitration provision because it was subject to NASDAQ rules, and those rules barred the claims at issue from being arbitrated. 770 F.3d 1010, 1031-32 (2d Cir. 2014). The Arbitration Provision here has no such limiting language.

[14] (*See* ECF 75-8; Opp. 6, citing the Complaint ("On January 7, 2025, Plaintiff Wachtl completed the questionnaire for WW's separate 'Clinic' product (*see* Ex. G), which resulted in the disclosure of her health data to third parties…").)

easily distinguished from Plaintiffs' cases such as *FUJIFILM North American Corp. v. Geleshmall Enterprises LLC*, where the claims arose "separate and apart from the conduct that [was] the subject" of the applicable agreement. 239 F. Supp. 3d 640, 649 (E.D.N.Y. 2017). Similarly, this matter is unlike *Specht v. Netscape Commc'ns Corp*., where the arbitration provision was found in a license agreement for a completely different product than the one giving rise to the plaintiffs' claims, and where the factual allegations did not "touch matters" covered by the relevant agreement. 306 F.3d 17, 36-38 (2d Cir. 2002). There is no serious dispute that Wachtl's claims "touch matters" governed by the December 2024 Membership Agreement, since her allegations arise from her use of the WW Digital Platforms covered by that agreement. Finally, that other individuals might use the Website without being bound to a membership agreement (Opp. 19) is immaterial at this stage of the case (although such facts may preclude certification later on)—what matters is that *Wachtl's* claims are encompassed by the Arbitration Provision. They plainly are and therefore she must be compelled to arbitrate.

5. <u>Wachtl Has Waived Her Right To File A Class Action</u>

As demonstrated, Wachtl agreed to arbitrate her claims and expressly waived her right to file a class action. (Mot. 10.) The December 2024 Membership Agreement is indisputably the operative agreement (*see* I.B.1), and it covers Wachtl's claims (*see* I.B.4). The Class Action Waiver is unequivocal, applying to "any disputes subject to arbitration . . . or any disputes between the Parties," leaving no doubt that *all disputes* between Wachtl and Defendants fall within its scope. (ECF 48-2, p. 23.) Wachtl cannot proceed on a class basis. *Starke*, 2014 WL 1652225, at *4; *Mullo v. DoorDash, Inc*., 2023 WL 1971897, at *3 (S.D.N.Y. Jan. 17, 2023).

**<u>CONCLUSION</u>**

Defendants respectfully request the Court grant the Motion.

Dated: New York, New York
January 27, 2025

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: */s/ P. Craig Cardon*
P. Craig Cardon (Admitted Pro Hac Vice)
Kevin Murphy (Admitted Pro Hac Vice)
1901 Avenue for the Stars, Suite 1600
Los Angeles, California 90067
Telephone: (310) 228-3700
ccardon@sheppardmullin.com
kemurphy@sheppardmullin.com

Abby H. Meyer (Admitted Pro Hac Vice)
650 Town Center Drive, 10th Floor
Costa Mesa, California 92626-1993
Telephone: (714) 513-5100
ameyer@sheppardmullin.com

Sylvia Waghorne
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 653-8700
swaghorne@sheppardmullin.com

*Attorney for Defendants*
*WW International, Inc., WW.Com, LLC Weekend Health of Texas, PA, Weekend Health of New Jersey P.C., Weekend Health of Pennsylvania, P.C., and WeightWatchers Clinic f/k/a Brantley T. Jolly, M.D..*

**WORD COUNT LIMIT CERTIFICATION**

I, P. Craig Cardon, hereby certify that the foregoing memorandum law complies with the word count limit set forth in S.D.N.Y. Local Civil Rule 7.1(c) and Section 4.A of the Individual Rules & Practices in Civil Cases of Hon. Ronnie Abrams. According to the word count of the word-processing program used to prepare the memorandum, and exclusive of the portions of it that are excluded by the rule, there are 3,495 words in the document.

*/s/ P. Craig Cardon*
P. Craig Cardon