UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERICA BRUCKNER, ANITA CAMPANA, MEGAN CONNOR, DONNA EDWINS, ALLISON GIORGIO, JANINE HENRY, ASHLEY RODRIGUEZ, SUSANNE STROM, JENNIFER TORRES, ANTOINETTE WACHTL, individually and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>WW INTERNATIONAL, INC., WW.COM, LLC WEEKEND HEALTH OF TEXAS, PA, WEEKEND HEALTH OF NEW JERSEY P.C., WEEKEND HEALTH OF PENNSYLVANIA, P.C., AND BRANTLEY T. JOLLY, M.D., PROF. CORP.,<br><br>Defendants. | Case No.: 1:25-CV-02944-RA |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**


I. PRELIMINARY STATEMENT ..... 1

II. FACTUAL AND PROCEDURAL BACKGROUND ..... 2

A. WW And Its Websites ..... 2

B. Plaintiffs Visited The Websites, Completed Questionnaires, And Purchased WW Memberships ..... 3

C. WW Notified Rodriguez, Torres, Giorgio, Bruckner, Wachtl, and Campana That Their Questionnaire Responses May Be Shared With Third Parties ..... 4

D. Procedural Background ..... 7

III. LEGAL STANDARD ..... 8

IV. THE AMENDED COMPLAINT SHOULD BE DISMISSED ..... 8

A. Consent Causes Rodriguez, Torres, Giorgio, Bruckner, Wachtl, and Campana's Claims To Fail ..... 8

1. WW Provided Conspicuous Notice Of The Privacy Disclosure And Privacy Policy ..... 9

2. Plaintiffs Acknowledged And Agreed To The Privacy Disclosure And Privacy Policy By Taking The Questionnaires ..... 12

3. The Privacy Disclosure And Privacy Policy Notified Plaintiffs Of The Very Conduct That Plaintiffs Allege Is Unlawful ..... 12

B. Plaintiff Strom's Claims Must Be Dismissed Because She Does Not Allege She Took Any At-Issue Questionnaire ..... 14

C. Plaintiffs Cannot Assert Claims Under The Laws Of States In Which They Do Not Reside ..... 15

1. Plaintiffs Do Not Have Statutory Standing To Assert Their GBL Claim ..... 15

2. Plaintiffs Giorgio, Rodriguez, Torres, Wachtl, Campana, And Connor Do Not Have Statutory Standing To Assert Their CIPA Claim ..... 17

3. Plaintiffs Bruckner, Edwins, Henry, And Strom Do Not Have Statutory Standing To Assert Their FSCA Claim ..... 17

D. Plaintiffs' Claims Based On "Other Tracking Technologies" Must Be Dismissed ..... 18

E. Plaintiffs' Claims Fail For Additional, Independent Reasons ..... 18

1. Plaintiffs' GBL Claim Fails For Two Additional Reasons ............ 18

2. Plaintiffs' ECPA Claim Fails Because It Is A One-Party Consent Statute ............ 19

3. Plaintiffs Have Failed To Plausibly Allege A CIPA Claim ............ 22

a. Plaintiffs have not and cannot allege that the Website Vendors violated CIPA's second clause ............ 23

b. Plaintiffs have not and cannot allege that the Website Vendors violated CIPA's third clause ............ 25

c. Plaintiffs have not and cannot plausibly allege that WW aided or abetted a CIPA violation ............ 25

d. The party exception applies to New Relic, Braze, Customer.io, and Nextdoor ............ 26

4. Plaintiffs Have Failed To Plausibly Allege A Claim For Invasion Of Privacy ............ 27

5. Plaintiffs' Unjust Enrichment Claim Fails Because They Have An Adequate Remedy At Law ............ 29

6. Plaintiffs Have Failed To Plausibly Allege A Violation Of The FSCA ............ 30

F. Leave To Amend Should Not Be Granted ............ 31

V. CONCLUSION ............ 32

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.S. v. SelectQuote Ins. Servs.*
2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) ....25

*Ahringer v. LoanDepot, Inc.*
715 F. Supp. 3d 1274 (C.D. Cal. 2024) ....17

*In re Ambry Genetics Data Breach Litig.*
567 F. Supp. 3d 1130 (C.D. Cal. 2021) ....29

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ....8, 18

*Baker v. Yahoo Inc.*
2025 WL 3241254 (S.D.N.Y. Nov. 19, 2025) ....3

*Belen v. Ryan Seacrest Productions, LLC*
65 Cal. App. 5th 1145 (2021) ....28

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ....8, 18

*Brumfield v. Trader Joe's Co.*
2018 WL 4168956 (S.D.N.Y. Aug. 30, 2018) ....30

*Camm v. Reach Fin., LLC*
2026 WL 861670 (S.D.N.Y. Mar. 30, 2026) ....15, 17, 19

*Cardoso v. Whirlpool Corp.*
2021 WL 12313079 (S.D. Fla. Sept. 15, 2021) ....30

*Caro v. Weintraub*
618 F.3d 94 (2d Cir. 2010) ....20, 21, 22

*Chambers v. Time Warner, Inc.*
282 F.3d 147 (2d Cir. 2002) ....2

*Chiste v. Hotels.com L.P.*
756 F. Supp. 2d 382 (S.D.N.Y. 2010) ....16

*Chufen Chen v. Dunkin' Brands, Inc.*
954 F.3d 492 (2d Cir. 2020) ....18

*Cody v. Boscov's, Inc.*
658 F. Supp. 3d 779 (C.D. Cal. 2023) ....................27

*Cohen Bros. v. ME Corp., S.A.*
872 So. 2d 321 (Fla. Dist. Ct. App. 2004) ....................18

*Cohen v. Casper Sleep Inc.*
2018 WL 3392877 (S.D.N.Y. July 12, 2018) ....................20

*Connor v. Whirlpool Corp.*
2021 WL 3076477 (S.D. Fla. July 6, 2021)....................30

*Cooper v. Slice Techs., Inc.*
2018 WL 2727888 (S.D.N.Y. June 6, 2018) ....................9

*Cruz v. Fxdirectdealer, LLC*
720 F.3d 115 (2d Cir. 2013)....................15

*DellaSala v. Samba TV, Inc.*
2025 WL 3034069 (N.D. Cal. Oct. 30, 2025)....................17

*DellaSala v. Samba TV, Inc.*
2026 WL 1138358 (N.D. Cal. April 21, 2026)....................24

*Doe v. Eating Recovery Ctr. LLC*
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ....................23, 24

*Doe v. Kaiser Found. Health Plan, Inc.*
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ....................17, 22

*Doe v. Regents of the Univ. of Cal.*
672 F. Supp. 3d 813 (N.D. Cal. 2023) ....................29

*Edmundson v. Klarna, Inc.*
85 F.4th 695 (2d Cir. 2023) ....................10, 11, 12

*Emondson v. 2001Live, Inc.*
2017 WL 10085028 (M.D. Fla. Mar. 30, 2017) ....................30

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*
400 F. App'x 611 (2d Cir. 2010) ....................29

*In re Fyre Festival Litig.*
399 F. Supp. 3d 203 (S.D.N.Y. 2019)....................15

*Gay v. Garnet Health*
2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024)....................21, 22

*Goldstein v. Luxottica of Am., Inc.*
2021 WL 4093295 (S.D. Fla. Aug. 23, 2021)....................................................................30

*Goshen v. Mut. Life Ins. Co.*
98 N.Y.2d 314 (2002) ..............................................................................................16

*Graham v. Noom, Inc.*
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......................................................................27

*Grossman v. GEICO Cas. Co.*
2022 WL 1656593 (2d Cir. May 25, 2022) ...................................................................19

*Heiting v. Fka Distrib. Co.*
2025 WL 736594 (C.D. Cal. Feb. 3, 2025)...................................................................27

*Heiting v. Taro Pharms. U.S., Inc.*
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .......................................................................25

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*
100 N.Y.S.3d 227 (2019)..........................................................................................19

*Horn v. Med. Marijuana, Inc.*
383 F. Supp. 3d 114 (W.D.N.Y. 2019).........................................................................15

*Hu v. Whaleco, Inc.*
779 F. Supp. 3d 265 (E.D.N.Y. 2024) .........................................................................11

*Jacome v. Spirit Airlines Inc.*
2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) ...................................................30, 31

*Javier v. Assurance IQ, LLC*
649 F. Supp. 3d 891 (N.D. Cal. 2023).........................................................................27

*Kaufman v. Sirius XM Radio, Inc.*
474 F. App'x 5 (2d Cir. 2012) ....................................................................................16

*Kurowski v. Rush Sys. for Health*
683 F. Supp. 3d 836 (N.D. Ill. 2023)...........................................................................28

*Lakes v. Ubisoft, Inc.*
777 F. Supp. 3d 1047 (N.D. Cal. 2025)..........................................................................9

*Lugones v. Pete & Gerry's Organic, LLC*
440 F. Supp. 3d 226 (S.D.N.Y. 2020)...........................................................................19

*Meyer v. Uber Techs., Inc.*
868 F.3d 66 (2d Cir. 2017).....................................................................................9, 12

*In re Nickelodeon Consumer Priv. Litig.*
827 F.3d 262 (3d Cir. 2016)....................29

*Okash v. Essentia Health*
2024 WL 1285779 (D. Minn. Mar. 26, 2024)....................28

*Prue v. Fiber Composites, LLC*
2012 WL 1314114 (E.D.N.Y. Apr. 17, 2012)....................19

*R.C. v. Sussex Publishers, LLC*
2025 WL 948060 (N.D. Cal. Mar. 28, 2025)....................24

*Rabin v. Google LLC*
2023 WL 4053804 (N.D. Cal. June 15, 2023)....................29

*Ribas v. Clark*
38 Cal. 3d 355 (1985)....................26

*Rider v. Uphold HQ Inc.*
657 F. Supp. 3d 491 (S.D.N.Y. 2023)....................19

*Rogers v. Ulrich*
52 Cal. App. 3d 894 (1975)....................26

*Saleh v. Nike, Inc.*
562 F. Supp. 3d 503 (C.D. Cal. 2021)....................28

*Silva v. Smucker Nat'l. Foods, Inc.*
2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015)....................17

*Silver v. Stripe Inc.*
2021 WL 3191752 (N.D. Cal. July 28, 2021)....................9, 12

*Smith v. Facebook, Inc.*
745 F. App'x 8 (9th Cir. 2018)....................9

*Smith v. Yeti Coolers, LLC*
2025 WL 877127 (N.D. Cal. Mar. 14, 2025)....................26

*Stasi v. Inmediata Health Grp. Corp.*
501 F. Supp. 3d 898 (S.D. Cal. 2020)....................29

*Strusowski v. Nemours Found.*
2023 WL 8701299 (E.D. Pa. Dec. 14, 2023)....................18

*Swarts v. Home Depot, Inc.*
689 F. Supp. 3d 732 (N.D. Cal. 2023)....................25

*Thomas v. Papa Johns Int'l, Inc.*
2024 WL 2060140 (S.D. Cal. May 8, 2024)....28

*Thorne v. Square, Inc.*
2022 WL 542383 (E.D.N.Y. Feb. 23, 2022)....2

*Torres v. Prudential Fin., Inc.*
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ....4, 8, 17, 24

*United States ex rel. Levine v. Vascular Access Ctrs. L.P.*
2020 WL 5534670 (S.D.N.Y. Sept. 15, 2020)....32

*United States v. Jiau*
734 F.3d 147 (2d Cir. 2013)....20

*Valenzuela v. Super Bright Leds Inc.*
2023 WL 8424472 (C.D. Cal. Nov. 27, 2023)....27

*W.W. v. Orlando Health, Inc.*
2025 WL 722892 (M.D. Fla. Mar. 6, 2025) ....31

*Warden v. Kahn*
99 Cal. App. 3d 805 (1979) ....26

*Wheeler v. Topps Co.*
652 F. Supp. 3d 426 (S.D.N.Y. 2023)....16

*Wright v. Publrs. Clearing House, Inc.*
439 F. Supp. 3d 102 (E.D.N.Y. 2020) ....16

**Statutes**

18 U.S.C. § 2511....19, 20

Cal. Penal Code § 630....17

Cal. Penal Code § 631....17, 23, 24

Fla. Stat. Ann. § 934.03 ....30

N.Y. Gen. Bus. Law § 349....15

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)....1

Defendants WW International, Inc., WW.Com, LLC, Weekend Health of Texas, PA, Weekend Health of New Jersey P.C., Weekend Health of Pennsylvania, P.C., and WeightWatchers Clinic f/k/a Brantley T. Jolly, M.D., Prof. Corp. ("Defendants" or "WW"), by and through their undersigned counsel, respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the First Amended Class Action Complaint (ECF No. 96) filed by Plaintiffs Erica Bruckner, Anita Campana, Megan Connor, Donna Edwins, Allison Giorgio, Janine Henry, Ashley Rodriguez, Susanne Strom, Jennifer Torres, and Antoinette Wachtl for failure to state a claim upon which relief may be granted.[1]

## I. PRELIMINARY STATEMENT

The Amended Complaint should be dismissed. Plaintiffs allege that they visited WW's website, took questionnaires to help determine the best weight loss program for them, and purchased WW memberships. They claim that WW installed third-party "tracking technologies" on the website, which intercepted and transmitted their questionnaire responses to third parties. Based on this, Plaintiffs assert wiretapping, consumer protection, and common law claims. But, six of the ten Plaintiffs conveniently omit from the Amended Complaint that, before they answered a single question on WW's online questionnaires, WW told them that their health data "may be shared with our third-party providers." Each of these Plaintiffs saw that disclosure. Each continued anyway. These Plaintiffs' claims therefore fail based on their provided consent.

Separate and apart from consent, Plaintiffs' claims are deficient for a variety of reasons: they lack statutory standing to assert claims under the laws of states to which they have no connection; they fail to plead necessary elements of each cause of action; and they even reassert

[1] This Motion is filed without prejudice to, and while reserving all rights regarding, a motion to compel Plaintiffs to arbitration, which is due on June 12, 2026 (ECF No. 105).

claims that they have previously conceded. Plaintiffs have already had one chance to cure these deficiencies. Indeed, when amending their complaint, the Court ordered Plaintiffs to address the arguments WW raised in its original motion to dismiss (ECF No. 89). They failed to do so. The Amended Complaint should therefore be dismissed with prejudice.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. WW And Its Websites

WW provides weight-loss programs that it advertises on its website, www.weightwatchers.com ("WW Website"). Am. Compl. ¶ 97. On the WW Website, users can purchase a membership and take a questionnaire ("Intro Questionnaire") to determine which program is best for them. ECF No. 49-2, ¶ 2.[2] WW also offers weight-loss medications through a separate service, "Weight Watchers Clinic."[3] Am. Compl. ¶ 105. To qualify for Weight Watchers Clinic, a user must complete a questionnaire (the "Clinic Questionnaire"). *Id.*

---

[2] The Court may consider the previously submitted Cai Declaration and its exhibits (ECF No. 49-2), the Declaration of Pinal Bhatt ("Bhatt Decl."), and the Declaration of Kevin Murphy ("Murphy Decl.") because the information in each is incorporated by reference in the Amended Complaint and subject to judicial notice. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); *Thorne v. Square, Inc.*, 2022 WL 542383, at *1 (E.D.N.Y. Feb. 23, 2022). The declarations and exhibits provide detail regarding the alleged Websites, including screenshots of webpages for the questionnaires and the applicable privacy policies. Am. Compl. ¶¶ 99-108, 157-59. These webpages and policies "are integral" as they form the basis for Plaintiffs' claims and are not subject to reasonable dispute. *Chambers*, 282 F.3d at 153; *Thorne*, 2022 WL 542383, at *1.

[3] From April 2023 to May 2025, WW owned and operated www.joinsequence.com (the "Sequence Website," and together with the WW Website, the "Websites"). ECF No. 49-2, ¶ 3. In 2024, WW rebranded Sequence to "WeightWatchers Clinic." *Id.* ¶ 4. From at least April 2024 to May 2025, the Sequence Website provided a hyperlink to the Clinic Questionnaire on the WW Website. *Id.* Since May 2025, a user attempting to visit the Sequence Website is automatically redirected to the WW Website. *Id.* ¶ 3.

### B. Plaintiffs Visited The Websites, Completed Questionnaires, And Purchased WW Memberships

Plaintiffs are California and Florida residents who allege that they visited the Websites (they do not specify which they visited), signed up for a WW membership, and completed one or both of the questionnaires.[4] A chart detailing each Plaintiff's residence, date they allegedly became a WW member, and the questionnaire(s) they allegedly completed is set forth below.

| Plaintiff | Residence | Membership Date | Questionnaire And Date Completed | Am. Complaint |
|---|---|---|---|---|
| Bruckner | California | March 2020 | Clinic Questionnaire, April 2024 | ¶¶ 18-20 |
| Campana | Florida | August 2019 | Clinic Questionnaire, January 2025 | ¶¶ 25-27 |
| Connor | Florida | August 2019 | Clinic Questionnaire, December 2023 | ¶¶ 32-34 |
| Edwins | California | July 2019 | Intro Questionnaire, July 2019[5] | ¶¶ 39-41 |
| Giorgio | Florida | February 8, 2024 | Intro Questionnaire, February 2024 | ¶¶ 45-47 |
| Henry | California | January 2023 | Intro Questionnaire and Clinic Questionnaire, January 2023 | ¶¶ 52-54 |
| Rodriguez | Florida | November 2023 | Intro Questionnaire, November 2023 | ¶¶ 59-61 |
| Strom | California | February 2011 | Strom alleges she "completed a questionnaire" in February 2011. She does not allege that | ¶¶ 66-68 |

[4] Plaintiffs do not allege the specific date they signed up for a WW membership or took their respective questionnaire(s). In a similar case, Judge Cote *sua sponte* ordered plaintiffs (represented by Plaintiffs' counsel here) to make a more definite statement because the plaintiffs failed to allege when they created their membership accounts with various third parties. *See Baker v. Yahoo Inc.*, 2025 WL 3241254, at *4 (S.D.N.Y. Nov. 19, 2025).

[5] Edwins alleges she has been a WW member on and off since July 2019 and that she completed the Intro Questionnaire each time she became a WW member. Am. Compl. ¶ 40. Other than July 2019, she does not allege the dates she signed up or when she took the Intro Questionnaire.

| Plaintiff | Residence | Membership Date | Questionnaire And Date Completed | Am. Complaint |
|---|---|---|---|---|
| | | | she took the Intro Questionnaire or Clinic Questionnaire. | |
| Torres | Florida | January 2024 | Intro Questionnaire, January 2024 | ¶¶ 73-75 |
| Wachtl | Florida | December 2024 | Intro Questionnaire and Clinic Questionnaire, December 2024 | ¶¶ 80-82 |

Plaintiffs allege that WW incorporated tracking technologies created by third parties Meta, Google, Amplitude, New Relic, Braze, Customer.io, and Nextdoor ("Website Vendors") into the webpages for the Intro Questionnaire and Clinic Questionnaire. Am. Compl. ¶¶ 1-2, 140. The tracking technologies are "snippets of code" that "intercept a users' online activity on the webpage that incorporates" them. *Id.* ¶ 112. Such "activity" includes the webpage "a user visits, what buttons they click, as well as specific information they input into the website." *Id.* ¶ 117. Plaintiffs allege the tracking technologies intercepted and transmitted the information they inputted into the questionnaires to the Website Vendors without their consent. *Id.* ¶¶ 23-24, 30-31, 37-38, 44, 50-51, 57-58, 64-65, 71-72, 78-79, 85-86, 140.[6]

### C. <u>WW Notified Rodriguez, Torres, Giorgio, Bruckner, Wachtl, and Campana That Their Questionnaire Responses May Be Shared With Third Parties</u>

Plaintiffs Rodriguez, Torres, and Giorgio allege that when they took the Intro Questionnaire in November 2023, January 2024, and February 2024, they were unaware that WW may disclose their questionnaire responses to third parties. Am. Compl. ¶¶ 50, 64, 78. Similarly, Plaintiffs Bruckner, Wachtl, and Campana allege that when they took the Clinic Questionnaire in April 2024,

[6] Plaintiffs also allege WW incorporated tracking technologies into a "Consultation Questionnaire" (Am. Compl. ¶¶ 140, 152-54), but none allege they took that questionnaire.

December 2024, and January 2025, they were unaware of such disclosures. *Id.* ¶¶ 23, 30, 85. But at the time these Plaintiffs took their questionnaires, the first page of each contained the following privacy disclosure: "By continuing, you agree to your health and other data being used by us for this assessment and marketing purposes. This data may be shared with our third-party providers. See Privacy Policy for details." Murphy Decl. ¶¶ 2-20; Bhatt Decl. ¶ 2. The term "Privacy Policy" was hyperlinked to the applicable version of the Privacy Policy, which further notified Plaintiffs that WW used tracking technologies on the Website and that third parties may receive their personal information, including health information, via those technologies. Murphy Decl. ¶¶ 2-20; Bhatt Decl. ¶ 2; ECF No. 49-2, Exs. B-D.

First page of Intro Questionnaire in November 2023, January 2024, and February 2024:[7]




[7] When visiting the page, a user would see the link to the "Privacy Policy" and likely would need to scroll down slightly to see the term "for details." Murphy Decl. ¶ 3.

First page of Clinic Questionnaire in April 2024:



First page of Clinic Questionnaire in December 2024 and January 2025:




### D. Procedural Background

Plaintiffs Giorgio, Rodriguez, Torres, Wachtl, and Nancy Owen filed the original Class Action Complaint on April 9, 2025, asserting five causes of action: (1) violation of the GBL; (2) violation of the ECPA; (3) violation of CIPA; (4) common-law invasion of privacy; and (5) unjust enrichment. ECF No. 1. On September 25, 2025, WW moved to dismiss. ECF No. 49. After the

motion was fully briefed, ECF Nos. 55, 62, Owen voluntarily dismissed her claims, ECF No. 86. On April 10, 2026, Plaintiffs moved for leave to amend, and the Court granted the motion. ECF Nos. 87-89. The Court's order stated: "To the extent Plaintiffs are able to address any of the arguments raised in Defendants' motion to dismiss, they shall do so in their Amended Complaint." ECF No. 89. Plaintiffs' Amended Complaint adds six new Plaintiffs—Bruckner, Campana, Connor, Edwins, Henry, and Strom—and asserts the same five causes of action plus a new claim for violation of the Florida Security of Communications Act ("FSCA"). Am. Compl. ¶¶ 194-267. The Amended Complaint is otherwise the same as the original complaint.

## III. LEGAL STANDARD

A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. THE AMENDED COMPLAINT SHOULD BE DISMISSED

### A. Consent Causes Rodriguez, Torres, Giorgio, Bruckner, Wachtl, and Campana's Claims To Fail

Rodriguez, Torres, Giorgio, Bruckner, and Campana's claims must be dismissed based on consent. Wachtl's claims premised on the Clinic Questionnaire warrant dismissal for the same reason.[8] Before taking their respective questionnaires, WW notified these Plaintiffs that it may share their questionnaire data with third parties for marketing purposes. By proceeding anyway, these Plaintiffs consented to the conduct that forms the basis for each of their claims.

[8] At this time, WW does not move to dismiss Wachtl's claims premised on the Intro Questionnaire based on consent. Similarly, WW does not move to dismiss Connor, Edwins, Henry, and Strom's claims based on consent. WW, however, reserves the right to do so at a later time should this case proceed past the pleading stage.

"Consideration of consent is appropriate on a motion to dismiss where lack of consent is an element of the claim." *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1054 (N.D. Cal. 2025) (quotations omitted); *Cooper v. Slice Techs., Inc.*, 2018 WL 2727888, at *5 (S.D.N.Y. June 6, 2018). Consideration of consent is appropriate here because these Plaintiffs' claims are premised on their purported lack of consent. Am. Compl. ¶¶ 197, 203, 219, 232, 246, 257.

In determining whether Rodriguez, Torres, Giorgio, Bruckner, Wachtl, and Campana consented, "courts consider whether the circumstances, considered as a whole, demonstrate that a reasonable person understood that an action would be carried out so that their acquiescence demonstrates knowing authorization." *Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 77-80 (2d Cir. 2017) (employing a similar analysis to determine if a plaintiff agreed to arbitrate). In the internet context, courts first evaluate the design of the website to determine whether a reasonable person would have notice of the disclosure or privacy policy. *See Meyer*, 868 F.3d at 78; *Silver v. Stripe Inc.*, 2021 WL 3191752, at *3 (N.D. Cal. July 28, 2021) (same but in the context of a consent argument). Second, courts determine whether the plaintiff's actions demonstrate consent to the disclosure or privacy policy. *See Meyer*, 868 F.3d at 79-80 (clicking a button manifested assent); *Silver*, 2021 WL 3191752, at *4 (same). Third, courts determine whether the applicable disclosure or policy discloses the actions that the plaintiff challenges as unlawful. *See Cooper*, 2018 WL 2727888, at *4. Here, all three requirements are met as to each of these Plaintiffs.

### 1. ***WW Provided Conspicuous Notice Of The Privacy Disclosure And Privacy Policy***

A reasonable internet user would have conspicuous notice of the privacy disclosure located on the Intro Questionnaire and Clinic Questionnaire. In evaluating a website to determine notice, courts consider the totality of the circumstances. *See, e.g.*, *Meyer*, 868 F.3d at 77-78 (considering

the clutter on the screen, language used, font, placement of the disclosure, and whether the applicable terms were hyperlinked).

In *Edmundson v. Klarna, Inc.*, 85 F.4th 695 (2d Cir. 2023), the Second Circuit held that the below webpage provided reasonably conspicuous notice of the website's terms because "the only link provided is to [the defendant's] terms, and the user is presented with only one button to click." *Id.* at 705. The notice was also "visible at once"—a user "does not need to scroll beyond what is immediately visible to find notice." *Id.* (citations and quotations omitted). And the hyperlink to the terms was sufficient—even though they were "in a smaller font relative to the other text"—because it was "underlined and in a color that [stood] in sharp contrast to the color of the interfaces' backgrounds." *Id.* at 706.



Similarly, in *Hu v. Whaleco, Inc.*, 779 F. Supp. 3d 265 (E.D.N.Y. 2024), the court held that the below webpage provided reasonably conspicuous notice because the screen was "relatively uncluttered, [was] visible at once, and the notice and bolded hyperlinks are spatially and temporally coupled with a user's creation of an account." *Id.* at 288.




Here, the webpages for the Intro Questionnaire and Clinic Questionnaire provide reasonably conspicuous notice of the privacy disclosure. They are less cluttered than the webpage in *Hu* and comparable to the webpage in *Edmundson*. The privacy disclosure is "visible at once," located directly above or below the relevant action button or textbox, and distinguishable from the

webpages' background. *Edmundson*, 85 F.4th at 705. And, as in *Edmundson*, a user would understand that the term "Privacy Policy" is a hyperlink because it is underlined. *Id.* at 706. Finally, the privacy disclosure is temporally coupled with the questionnaires—a reasonable user would understand that it applied to the questionnaire she was about to take. *Id.* In sum, a reasonable internet user would have notice of the privacy disclosure and Privacy Policy.

### 2. *Plaintiffs Acknowledged And Agreed To The Privacy Disclosure And Privacy Policy By Taking The Questionnaires*

Having had notice of the privacy disclosure, Plaintiffs Rodriguez, Torres, Giorgio, Bruckner, Wachtl, and Campana consented to the disclosure by taking the questionnaires. Courts uniformly hold that where a disclosure notifies a user that taking a certain action will constitute consent, the user's performance of that action manifests such consent. *Meyer*, 868 F.3d at 79-80 ("A reasonable user would know that by clicking the registration button, he was agreeing to the terms and conditions accessible via the hyperlink, whether he clicked on the hyperlink or not."); *Edmundson*, 85 F.4th at 707 ("Reasonable internet users would understand that selecting 'Confirm and continue' on the Klarna Widget constitutes their confirmation that they 'agree to the payment terms.'"); *Silver*, 2021 WL 3191752, at *4 (same). That is exactly what happened here: WW notified these Plaintiffs that "[b]y continuing" they agreed that their health data may be shared with third parties and that they could view the Privacy Policy for further details. Thus, "[b]y continuing" with the questionnaires, these Plaintiffs consented to the privacy disclosure and the Privacy Policy.

### 3. *The Privacy Disclosure And Privacy Policy Notified Plaintiffs Of The Very Conduct That Plaintiffs Allege Is Unlawful*

The privacy disclosure and Privacy Policy notified Rodriguez, Torres, Giorgio, Bruckner, Wachtl, and Campana of the conduct for which they now base each of their claims. As a result,

their claims must be dismissed based on consent. Start with the privacy disclosure's language: "By continuing, you agree to your health and other data being used by us for this assessment and marketing purposes. This data may be shared with our third-party providers. See Privacy Policy for details." Murphy Decl. ¶¶ 2-20; Bhatt Decl. ¶ 2. Critically, the disclosure specifically references "health … data," which is precisely the type of information Plaintiffs allege was improperly shared—i.e., their responses to questionnaires asking about their weight, medical history, and health goals. Am. Compl. ¶¶ 141-53. The disclosure further specifies that such data would be used for "marketing purposes" and shared with "third-party providers"—which is exactly what Plaintiffs allege the Website Vendors did with the intercepted questionnaire responses. *Id.* ¶¶ 119, 127, 135. This alone is sufficient to establish consent.

The Privacy Policy reinforces this conclusion. Each version stated under the heading, "**WHAT INFORMATION DO WE COLLECT?**," that WW collected "personal information"—including "health information." ECF No. 49-2, Exs. B-D. Then, under the heading, "**HOW DO WE USE COOKIES AND SIMILAR TECHNOLOGIES?**," each stated that WW and its "marketing partners, affiliates, or analytics or service providers use cookies and similar technologies" on the WW Website. *Id.* Exs. B-C.[9] The October 2023 and November 2023 versions of the Privacy Policy further stated that "[t]hese third parties may use technologies such as cookies to gather information about your activities on [the WW] Website and other sites to provide you advertising based upon your browsing activities and interests." *Id.* The May 2024 version of the Privacy Policy included a similar disclosure, stating that WW used cookies on the WW Website to "tailor certain advertisements that we or our partners think may be of interest to you" and that WW used "Pixel tags," including Google Analytics, to "track the actions of users." *Id.*, Ex. D. Finally,

[9] The May 2024 version of the Privacy Policy omitted "or analytics." ECF No. 49-2, Ex. D.

under the heading, "**WHEN DO WE DISCLOSE INFORMATION TO THIRD PARTIES?**," the Privacy Policy stated:

> As noted above, our Website and App have features such as cookies, pixels, and similar technologies that are used to track your activity on the Websites and App, and other websites that you visit. Information gathered through these technologies are shared with third-party web analytics providers, advertising networks, and social media platforms.

*Id.*, Exs. B-C.[10] The Privacy Policy further stated that WW shared a users' personal information with third parties "to understand how users interact with [the WW] Website" and "to provide [users] with advertisements." *Id.*

In sum, the foregoing disclosures demonstrate that WW notified Rodriguez, Torres, Giorgio, Bruckner, Wachtl, and Campana that it would collect and share the very information that they now complain was collected and shared—the information they input into the questionnaires, including health information. Because these Plaintiffs received specific notice that their health data would be shared with third-party providers via these technologies and nevertheless proceeded with the questionnaires, the Court should dismiss each of these Plaintiffs' claims based on their consent.

### B. <u>Plaintiff Strom's Claims Must Be Dismissed Because She Does Not Allege She Took Any At-Issue Questionnaire</u>

Plaintiff Strom's claims must be dismissed. The Amended Complaint is premised on three specific questionnaires—the Intro Questionnaire, the Clinic Questionnaire, and the Consultation Questionnaire—on which WW allegedly deployed the tracking technologies at issue. Am. Compl. ¶ 140. It devotes three separate subsections to describing how the tracking technologies allegedly

---

[10] The May 2024 version of the Privacy Policy omitted the phrase "and similar technologies." ECF No. 49-2, Ex. D.

intercepted users' communications on each questionnaire. *Id.* ¶¶ 141-153. And every allegation about how the tracking technologies operated, what data they captured, and how that data reached the Website Vendors ties back to one of these three questionnaires. *Id.* ¶¶ 140-54. Strom does not allege that she took any of these questionnaires. *Id.* ¶¶ 66-72. Because she does not connect herself to any of the three questionnaires that form the factual predicate for the Amended Complaint, her claims must be dismissed.

## C. <u>Plaintiffs Cannot Assert Claims Under The Laws Of States In Which They Do Not Reside</u>

### 1. *Plaintiffs Do Not Have Statutory Standing To Assert Their GBL Claim*

Because none of the Plaintiffs are residents of New York, none has statutory standing to assert a GBL claim. The GBL prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce ... ***in this state***." N.Y. Gen. Bus. Law § 349 (emphasis added). New York courts apply one of two tests to interpret this territorial limitation: a deception-based test, which requires that "a plaintiff actually view a deceptive statement while in New York," and a transaction-based test, which focuses "on where the underlying deceptive 'transaction' takes place." *Cruz v. Fxdirectdealer, LLC*, 720 F.3d 115, 123 (2d Cir. 2013).

Plaintiffs fail either test because none alleges that they were deceived in New York or purchased their WW membership while residing in New York. *Camm v. Reach Fin., LLC*, 2026 WL 861670, at *6-7 (S.D.N.Y. Mar. 30, 2026) (dismissing GBL claim where non-New York plaintiffs had no "meaningful connection to New York"); *In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 223 (S.D.N.Y. 2019) (dismissing GBL claim because complaint "contains no allegations that any plaintiff saw statements by [the defendants] while in New York"); *Horn v. Med. Marijuana, Inc.*, 383 F. Supp. 3d 114, 128 (W.D.N.Y. 2019) (dismissing GBL claims because "Plaintiffs do not allege that any part of the online transaction took place in New York"). Plaintiffs

are Florida and California residents who visited the Websites from those states and thus experienced any purported deception from those states. *See Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 402-03 (S.D.N.Y. 2010) (dismissing GBL claim because "nothing in any complaint suggests that Plaintiffs visited the Defendants' websites in New York"). Given their lack of standing, the GBL claim should be dismissed.

Plaintiffs may argue they can establish standing because they allege WW operates the Websites in New York. But their sole support is a conclusory jurisdictional allegation that WW "incorporated the Tracking Technologies in this District" and "received and disclosed" Plaintiffs' data "in this District." Am. Compl. ¶ 17. Bare jurisdictional assertions cannot substitute for substantive allegations of GBL standing. *Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5, 7 (2d Cir. 2012). Plaintiffs fail to allege that all Defendants are domiciled in New York, that the servers hosting the Websites are in New York, or that WW personnel operate the Websites from New York. Nor do they allege that their payments were executed in New York—they merely allege that users can "make payments" on the Websites (Am. Compl. ¶ 63), without indicating where those payments are processed.

Even if Plaintiffs had plausibly alleged that all Defendants were domiciled in New York or that WW operated the Websites there, that would not suffice. It "is well-settled that a purchaser does not have standing to bring a [GBL] claim just because he or she transacted with a seller who resides in New York." *Wright v. Publrs. Clearing House, Inc.*, 439 F. Supp. 3d 102, 105 (E.D.N.Y. 2020); *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 325 (2002). "[C]ourts have consistently rejected claims under [the GBL] based solely on an out-of-state customer's interacting with a website controlled in New York." *Wheeler v. Topps Co.*, 652 F. Supp. 3d 426, 431 (S.D.N.Y. 2023);

*Silva v. Smucker Nat'l. Foods, Inc.*, 2015 WL 5360022, at *10 (E.D.N.Y. Sept. 14, 2015) (same); *Camm*, 2026 WL 861670, at *6 (same). Accordingly, Plaintiffs' GBL claim should be dismissed.

### 2. *Plaintiffs Giorgio, Rodriguez, Torres, Wachtl, Campana, And Connor Do Not Have Statutory Standing To Assert Their CIPA Claim*

Plaintiffs Giorgio, Rodriguez, Torres, Wachtl, Campana, and Connor—Florida residents—lack statutory standing to assert a California CIPA claim. CIPA was enacted "to protect the right of privacy of the people of ***this state***," i.e., California. Cal. Penal Code § 630 (emphasis added); *see also* Cal. Penal Code § 631 (prohibiting interception of a communication "in transit ... or received at any place within ***this state***" (emphasis added)). Accordingly, only "California residents and non-California residents who were in California" may bring CIPA claims. *Ahringer v. LoanDepot, Inc.*, 715 F. Supp. 3d 1274, 1284 (C.D. Cal. 2024); *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *13 (N.D. Cal. Apr. 11, 2024) (same).

These Plaintiffs are not California residents, they do not allege they were present in California when the alleged interceptions occurred, nor do they allege that the Website Vendors intercepted their communications in California, that the Website Vendors are located in California, or that a scheme to intercept their communications was designed in California. Their own allegations confirm that the alleged interception occurred in their "web browsers" on their devices in Florida. Am. Compl. ¶ 220; *see DellaSala v. Samba TV, Inc.*, 2025 WL 3034069, at *3 (N.D. Cal. Oct. 30, 2025) (dismissing non-California plaintiffs' CIPA claims where they failed to allege interception in California). Since there is no California connection, this claim should be dismissed.

### 3. *Plaintiffs Bruckner, Edwins, Henry, And Strom Do Not Have Statutory Standing To Assert Their FSCA Claim*

Plaintiffs Bruckner, Edwins, Henry, and Strom—California residents—lack statutory standing to assert a Florida FSCA claim. "To establish a claim under the Wiretap Statute, the

persons bringing suit must be Florida residents or the improper 'interception' must have occurred in Florida." *Cohen Bros. v. ME Corp., S.A.*, 872 So. 2d 321, 324 (Fla. Dist. Ct. App. 2004); *Strusowski v. Nemours Found.*, 2023 WL 8701299, at *2 (E.D. Pa. Dec. 14, 2023) (dismissing non-Florida plaintiffs' Facebook-pixel-based FSCA claim because they were not Florida residents and their "alleged interactions with [the defendant's] website and app were made [outside of Florida]"). Here, these Plaintiffs are not Florida residents, and they do not allege that any interception occurred in Florida. Am. Compl. ¶¶ 9, 18, 39, 52, 66, 220. Thus, their FSCA claim must be dismissed.

### D. Plaintiffs' Claims Based On "Other Tracking Technologies" Must Be Dismissed

Plaintiffs do not allege any factual details regarding the "other tracking technologies" from "New Relic, Braze, Customer.io, and Nextdoor." Am. Compl. ¶ 138. They merely allege that those technologies function the same as those provided by Meta, Google, and Amplitude. Plaintiffs cannot satisfy *Twombly* and *Iqbal* by bootstrapping their allegations regarding the "other tracking technologies" to those concerning Meta, Google, and Amplitude's tracking technologies. *See Iqbal*, 556 U.S. at 678. All claims, to the extent premised on these technologies, must be dismissed.

### E. Plaintiffs' Claims Fail For Additional, Independent Reasons

#### 1. *Plaintiffs' GBL Claim Fails For Two Additional Reasons*

As explained previously, Plaintiffs' GBL claim fails based on consent and lack of statutory standing. Even if the Court disagrees, the claim should still be dismissed. To state a GBL violation, "a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (quotation omitted). Plaintiffs have not met this standard for two reasons:

***First***, Plaintiffs allege that WW violated the GBL "because it made material misrepresentations and omissions concerning its disclosure of private data to third parties." Am. Compl. ¶ 198. But Plaintiffs fail "to identify any deceptive statement [WW] made, or the additional disclosures [WW] should have made." *Rider v. Uphold HQ Inc.*, 657 F. Supp. 3d 491, 499 (S.D.N.Y. 2023). Thus, the Court should dismiss the claim for failure to allege a deceptive representation or omission. *Prue v. Fiber Composites, LLC*, 2012 WL 1314114, at *8 (E.D.N.Y. Apr. 17, 2012) (dismissing GBL claim where plaintiffs failed to allege "what exactly the[] misrepresentations and false statements were"); *Camm*, 2026 WL 861670, at *7-8 (dismissing GBL claim where plaintiffs failed to allege "why the omission was deceptive").

***Second***, to the extent Plaintiffs argue that WW made misleading statements in its Privacy Policy (Am. Compl. ¶¶ 157-60), they have failed to allege "that they saw the misleading statements of which they complain." *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 240 (S.D.N.Y. 2020). If Plaintiffs never saw the statements, they could not have been deceived. *See Grossman v. GEICO Cas. Co.*, 2022 WL 1656593, at *3 (2d Cir. May 25, 2022) (affirming dismissal because plaintiff did "not allege that they saw GEICO's advertisements"); *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 100 N.Y.S.3d 227, 229 (2019) (same).

### 2. *Plaintiffs' ECPA Claim Fails Because It Is A One-Party Consent Statute*

Plaintiffs cannot state a claim for violation of the ECPA. The ECPA prohibits wiretapping but contains a one-party consent exception: "It shall not be unlawful … for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or ***where one of the parties to the communication has given prior consent to such interception***." 18 U.S.C. § 2511(2)(d) (emphasis added). Thus, if a website

consents to a third party's interception of communications between the website and a user, the website has not violated the ECPA. *See Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *1 (S.D.N.Y. July 12, 2018) (holding that websites were not liable because they had consented to the third party's interception). WW installed the tracking technologies on the Websites (Am. Compl. ¶ 206) and therefore consented to the interception. Plaintiffs' claim thus fails.

Plaintiffs attempt to invoke the crime-tort exception (Am. Compl. ¶ 212), under which the one-party consent defense does not apply if the defendant consented to the interception "for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). This exception is "construed narrowly." *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013). The defendant "must intend to use the [intercepted information]" to commit a crime or tort "at the time of the [interception]," and the criminal or tortious act must be "independent of" the interception—that is, the interception itself cannot be the tortious or criminal act. *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010). For example, in *Caro*, the plaintiff alleged the crime-tort exception applied because the defendant intercepted his communications to invade his privacy. *Id.* But invasion of privacy "is a tort that occurs through the act of interception itself"— "[n]othing more is required after the interception is made for liability to attach." *Id.* at 101. Thus, invasion of privacy could not "satisfy the [ECPA's] requirement of a ***separate and independent*** tortious intent." *Id.* (emphasis added).

The critical distinction, then, is between cases where the alleged tort is the interception itself and cases where the defendant intercepts a communication and then takes some further, independent action—such as affirmatively disclosing the intercepted information to a third party—that constitutes a separate tort. Only the latter can satisfy the crime-tort exception. *Caro*, 618 F.3d at 101.

Plaintiffs' allegations fall squarely on the "interception only itself" side of this line. They do not allege that WW first intercepted their communications and then, in a separate act, disclosed those communications to the Website Vendors. Rather, they allege that the Website Vendors directly intercepted Plaintiffs' questionnaire responses via the tracking technologies embedded on the Websites. Am. Compl. ¶¶ 3, 8, 206. Under this theory, the alleged tort—whether characterized as a HIPAA violation, an intrusion upon seclusion, or a GBL violation—is inseparable from the interception itself. The Website Vendors allegedly received Plaintiffs' health information by *intercepting* their questionnaire answers. Am. Compl. ¶ 8. Plaintiffs also allege WW invaded their privacy by permitting the Website Vendors to *intercept* their responses. *Id.* ¶¶ 233-234. And their GBL, CIPA, FSCA, and other statutory theories are each premised on the interception itself. *Id.* ¶¶ 197, 221, 258. Because there is no post-interception tortious act, Plaintiffs have not plausibly alleged that WW consented to the interception for some *further* criminal or tortious use. *See Caro*, 618 F.3d at 101.[11]

Plaintiffs will likely rely on cases holding that the crime-tort exception applies when a healthcare entity intercepts health information and then discloses it to a third party in violation of HIPAA. *See*, *e.g.*, *Gay v. Garnet Health*, 2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024). But those cases are distinguishable precisely because they involve the post-interception disclosure theory—not the interception theory alleged here. In *Gay*, the plaintiffs alleged that the defendant hospital itself intercepted patients' health information and then, in a separate and independent act,

[11] Elsewhere Plaintiffs allege that WW installed the technologies "for the purpose of disclosing its users' private communications to third parties, including Meta, Google, and Amplitude, in order to obtain analytics and advertising services that advance its business interests." (Am. Compl. ¶ 88.) This allegation is also insufficient. The "disclosure" occurred via the Website Vendors' interception of Plaintiffs' communications; thus, Plaintiffs do not allege a secondary tortious act. And, Plaintiffs do not allege that obtaining analytics and advertising is criminal or tortious.

transmitted that information to third-party advertisers. *Id.* at *3. The court found the crime-tort exception satisfied because the post-interception disclosure to third parties was "an independent action secondary to the interception." *Id.* Here, as stated, Plaintiffs do not allege that WW intercepted their data and then disclosed it. Am. Compl. ¶ 3. That is precisely the scenario that *Caro* holds cannot satisfy the crime-tort exception. 618 F.3d at 101; *see also Kaiser,* 2024 WL 1589982, at *10 (rejecting crime-tort exception where plaintiffs alleged third-party vendors directly intercepted communications rather than alleging post-interception disclosure by the website operator).[12]

In sum, Plaintiffs' ECPA claim should be dismissed due to WW's consent and Plaintiffs' failure to plausibly allege WW had a purpose to commit a tortious or criminal act independent of the interception.

**3. *Plaintiffs Have Failed To Plausibly Allege A CIPA Claim***

Plaintiffs' CIPA claim fails for multiple independent reasons. As a threshold matter, the Florida Plaintiffs lack statutory standing. *See, supra,* Section IV.C.2. On the merits, Plaintiffs fail to allege that the Website Vendors read or attempted to read the allegedly intercepted communications in transit that WW aided and abetted the Website Vendors in allegedly violating CIPA. Finally, the party exception applies to New Relic, Braze, Customer.io, and Nextdoor, so Plaintiffs' claim must be dismissed to the extent it is premised on those entities' actions.

CIPA prohibits wiretapping and is violated when a person: (1) "intentionally taps, or makes any unauthorized connection … with any telegraph or telephone wire, line, cable, or instrument";

[12] The healthcare cases Plaintiffs will likely rely on are distinguishable on another ground. WW is a consumer wellness company—not a healthcare provider—and the questionnaires are consumer intake and marketing tools, not medical records. Plaintiffs do not allege that WW is a HIPAA-covered entity or that the questionnaires were protected by HIPAA.

or (2) "willfully and without consent of all parties to the communication … reads, or attempts to read, or to learn the contents or meaning of any … communication while the same is in transit"; or (3) uses, or attempts to use … any information so obtained; or (4) aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above." Cal. Penal Code § 631. Although Plaintiffs did not sue the Website Vendors, they allege that the *Website Vendors* violated CIPA's second and third clauses and that WW violated the fourth clause by aiding and abetting the Website Vendors' alleged violation.[13] Am. Compl. ¶¶ 219-225.

At the outset, it is important to note that the Court must construe CIPA narrowly and, if it finds the statute ambiguous, in WW's favor. CIPA is a penal statute, and under California law, penal statutes must be strictly construed. *See Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1112 (N.D. Cal. 2025). Further, the rule of lenity requires that ambiguous criminal statutes—even when invoked as the basis for a civil claim—be construed in the defendant's favor. *Id.* Finally, as one court observed, "CIPA is a total mess" and "companies have no way of telling whether their online business activities will subject them to liability." *Id.* Because of this, "courts should generally resolve CIPA's many ambiguities in favor of [a] narrower interpretation." *Id.*

**a. Plaintiffs have not and cannot allege that the Website Vendors violated CIPA's second clause**

Under CIPA's second clause, a plaintiff must allege that a third party "read[], attempt[ed] to read … or learn[ed] the contents or meaning of any message, report, or communication while the same is in transit … or is being sent from, or received at any place within this state." Cal.

[13] Plaintiffs conceded in their opposition to WW's motion to dismiss the original complaint that the Website Vendors did not violate CIPA's first clause because they did not offer any argument in support of a violation. ECF No.55, p. 16-21.

Penal Code § 631(a). Courts interpret "read" or "attempt to read" as requiring "some effort at understanding the substantive meaning of the message [or] communication." *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) (quotation omitted); *Eating Recovery*, 806 F. Supp. 3d at 1118 (explaining that "just intercept[ing] the communication while it is in transit" is not unlawful under CIPA).

In *Torres*, the court granted summary judgment because the third-party vendor did not "independently interpret the substantive meaning of communications while they were in transit." 2025 WL 1135088, at *6. Analyzing communications ***after*** capture and storage "ha[d] no bearing on whether [the third-party] read the communications while they were in transit." *Id*. at *5.

Similarly, in *R.C. v. Sussex Publishers, LLC*, 2025 WL 948060 (N.D. Cal. Mar. 28, 2025), the court dismissed a section 631(a) claim based on nearly identical allegations to those here, concluding that allegations that "information was sent 'to Google for processing'" and later aggregated did "not support a plausible inference Google reads the information 'while the same is in transit.'" *Id.* at *7; *see also DellaSala v. Samba TV, Inc.*, 2026 WL 1138358, at *6 (N.D. Cal. April 21, 2026) (dismissing CIPA claim where plaintiffs alleged defendant "processes the data once it is on its servers").

Here, Plaintiffs never allege that the Website Vendors read or attempted to read their communications while in transit. Instead, they admit the Website Vendors analyzed the communications *after* receipt. Am. Compl. ¶ 119 ("Once the data is received and processed, Meta stores the data on its own servers. Meta then provides the website owner with analytics about the data …."); *id.* ¶ 127 ("After the data has been processed and stored in the database, Google uses this data to generate reports to analyze the data from the site."); *id.* ¶ 135 ("Once this data is intercepted and processed, Amplitude provides a dashboard platform where the customer can

access the data, generate analytics reports and charts to gain insights into users' behaviors."). Accordingly, Plaintiffs have not and cannot state a violation of the second clause.

**b. Plaintiffs have not and cannot allege that the Website Vendors violated CIPA's third clause**

"A violation under the third clause of [CIPA] is contingent upon a finding of a violation of the first or second clause of [CIPA]." *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 744 (N.D. Cal. 2023). Plaintiffs have not and cannot allege a violation of the first or second clauses, and thus they necessarily have not and cannot allege a violation of the third clause.

**c. Plaintiffs have not and cannot plausibly allege that WW aided or abetted a CIPA violation**

Plaintiffs have not plausibly alleged a violation of CIPA's fourth clause, which makes liable any party that "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned" in CIPA's first three clauses. The defendant must (1) know that the third party read a plaintiff's communications while in transit; and (2) intentionally assist the third party in doing so. *Heiting v. Taro Pharms. U.S., Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023) (dismissing claim where plaintiff did not allege that the defendant "acted with the requisite knowledge or intent to aid and abet [the third party's] purported CIPA violation").

Plaintiffs' claim under the fourth clause fails for two independent reasons. First, because Plaintiffs have not plausibly alleged a violation of the first or second CIPA clauses, they cannot plausibly allege that WW aided or abetted such a violation. *A.S. v. SelectQuote Ins. Servs.*, 2024 WL 3881850, at *11 (S.D. Cal. Aug. 19, 2024). Second, Plaintiffs do not allege that WW had the requisite knowledge and intent. They allege only that WW knew the tracking technologies would cause "the disclosure of users' private communications to third parties" (Am. Compl. ¶¶ 88-96),

but knowledge that the Website Vendors received communications does not demonstrate knowledge of an unlawful act. Plaintiffs had to allege that WW knew the Website Vendors read their communications while in transit *and* intentionally assisted them in doing so. *See Smith v. Yeti Coolers, LLC*, 2025 WL 877127, at *1 (N.D. Cal. Mar. 14, 2025) (explaining that a plaintiff must establish that a defendant "knowingly agreed with or employed [a third party] to engage in conduct that violated the wiretapping statute"). The Amended Complaint contains no such allegations. The CIPA claim should be dismissed with prejudice.

#### d. The party exception applies to New Relic, Braze, Customer.io, and Nextdoor

Plaintiffs' CIPA claim must be dismissed to the extent it is premised on New Relic, Braze, Customer.io, or Nextdoor's conduct because Plaintiffs have failed to plausibly allege that those entities were not parties to Plaintiffs' communications with WW.[14] CIPA applies "only to eavesdropping by a third party and not to recording by a participant to a conversation." *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979). In *Rogers v. Ulrich*, 52 Cal. App. 3d 894 (1975), the California Court of Appeal held that a person who used a tape recorder to record a telephone conversation without consent did not violate CIPA. *Id.* at 898-99. In contrast, in *Ribas v. Clark*, 38 Cal. 3d 355 (1985), the California Supreme Court held that a person who secretly listened to a private conversation between a husband and wife violated CIPA because that person was a true third-party eavesdropper. *Id.* at 358-60. Courts have applied this distinction to the internet context, recognizing that website vendors can function as the modern equivalent of the tape recorder in *Rogers*: tools deployed by a website to facilitate and record its own communications with users.

[14] WW contends that the party exception also applies to Meta, Google, and Amplitude, but it does not advance that argument in this motion because to do so would require the introduction of facts outside the scope of the Amended Complaint.

*Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021). As such, the vendor is an extension of the website itself and a party to the communication. *Id.*

It is Plaintiffs' burden to establish that the party exception does not apply: a plaintiff must plausibly "allege that the intercepting party was not a party to the intercepted communication." *Heiting v. Fka Distrib. Co.*, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025). Courts are split on what this requires: some hold the party exception applies unless the plaintiff alleges the website vendor *actually uses* the intercepted communication for its own purposes, *see Graham*, 533 F. Supp. 3d at 832-33, while others require only allegations that the vendor has the "capability" to use the intercepted communication for its own purposes, *see Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023). However, the Court need not decide which test to apply because Plaintiffs' allegations as to New Relic, Braze, Customer.io, and Nextdoor fail under either one. Plaintiffs include no specific allegations as to these entities. At best, they generally allege that "unauthorized third parties" use intercepted communications "for their own purposes," including "in connection with lucrative ad services." Am. Compl. ¶¶ 3, 10. Courts have held that substantially similar allegations were too vague and conclusory to overcome the party exception. *See Valenzuela v. Super Bright Leds Inc.*, 2023 WL 8424472, at *8 (C.D. Cal. Nov. 27, 2023) (party exception applied because allegations that website vendor could use intercepted information "for purposes other than storage including data analytics and marketing/advertising to consumers" were "conclusory and insufficient"); *Cody v. Boscov's, Inc.*, 658 F. Supp. 3d 779, 782 (C.D. Cal. 2023) (same). Accordingly, the party exception applies, and Plaintiffs' CIPA claim as to these entities should be dismissed.

#### 4. *Plaintiffs Have Failed To Plausibly Allege A Claim For Invasion Of Privacy*

The Amended Complaint alleges that all Plaintiffs assert an invasion of privacy claim. Am.

Compl. ¶¶ 229-40. But in opposing WW's motion to dismiss the original complaint, Plaintiffs "conced[ed] that invasion of privacy claims cannot be brought under New York or Florida law." ECF No. 55, at 24 n.19. The Florida Plaintiffs have thus forfeited this claim, and it should be dismissed with prejudice.

As to the California Plaintiffs, they must allege an "intrusion into a private place, conversation, or matter" that was done "in a manner highly offensive to a reasonable person." *Belen v. Ryan Seacrest Productions, LLC*, 65 Cal. App. 5th 1145, 1163 (2021). Their claims fail for two reasons.

First, they have not alleged an intrusion; they allege a *disclosure* of their questionnaire responses to the Website Vendors. Am. Compl. ¶ 232; *see Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 848 (N.D. Ill. 2023) (allegation that defendant "intruded by deploying third-party source code that caused her personally identifiable patient data to be disclosed to third parties" did not amount to an intrusion); *Okash v. Essentia Health*, 2024 WL 1285779, at *7 (D. Minn. Mar. 26, 2024) ("Courts generally agree that when a plaintiff voluntarily browses a healthcare website, there is no intrusion when the Pixel transmits the information to Meta.").

Second, they cannot plausibly allege "an objectively reasonable expectation of privacy" or that the disclosure of their questionnaire responses was "highly offensive." *Belen*, 65 Cal. App. 5th at 1163. Start with the obvious: the internet is not a private place. *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *1 (S.D. Cal. May 8, 2024) ("Generally, the internet is not a place where users have a reasonable expectation of privacy."). Courts are accordingly "hesitant to extend the tort of invasion of privacy to the routine collection of personally identifiable information as part of electronic communications." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 525 (C.D. Cal. 2021) (citation omitted). And for good reason: "Most of us understand that what we

do on the Internet is not completely private." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 266 (3d Cir. 2016). That common-sense principle applies here. Plaintiffs were not patients confiding in their doctors through a secure portal; they were consumers voluntarily filling out questionnaires on a public website to sign up for a weight-loss program. Nothing about that scenario suggests the kind of private exchange that the tort of intrusion upon seclusion is designed to protect.

This case is also materially different from cases finding an invasion of privacy based on disclosure of health-related information on a website. In those cases, the disclosure was egregious—involving, for example, hackers accessing confidential medical information and Social Security numbers, *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1138, 1143 (C.D. Cal. 2021); data breaches disclosing diagnosis codes and treating physicians, *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 926 (S.D. Cal. 2020); or a hospital's secure patient portal disclosing data to Facebook, *Doe v. Regents of the Univ. of Cal.*, 672 F. Supp. 3d 813, 816, 820 (N.D. Cal. 2023). Here, Plaintiffs lack the same expectation of privacy in their voluntary questionnaire responses, and the disclosure of such responses is not highly offensive. Their claim should be dismissed.

#### 5. *Plaintiffs' Unjust Enrichment Claim Fails Because They Have An Adequate Remedy At Law*

Plaintiffs' unjust enrichment claim is premised on the same allegations as their statutory and tort claims, for which they seek monetary damages. Am. Compl. ¶¶ 200, 213, 227, 238. But "[u]njust enrichment is an equitable claim that is unavailable where an adequate remedy at law exists." *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010); *Rabin v. Google LLC*, 2023 WL 4053804, at *13 (N.D. Cal. June 15, 2023) (same under California law); *Emondson v. 2001Live, Inc.*, 2017 WL 10085028, at *3 (M.D. Fla. Mar. 30, 2017)

(same under Florida law). Nowhere in the Amended Complaint do Plaintiffs allege they lack an adequate remedy at law. They affirmatively seek monetary damages throughout the Amended Complaint. Am. Compl. ¶¶ 200, 213, 227, 238, 266. Their unjust enrichment claim should therefore be dismissed. *See Brumfield v. Trader Joe's Co.*, 2018 WL 4168956, at *5 (S.D.N.Y. Aug. 30, 2018) (dismissing unjust enrichment claim because plaintiffs asserted "statutory and tort claims" for which "an adequate remedy exists at law").

#### 6. *Plaintiffs Have Failed To Plausibly Allege A Violation Of The FSCA*

Plaintiffs' FSCA claim fails because the FSCA does not apply to the tracking technologies at issue, and Plaintiffs lacked a reasonable expectation of privacy. Under the FSCA, a person who "[i]ntentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any … electronic communication" has violated the statute. Fla. Stat. Ann. § 934.03. Because the FSCA is a penal statute, "the rule of lenity demands that the Court interpret the FSCA in favor of [the defendant]." *Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860, at *3 (Fla. Cir. Ct. June 17, 2021). Florida courts have thus been wary of "creative class action litigants" who set forth "novel" readings of this "decades-old" statute. *Cardoso v. Whirlpool Corp.*, 2021 WL 12313079, at *2 (S.D. Fla. Sept. 15, 2021). In several cases involving session-replay software that recorded clicks, search terms, browsed webpages, and information inputted into websites, courts rejected FSCA claims, holding that the statute "does not extend to the use of commonplace analytics software to improve a website browsers' experience." *Jacome*, 2021 WL 3087860, at *1-2; *Connor v. Whirlpool Corp.*, 2021 WL 3076477, at *1-2 (S.D. Fla. July 6, 2021); *Goldstein v. Luxottica of Am., Inc.*, 2021 WL 4093295, at *1 (S.D. Fla. Aug. 23, 2021), *report and recommendation adopted,* 2021 WL 4125357 (S.D. Fla. Sept. 9, 2021).

The same is true here. Although Plaintiffs do not allege that WW used session-replay software, their allegations are materially indistinguishable. Like the session-replay software, the tracking technologies at issue in this case allegedly record "specific information [users] input into the website and what they searched" (Am. Compl. ¶ 117), "what pages they visit[ed]" (*id.* ¶ 125), and "clicks" (*id.* ¶ 133). Because Plaintiffs allege the tracking technologies function in the same manner as session-replay software that courts have held falls outside the FSCA's reach, they too are beyond the statute's scope.[15]

Even if the FSCA applies to the tracking technologies, Plaintiffs' claim should still be dismissed because they "must plead that [they] had a reasonable expectation of privacy when visiting the [w]ebsite." *Jacome*, 2021 WL 3087860, at *6-7. As explained *supra* in Section IV.E.4, Plaintiffs did not have a reasonable expectation of privacy in their responses to the publicly accessible online questionnaires.

### F. <u>Leave To Amend Should Not Be Granted</u>

The Court should dismiss the Amended Complaint with prejudice, and leave to amend should not be granted because Plaintiffs forfeited their opportunity to amend their allegations in response to WW's motion to dismiss the original complaint. In granting Plaintiffs leave to file the Amended Complaint, the Court stated: "To the extent Plaintiffs are able to address any of the arguments raised in Defendants' motion to dismiss, they shall do so in their Amended Complaint." ECF No. 89, at 3. Plaintiffs did not address *any* of WW's arguments and did not even drop the claims they conceded they could not allege in their opposition to the motion to dismiss. They have

---

[15] To the extent Plaintiffs rely on *W.W. v. Orlando Health, Inc.*, 2025 WL 722892 (M.D. Fla. Mar. 6, 2025), to distinguish *Jacome*, they are mistaken. *Orlando Health* distinguished *Jacome* because the plaintiff there was a patient of a healthcare organization. Plaintiffs here are not patients confiding in a healthcare provider; they are consumers who voluntarily completed a publicly accessible online questionnaire to enroll in a commercial weight-loss program.

therefore conceded that they cannot cure their pleading deficiencies, and leave to amend should not be granted. *See United States ex rel. Levine v. Vascular Access Ctrs. L.P.*, 2020 WL 5534670, at *8 (S.D.N.Y. Sept. 15, 2020).

## V. CONCLUSION

For the foregoing reasons, WW respectfully requests that the Court dismiss the Amended Complaint with prejudice.

DATED: May 26, 2026

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: */s/ P. Craig Cardon*

P. Craig Cardon (Admitted Pro Hac Vice)
Kevin Murphy (Admitted Pro Hac Vice)
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067
Telephone: (310) 228-3700
ccardon@sheppard.com
kemurphy@sheppard.com

Abby Meyer (Admitted Pro Hac Vice)
650 Town Center Drive, 10th Floor
Costa Mesa, CA 92626-1993
Telephone: (714) 513-5100
ameyer@sheppard.com

Sylvia Waghorne
30 Rockefeller Plaza
New York, New York 10112-0015
Telephone: (212) 653-8700
Swaghorne@sheppard.com

*Attorneys for Defendants*
WW International, Inc., WW.Com, LLC, Weekend Health of Texas, PA, Weekend Health of New Jersey P.C., Weekend Health of Pennsylvania, P.C., and WeightWatchers Clinic f/k/a Brantley T. Jolly, M.D., Prof. Corp.

**WORD COUNT LIMIT CERTIFICATION**

I, P. Craig Cardon, hereby certify that the foregoing memorandum of law complies with the word count limit set forth in S.D.N.Y. Local Civil Rule 7.1(c) and Section 4.A of the Individual Rules & Practices in Civil Cases of Hon. Ronnie Abrams. According to the word count of the word-processing program used to prepare the memorandum, and exclusive of the portions of it that are excluded by the rule, there are 8,711 words in the document.

*/s/ P. Craig Cardon*
P. Craig Cardon