**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**MANHATTAN DIVISION**

ERICA BRUCKNER, ANITA CAMPANA, MEGAN CONNOR, DONNA EDWINS, ALLISON GIORGIO, JANINE HENRY, ASHLEY RODRIGUEZ, SUSANNE STROM, JENNIFER TORRES, ANTOINETTE WACHTL, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

WW INTERNATIONAL, INC., WW.COM, LLC, WEEKEND HEALTH OF TEXAS, PA, WEEKEND HEALTH OF NEW JERSEY P.C., WEEKEND HEALTH OF PENNSYLVANIA, P.C., AND BRANTLEY T. JOLLY, M.D., PROF. CORP.,

Defendants.

Case No. 1:25-cv-02944-RA-GWG

Hon. Ronnie Abrams

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

**PAGE**


I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 2

III. LEGAL STANDARD ........ 4

IV. ARGUMENT ........ 5

A. WW's Consent Argument As To Plaintiffs Rodriguez, Torres, Giorgio, Bruckner, Wachtl, And Campana Fails ........ 5

B. Plaintiffs Satisfy Rule 8 As To New Relic, Braze, Customer.io, And Nextdoor .... 8

C. Plaintiff Strom Adequately States Claims ........ 9

D. The GBL Claims May Proceed On A Nationwide Basis ........ 10

E. Plaintiffs' GBL 349 Claim Is Plausible ........ 13

F. Plaintiffs State A Claim For Invasion Of Privacy ........ 15

G. Plaintiffs' ECPA Claims Are Plausible ........ 18

H. Plaintiffs' CIPA Claims Are Plausible ........ 20

I. Plaintiffs' FSCA Claims Are Plausible ........ 24

J. Plaintiffs State A Claim For Unjust Enrichment ........ 25

K. At A Minimum, Leave To Amend Should Be Granted ........ 27

V. CONCLUSION ........ 27

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Baroni v. Port Auth. of New York & New Jersey*,
161 F.4th 48 (2d Cir. 2025) ........................................ 27

*Belen v. Ryan Seacrest Prods., LLC*,
65 Cal. App. 5th 1145 (Cal. App. 2021) ........................................ 17

*Berkson v. Gogo LLC*,
97 F. Supp. 3d 359 (E.D.N.Y. 2015) ........................................ 5

*Brown v. Google LLC,*
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........................................ 6, 8

*Brumfield v. Trader Joe's Co.*,
No. 17-CV-3239, 2018 WL 4168956 (S.D.N.Y. Aug. 30, 2018) ........................................ 26

*Calhoun v. Google, LLC,*
113 F.4th 1141 (9th Cir. 2024) ........................................ 5

*Camm v. Reach Fin., LLC*,
No. 25 CIV. 1921 (KPF), 2026 WL 861670 (S.D.N.Y. Mar. 30, 2026) ........................................ 12, 14

*Cardoso v. Whirlpool Corp.*,
No. 21-CV-60784-WPD, 2021 WL 12313079 (S.D. Fla. Sept. 15, 2021) ........................................ 25

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) ........................................ 19

*Castillo v. Costco Wholesale Corp.*,
No. 2:23-CV-01548-JHC, 2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ........................................ 18, 19

*Chiste v. Hotels.com L.P.*,
756 F. Supp. 2d 382 (S.D.N.Y. 2010) ........................................ 12

*Cody v. Boscov's, Inc.*,
658 F. Supp. 3d 779 (C.D. Cal. 2023) ........................................ 24

*Collins v. Pearson Educ., Inc.*,
721 F. Supp. 3d 274 (S.D.N.Y. 2024) ........................................ 3, 9

*Connor v. Whirlpool Corp.*,
No. 21-CV-14180-WPD, 2021 WL 3076477 (S.D. Fla. July 6, 2021) ........................................ 25

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024) .................................................................. 3, 14, 18

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) ........................................................................... 16

*Cruz v. FXDirectDealer, LLC*,
720 F.3d 115 (2d Cir. 2013) ..................................................................................... 10, 11

*D.S. v. Tallahassee Mem'l HealthCare,*
No. 4:23CV540-MW/MAF, 2024 WL 2318621 (N.D. Fla. May 22, 2024) ............................ 24

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) ......................................................................... 21

*DellaSala v. Samba TV, Inc.*,
2026 WL 1138358 (N.D. Cal. April 21, 2026) .................................................................. 22

*Doe v. Call-On Doc, Inc.,*
No. 24CV2095-GPC(KSC), 2025 WL 1677632 (S.D. Cal. June 13, 2025) ............................ 24

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025)................................................................... 20, 22

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) ................................................................... 16, 17

*Doe v. GoodRx Holdings, Inc.*,
No. 23-CV-00501-AMO, 2025 WL 2052302 (N.D. Cal. July 22, 2025) ................................ 16

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ................................. 19

*Doe v. Regents of the Univ. of Cal.*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) ..................................................................... 16, 17

*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025)............................................................... 20, 21, 22

*Emondson v. 2001Live, Inc.*,
No. 8:16-CV-3243-T-17AEP, 2017 WL 10085028 (M.D. Fla. Mar. 30, 2017) ........................ 27

*Fed. Trade Comm'n v. Roomster Corp.*,
654 F. Supp. 3d 244 (S.D.N.Y. 2023) ............................................................................ 11

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*,
400 F. App'x 611 (2d Cir. 2010) ................................................................................... 26

*Fero v. Excellus Health Plan, Inc.*,
236 F. Supp. 3d 735 (W.D.N.Y. 2016) .................................................................... 13, 14

*Galper v. JP Morgan Chase Bank, N.A.*,
802 F.3d 437 (2d Cir. 2015) ........................................................................................ 4

*Gay v. Garnet Health,*
No. 23-CV-06950 (NSR), 2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024) ................................ 18

*Goldstein v. Luxottica of Am., Inc.*,
No. 21-80546-CIV, 2021 WL 4093295 (S.D. Fla. Aug. 23, 2021) ........................................... 25

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
98 N.Y.2d 314 (2002)........................................................................................ 10, 11, 12

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ........................................................................... 24

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ........................................................................... 7

*Gutierrez v. Lemonade, Inc.*,
No. 21-CV-7070 (JGK), 2022 WL 3214852 (S.D.N.Y. Aug. 9, 2022) ..................................... 11

*Hazel v. Prudential Fin., Inc.*,
No. 22-cv-07465-CRB, 2023 WL 3933073 (N.D. Cal. June 9, 2023)....................................... 21

*Heiting v. Taro Pharms. U.S., Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023)........................................................................... 23

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*,
100 N.Y.S.3d 227 (2019) ............................................................................................ 15

*Horn v. Med. Marijuana, Inc.*,
383 F. Supp. 3d 114 (W.D.N.Y. 2019) ........................................................................... 12

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021)........................................................................... 17

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........................................................................... 26

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ...................................................................................... 15

*In re Fyre Festival Litig.*,
399 F. Supp. 3d 203 (S.D.N.Y. 2019) ............................................................................ 12

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 7

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 7

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) .......... 17

*Jacome v. Spirit Airlines Inc.*,
No. 2021-000947-CA-01, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) .......... 25

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 23

*Kane v. Univ. of Rochester*,
No. 23-CV-6027-FPG, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) .......... 14, 18

*Katz-Lacabe v. Oracle America, Inc.,*
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 18

*Kaufman v. Sirius XM Radio, Inc.*,
474 F. App'x 5 (2d Cir. 2012) .......... 12

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) .......... 16

*Lesh v. Cable News Network, Inc.*,
767 F. Supp. 3d 33 (S.D.N.Y. 2025) .......... 6

*Lopez v. Apple, Inc.,*
519 F. Supp. 3d 672 (N.D. Cal. 2021) .......... 23

*Lugones v. Pete & Gerry's Organic, LLC*,
440 F. Supp. 3d 226 (S.D.N.Y. 2020) .......... 15

*M. H. v. Done Glob. Inc.*,
No. 24-CV-03040-RFL, 2025 WL 629613 (N.D. Cal. Feb. 26, 2025) .......... 17

*Nick v. Target Corp.*,
No. CV154423, 2017 WL 10442061 (E.D.N.Y. Sept. 13, 2017) .......... 14

*Okash v. Essentia Health*,
No. CV 23-482, 2024 WL 1285779 (D. Minn. Mar. 26, 2024) .......... 16

*Orlander v. Staples, Inc.*,
802 F.3d 289 (2d Cir. 2015) .......... 13

*Pattison v. Teladoc Health, Inc.*,
No. 23-CV-11305 (NSR), 2025 WL 1756364 (S.D.N.Y. June 25, 2025) .......................... 18, 19

*Polk v. Del Gatto, Inc.*,
No. 21 CIV. 129 (PAE), 2021 WL 3146291 (S.D.N.Y. July 23, 2021).................................. 11

*Prue v. Fiber Composites, LLC*,
No. 11-CV-3304, 2012 WL 1314114 (E.D.N.Y. Apr. 17, 2012) .............................................. 14

*R.C. v. Sussex Publishers, LLC*,
No. 24-CV-02609-JSC, 2025 WL 948060 (N.D. Cal. Mar. 28, 2025)..................................... 22

*R.S. v. Prime Healthcare Servs., Inc.*,
No. 5:24-CV-00330-ODW (SPX), 2025 WL 103488 (C.D. Cal. Jan. 13, 2025)...................... 18

*Rabin v. Google LLC*,
No. 22-CV-04547-BLF, 2023 WL 4053804 (N.D. Cal. June 15, 2023) .................................. 26

*Rider v. Uphold HQ Inc.*,
657 F. Supp. 3d 491 (S.D.N.Y. 2023) ...................................................................................... 14

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .................................................................................... 20

*Rodriguez v. Aquatic Sales Sols. LLC*,
735 F. Supp. 3d 1208 (C.D. Cal. 2024)..................................................................................... 22

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975)........................................................................................................ 23

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021)....................................................................................... 17

*Schneider v. Colgate-Palmolive Co.*,
677 F. Supp. 3d 91 (N.D.N.Y. 2023)......................................................................................... 26

*Silva v. Smucker Nat'l. Foods, Inc.*,
No. 14-CV-6154 JG RML, 2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) ............................. 12

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) .................................................................................................... 7

*Smith v. Rack Room Shoes, Inc.*,
No. 24-CV-06709, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) ............................................ 19

*Smith v. Yeti Coolers, LLC*,
No. 24-CV-01703-RFL, 2025 WL 877127 (N.D. Cal. Mar. 14, 2025).................................... 23

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) ........................................................................ 16

*Suarez v. California Nat. Living, Inc.*,
No. 17 CV 9847, 2019 WL 1046662 (S.D.N.Y. Mar. 5, 2019)............................................... 13

*Tate v. VITAS Healthcare Corp.,*
762 F. Supp. 3d 949 (E.D. Cal. 2025) ........................................................................ 24

*Thomas v. Papa Johns Int'l, Inc.*,
No. 22cv2012, 2024 WL 2060140 (S.D. Cal. May 8, 2024) ............................................ 17, 18

*Torres v. Prudential Fin.,* Inc.,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ................................................................ 22

*Turner v. Nuance Commc'ns, Inc.,*
735 F. Supp. 3d 1169 (N.D. Cal. 2024)....................................................................... 24

*U.S. v. Christensen*,
828 F.3d 763 (9th Cir. 2015) ........................................................................................ 23

*United States v. Hertler*,
776 F.3d 680 (9th Cir. 2015) ........................................................................................ 20

*Valenzuela v. Super Bright Leds Inc.*,
No. EDCV2301148JAKSPX, 2023 WL 8424472 (C.D. Cal. Nov. 27, 2023).......................... 24

*Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*,
No. 13CV7639-LTS-MHD, 2015 WL 4040882 (S.D.N.Y. July 2, 2015).............................. 8, 9

*W.W. v. Orlando Health, Inc.,*
No. 6:24-CV-1068-JSS-RMN, 2025 WL 722892 (M.D. Fla. Mar. 6, 2025) ................ 24, 25, 26

*Wallace v. Health Quest Sys., Inc.*,
No. 20 CV 545, 2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021)............................................... 26

*Ward v. TheLadders.com, Inc.*,
3 F. Supp. 3d 151 (S.D.N.Y. 2014) ........................................................................... 10, 11

*Wheeler v. Topps Co.*,
652 F. Supp. 3d 426 (S.D.N.Y. 2023) ........................................................................ 12

*Winfield v. Trottier*,
710 F.3d 49 (2d Cir. 2013) .......................................................................................... 6

*Wright v. Publrs. Clearing House, Inc.*,
439 F. Supp. 3d 102 (E.D.N.Y. 2020) ........................................................................ 12

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021)........................................................................... 20

**REGULATIONS**

45 C.F.R. §§ 164.508(a)(1), 164.508(a)(3), 164.508(c).................................................................. 8

## I. INTRODUCTION

While Weight Watchers ("WW") has found two new declarants to make new, untested factual assertions about the WW sign-up process, neither this nor its legal arguments support dismissal of Plaintiffs' claims. The Complaint[1] alleges that WW disclosed Plaintiffs' sensitive health information through mandatory questionnaires without Plaintiffs' knowledge and consent. These allegations—coupled with WW's own statements under oath—confirm that each claim is plausibly alleged.

WW's consent defense illustrates this point. WW's prior declarant—whose sworn declaration WW itself submitted in connection with its last motion to dismiss—confirmed that every WW customer who signed up for a weight-management membership is required to affirmatively check a box acknowledging that WW would use their health data only "to the extent necessary for the provision of the tools and function of WW products." That express, mandatory promise cannot be overridden by ambiguous statements—subject to competing interpretations—that WW now elevates through a different declarant, nor can it establish consent to the conduct alleged here.

WW's remaining arguments are equally flawed, many on the same grounds described in Plaintiffs' last opposition brief. For example, WW's claim that California law does not recognize privacy claims based on the disclosure of health data—unless in the context of an individual physician on a patient portal—is inconsistent with countless decisions recognizing California privacy claims outside this context. Its CIPA and FSCA challenges are equally flawed, ignoring directly-on-point case law in favor of different types of cases with different facts that have no

[1] "¶" or "Complaint," as used herein refers to Plaintiffs' First Amended Class Action Complaint. ECF No. 96.

applicability here. Its challenges to Plaintiffs' GBL claims also lack merit and ignore the strong New York nexus alleged by Plaintiffs consistent with Second Circuit authority.

At bottom, WW cannot win on its motion by (again) submitting new evidence and simultaneously asking this Court to overlook its prior admissions. Nor can it obtain dismissal merely by misstating the law and facts of this case. For each of these reasons, WW's Motion to Dismiss First Amended Class Action Complaint ("Motion" or "Mot.") (ECF No. 107) should be denied in its entirety.

## II. FACTUAL BACKGROUND

WW is a New York-based online platform that provides weight-management and weight-related telehealth services, including prescription weight-loss medications. ¶¶ 87, 97-99, 104-05. To access these services, WW customers complete one or more of three health-related questionnaires: the Intro Questionnaire, the Clinic Questionnaire, and the Consultation Questionnaire. ¶¶ 100-11. Through these questionnaires, WW collects highly sensitive health information, including customers' weight, height, diabetes status, medication history, diagnoses such as pancreatitis and PCOS, eating-disorder history, and history of suicide attempts. ¶¶ 101, 107, 110.

As alleged in the Complaint, WW embedded tracking technologies provided by at least seven third parties—Meta, Google, Amplitude, New Relic, Braze, Customer.io, and Nextdoor—on the Intro Questionnaire, Clinic Questionnaire, and Consultation Questionnaire. ¶¶ 138, 140-142, 146, 153. Each of these technologies operates in substantially the same manner: they collect users' responses to health-related questions and transmit that data, together with unique identifiers to identify each individual customer, to the respective third parties. ¶¶ 140-154. These pixels immediately act on the data as users enter their responses, such that they understand and interpret

the communications before storage in real time. ¶¶ 9, 116-17, 125-27, 132-35, 138, 209. The third parties to whom WW disclosed Plaintiffs' private data include some of the world's largest advertising and analytics platforms, each of whom can understand and use the data for their own benefit.

The Complaint includes numerous examples of these disclosures. For example, Google allegedly received information revealing that a user suffered from pancreatitis, transmitted alongside Google's proprietary "guid" and "auid" identifiers. ¶ 149 & Figs. 15-16. In another example, Nextdoor allegedly received information indicating that a user weighed more than 177 pounds, together with a unique "iid" identifier. ¶ 150 & Figs. 17-18. The Complaint contains at least six additional, representative examples reflecting similar transmissions of users' health information to third parties. ¶¶ 141-54.

Plaintiffs are residents of California and Florida who used WW's websites between February 2011 and January 2025,[2] completed one or more of these questionnaires, and, unbeknownst to them, had their private health information disclosed to numerous third parties. ¶¶ 18-86.

Plaintiffs were not aware, and did not consent, to WW's disclosure of their private health data to third parties who use this data for their own benefit. ¶¶ 23-24, 30-31, 37-38, 44, 50-51, 57-

[2] WW's claim that Plaintiffs must allege the precise day they signed up for WW is incorrect. By providing the month and year each Plaintiff signed up and completed a questionnaire, Plaintiffs have provided WW with sufficient information to assess Plaintiffs' claims. *See Collins v. Pearson Educ., Inc.*, 721 F. Supp. 3d 274, 282 (S.D.N.Y. 2024) (rejecting the argument that the plaintiff's privacy claim was deficient because it failed to identify the specific dates on which they were viewed); *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 376–77 (S.D.N.Y. 2024) (accepting Plaintiffs' alleged website usage beginning "in or around" a specific month and year, without requiring precise sign-up dates). WW's citation to *Yahoo* is misplaced as, there, plaintiffs did not allege the month or even the year they signed up and only provided that information following Judge Cote's *sua sponte* order. Mot. at 3 n.4. Plaintiffs here have already provided the very information Judge Cote found lacking in *Yahoo*.

58, 64-65, 71-72, 78-79, 85-86, 155-56. Indeed, WW's own representations promised the opposite. During the sign-up process for a weight-management membership, WW promised on the payment page that it would "process health related data" only "to the extent necessary for the provision of the tools and function of WW products (e.g. providing your food plan and points budget)." ¶ 157. And WW's Notice of Privacy Practices, which governs its use of "health information" at least with respect to the WW Clinic, expressly promised that WW would "never share [users'] information for marketing purposes" and would "never sell [users'] information to third parties" absent users' "written permission." ¶ 158. WW never obtained that written permission. *Id*. Nowhere in WW's sign-up/payment flow or privacy policies did WW disclose that it was transmitting identifiable health data—including users' specific answers to its health questionnaires—to third parties such that the data could be used and monetized both by WW and these third parties. ¶¶ 155-60.

WW engaged in conduct that not only violated its express promises to its customers but also ran counter to countless warnings from government regulators for entities that handle health data not to use these types of technologies because they are privacy invasive. ¶¶ 92-94. WW itself was placed on notice that its use of these technologies was disclosing at least some of its customers' data in 2022, when it was sued for claims that it shared video-viewing data in violation of the Video Privacy Protection Act through this same technology. ¶ 95. Given that WW knew exactly what it was doing and what it had promised users, its conduct is reprehensible and wholly unjustifiable.

## III. LEGAL STANDARD

On a Rule 12(b)(6) motion, the court "is required to accept as true the facts alleged in the complaint, consider those facts in the light most favorable to the plaintiff, and determine whether the complaint sets forth a plausible basis for relief." *Galper v. JP Morgan Chase Bank, N.A.*, 802

F.3d 437, 443 (2d Cir. 2015).

## IV. ARGUMENT

### A. WW's Consent Argument as to Plaintiffs Rodriguez, Torres, Giorgio, Bruckner, Wachtl, and Campana Fails

WW's consent defense collapses under the weight of its own evidence.[3] As WW's own declarant confirmed, every WW customer who purchased a weight-management membership is required to affirmatively check a box governing how WW will use their health data. This provision limits WW's use of health data solely "to the extent necessary for the provision of the tools and function of WW products (e.g. providing your food plan and Points Budget)." *See* Declaration of Edward Cai ("Cai Declaration"), ECF No. 49-2 ¶¶ 10-11, 18, (declaring under oath that users "**must** check" this box and "cannot move forward with creating an account without checking" it) (emphasis in original). WW's own brief insists that checking this box results in a contractual "agree[ment]" on how "health data may be shared." Mot. at 11-13 (citing cases). Plaintiffs Rodriguez, Torres, Giorgio, Bruckner, Wachtl, and Campana all completed this flow and checked this box. *See* ¶¶ 19, 26, 46-47, 60-61, 74-75, 81-82.[4] Similarly, WW's Notice of Privacy Practices, which governs its use of "health information" with respect to at least WW Clinic, expressly promised that WW would "never share [users'] information for marketing purposes" and would "never sell [users'] information to third parties" absent the user's "written permission." ¶ 158. This dooms WW's consent defense, for which it bears the burden of proof. *See Calhoun v. Google, LLC,*

---

[3] Plaintiffs also dispute WW obtained notice and assent. *See Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 403–04 (E.D.N.Y. 2015) (finding no assent to terms where sign-in process used small text next to large action buttons and did not require scrolling through the terms before "I agree" can be clicked).

[4] WW's suggestion that Plaintiff Bruckner and Campana only completed the Clinic Questionnaire is inconsistent with Plaintiffs' allegations that they signed up and paid for weight-management memberships in March 2020 and August 2019, respectively. *See* ¶¶ 19, 26. This is years before WW ever offered the Clinic product. *See* Cai Declaration ¶¶ 3-4.

113 F.4th 1141, 1147 (9th Cir. 2024) (explaining defendant "bears the burden of proof" on consent which must "explicitly notify" the consumer "of the conduct at issue").

Seemingly realizing that the Cai Declaration WW submitted in connection with its first round of briefing undercut its consent argument, WW has found a *new* declarant to point to *other* representations found *elsewhere* on the WW website to manufacture a consent defense. This fails. The statement WW points to merely states in small font that health data "may be shared with our third-party providers" without providing a checkbox or other means requiring the consumer to acknowledge the provision. Mot. at 13; *see also Lesh v. Cable News Network, Inc*., 767 F. Supp. 3d 33, 43-44 (S.D.N.Y. 2025) (refusing to find similar hybrid wrap agreement sufficient to provide "notice" of terms and establish "consent" to use "third-party trackers" on CNN's website). And even if a consumer did see it, they would believe, consistent with WW's affirmative representation for which they had to check a box, that the "providers" WW referred to were *healthcare* providers to whom disclosure is "necessary" for the "provision" of the "WW products." *See Winfield v. Trottier*, 710 F.3d 49, 55 (2d Cir. 2013) (explaining "consent[]" turns on what a "typical reasonable person [would] have understood by the exchange"). No reasonable consumer would read this statement and believe WW was reneging on its prior promises to only use health data for a limited purpose and now claiming that data may be shared with whomever WW chooses.

Its reference to using health data for non-descript "marketing purposes" fails for the same reason. Mot. at 13. At best, a consumer reading this statement would believe WW would use this data internally, for example, to send emails relating to a customer's selected plan. No one would expect this to mean WW would hand their health data over to third parties like Meta so they could monetize this data for their own benefit, which would be inconsistent with WW's earlier claim about using health data only for a limited purpose. *See Brown v. Google LLC,* 525 F. Supp. 3d

1049, 1066 (N.D. Cal. 2021) (rejecting Google's consent defense based on statements in Google's privacy policy because Google made other claims to consumers suggesting Google did not collect data in private browsing mode).

WW's references to multiple, disparate provisions of its privacy policy do not change this conclusion either. For instance, that this policy mentions that WW itself *collects* health data and elsewhere states that it generally uses "cookies, pixels, and similar technologies" (Mot. at 14), would not alert a reasonable consumer that it actually *disclosed* to *third parties* consumers' private *health data* to use it for their own benefit. *See Greenley v. Kochava, Inc.,* 684 F. Supp. 3d 1024, 1039 (S.D. Cal. 2023) (explaining consent for the defendant to "collect [plaintiff's] data . . . does not extend" to the "dissemination of that information for profit.").

Likewise, simply mentioning that WW uses "technologies" to "understand how users interact with [the WW] Website" is not enough to alert consumers that WW is *disclosing* private *health data*. *See* Mot. at 14; *see also In re Google Assistant Priv. Litig.,* 457 F. Supp. 3d 797, 823 (N.D. Cal. 2020) (rejecting provision that Google shares "personal information" as establishing consent because the "provision is too general" and says "nothing about the types of information that Defendants might send"). While WW relies on *Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018) (Mot. at 9), the *Smith* court expressly noted the data at issue there was viewing history of "publicly available" information that does not reveal health information, such that this case has no applicability here. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 794 (N.D. Cal. 2022) (distinguishing *Smith* because "the collection of protected health information . . . is a different matter entirely").

Finally, WW's consent defense must—at a minimum—fail with respect to Plaintiffs' Wiretap Act claims because "consent is not a defense" when a defendant's conduct amounts to a

"criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *See Brown,* 525 F. Supp. 3d at 1068. As described in more detail in Section IV.G, WW's conduct violates at least HIPAA, which requires written and signed authorization before health data can be disclosed to third parties or used for marketing purposes. *See* 45 C.F.R. §§ 164.508(a)(1), 164.508(a)(3), 164.508(c).

### B. Plaintiffs Satisfy Rule 8 as to New Relic, Braze, Customer.io, and Nextdoor

All Rule 8 requires is "fair notice" that will "enable the adverse party to answer and prepare for trial, allow the application of *res judicata,* and identify the nature of the case so that it may be assigned the proper form of trial." *Vantone Grp. Liab. Co. v. Yangpu NGT Indus. Co.*, No. 13CV7639-LTS-MHD, 2015 WL 4040882, at *3 (S.D.N.Y. July 2, 2015). While WW complains that Plaintiffs' allegations regarding New Relic, Braze, Customer.io, and Nextdoor fail to meet this standard, the Amended Complaint shows otherwise.

Plaintiffs (1) identify the webpages that incorporate these entities' tracking technologies; (2) allege that these technologies function in the same manner as Meta, Google, and Amplitude's technologies; and (3) identify the specific types of identifiable health data shared with these types of entities. ¶¶ 138, 142, 146. The Complaint also contains an example of a transmission to Nextdoor (among other third parties), confirming that it received data reflecting consumers' answers to whether they weigh more than 177 pounds. ¶ 150. As alleged in the Complaint, the other technologies described herein would result in the same disclosure. ¶¶ 138, 142, 146.

Through these allegations, WW knows exactly which technologies Plaintiffs challenge, where those technologies were deployed, and what information they allegedly disclosed. That is more than sufficient to provide fair notice under Rule 8. That these allegations are the same for multiple third parties is not "bootstrapping" like WW contends (Mot. at 18) but simply reflects the

practical reality that they each perform the same functionality and were incorporated on the same webpages. *See Vantone Grp. Liab. Co.*, 2015 WL 4040882, at *3 (explaining Rule 8 does not "prohibit[] collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant").

**C. <u>Plaintiff Strom Adequately States Claims</u>**

WW argues that Plaintiff Strom's claims fail because the Complaint identifies the Intro Questionnaire, Clinic Questionnaire, and Consultation Questionnaire as the operative intake flows, while Strom alleges only that she completed "a questionnaire" in February 2011. Nothing about this violates Rule 8. Because Plaintiffs allege *every* questionnaire results in the interception of health data, specifying which of the three questionnaires Plaintiff Strom used is not necessary for WW to have fair notice of Plaintiff Strom's claims. ¶¶ 141-53.

Indeed, [redacted] ECF No. 48-3 ¶¶ 2-3 (Edward Cai attesting that WW has "membership records" reflecting Plaintiffs' sign-up process). These admissions undermine any claim that WW lacks fair notice. *See Vantone Grp. Liab. Co.*, 2015 WL 4040882, at *3 (Rule 8 requires only "fair notice" sufficient to enable the adverse party to answer and prepare for trial); *see also Collins*, 721 F. Supp. 3d at 285 (denying motion to dismiss on grounds that complaint lacked sufficient "factual specificity" because existing allegations put defense on notice and enabled preparation of defense).

WW cites no authority supporting its demand for these types of hyper-specific allegations

reflecting information it already has access to.

### D. The GBL Claims May Proceed on a Nationwide Basis[5]

WW's contention that only New York residents can invoke the GBL overreads the statute and understates the New York-centered conduct the Complaint alleges. Section 349 is not limited to claims brought by New York residents or consumers physically present in New York at the transaction. *See Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324–25 (2002). The question is merely whether the transaction in which the consumer was deceived occurred in New York, or whether the alleged deception otherwise bears a sufficient connection to New York. *See Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 123 (2d Cir. 2013) (explaining an "out-of-state victim" can bring claims under GBL); *Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 167–68 (S.D.N.Y. 2014) (same).

The Complaint plausibly alleges that nexus. It alleges that WW is headquartered in New York (¶¶ 16-17, 87), that it owns and controls the WW Websites from which the challenged disclosures occurred, (¶¶ 1-4, 87-89), and that the challenged tracking technologies were installed and configured on those websites by WW and used to disclose users' private information so that data could be monetized by WW and third parties. ¶¶ 2-5, 10, 88-91, 243. The Complaint further alleges that WW failed to disclose those practices to users and instead made misleading privacy representations concerning the handling of users' information. *Id.* ¶¶ 155-60, 198. At the pleading stage, those allegations are more than sufficient to support the inference that the deceptive conduct challenged under Section 349 was orchestrated and consummated, at least in substantial part, in New York.

[5] Plaintiffs agree that their FSCA and CIPA claims should be limited to Plaintiffs and Class Members who reside (either presently or previously) in, respectively, Florida and California.

The Second Circuit's decision in *Cruz* is instructive, as are other decisions within this District. In *Cruz*, the Second Circuit held that out-of-state plaintiffs could bring GBL § 349 claims against a trading platform operating in New York because the defendant received payment, and refused to disburse funds, from its New York office, and, separately, specified in its customer agreement that disputes should be resolved under New York law. 720 F.3d at 123–24. Applying the same reasoning, Judge Koeltl in *Ward* allowed out-of-state residents to pursue GBL claims because the defendant "operated a website in New York" and out-of-state users' "registration, cancellation, review of website materials, and various monetary transactions" on the site were "equivalent to communicating or transacting directly with a New York address." 3 F. Supp. 3d at 167–68. As described above, this is exactly what Plaintiffs allege here. *See also Polk v. Del Gatto, Inc.*, No. 21 CIV. 129 (PAE), 2021 WL 3146291, at *10 (S.D.N.Y. July 23, 2021) (sustaining § 349 claims by out-of-state residents because "payment[]" and "process[ing]" sales occurred in New York and defendant selected a New York "choice-of-law provision"); *Gutierrez v. Lemonade, Inc.*, No. 21-CV-7070 (JGK), 2022 WL 3214852, at *3 (S.D.N.Y. Aug. 9, 2022) (rejecting standing argument as "without merit" where "transaction was consummated on a website in New York" whose terms included a New York choice of law clause); *Fed. Trade Comm'n v. Roomster Corp.*, 654 F. Supp. 3d 244, 265–66 (S.D.N.Y. 2023) (finding sufficient nexus to New York where the defendant "has its principal place of business in New York" and "approv[ed] . . . platform content" from New York).[6]

WW's authorities do not compel a different result. In *Goshen*, the New York Court of Appeals *rejected* WW's argument that Section 349 is unavailable unless the plaintiff personally

[6] While Plaintiffs do not agree that New York law provides the sole source of Plaintiffs' and the Class's claims, WW itself has selected New York law, and a New York forum, in its own Terms & Conditions. *See* ECF No. 48-2 at 31-32.

stood in New York when deceived. 98 N.Y.2d at 324-25. The GBL claim was only dismissed because the plaintiff failed to allege *any* nexus to New York at all—the opposite of what Plaintiffs plead here. *See id*. at 325-26 (dismissing GBL claim because all relevant conduct occurred in Florida where plaintiff had "purchased his policy and paid his premiums . . . through a Florida insurance agent"). The remaining cases WW cites all follow the same pattern—attempting to bring GBL claims where none of the underlying conduct had a connection to the forum. *See* Mot. at 15-17 (citing *Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5, 7 (2d Cir. 2012) (unreported with no precedential effect) (alleging only "conclusory" allegations of a New York connection); *In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 223–24 (S.D.N.Y. 2019) ("no allegations of 'where plaintiffs purchased tickets or merchandise,' where their 'communications' were sent, or that 'any contracts . . . contain[ed] provisions implicating New York law'"); *Horn v. Med. Marijuana, Inc.*, 383 F. Supp. 3d 114, 128 (W.D.N.Y. 2019) ("Defendants were not located in New York and [p]laintiffs do not allege that any part of the online transaction took place in New York."); *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 402–03 (S.D.N.Y. 2010) (dismissing GBL claim because "nothing in any complaint suggests that Plaintiffs visited the Defendants' websites in New York"); *Wright v. Publrs. Clearing House, Inc.*, 439 F. Supp. 3d 102, 111–12 (E.D.N.Y. 2020) (finding receiving emails and ads from a New York entity insufficient to allege a New York nexus); *Wheeler v. Topps Co.*, 652 F. Supp. 3d 426, 431–32 (S.D.N.Y. 2023) (involving the purchase of actual "tangible consumer goods" that were purchased in-store or online "within the Washington Metropolitan Area and elsewhere on the East Coast"); *Silva v. Smucker Nat'l. Foods, Inc.*, No. 14-CV-6154 JG RML, 2015 WL 5360022, at *10 (E.D.N.Y. Sept. 14, 2015) (limiting GBL claims as to "putative class members who neither viewed the website in New York nor purchased [the products] in New York"); *Camm v. Reach Fin., LLC*, No. 25 CIV. 1921 (KPF), 2026 WL 861670, at *6–7 (S.D.N.Y.

Mar. 30, 2026) (no allegations the plaintiff interacted with a New York office or engaged in a transaction with a New York connection)).

Finally, WW's insistence that Plaintiffs were required to plead more—such as the location of WW's servers, the precise place where payments were processed, or the specific employees who configured the websites from New York—lacks merit. Section 349 imposes no such heightened pleading burden. At this stage, Plaintiffs need only allege facts plausibly showing that the deceptive scheme was sufficiently tied to New York, and the Complaint does so. Requiring server-location or payment-processing allegations before discovery would improperly demand technical details uniquely within WW's control. WW's request to dismiss Plaintiffs' Section 349 claim for lack of a New York nexus should be denied.

**E. Plaintiffs' GBL 349 Claim Is Plausible**

To state a claim under Section 349, Plaintiffs must allege consumer-oriented conduct that is materially misleading and injury resulting from the deception. *See Suarez v. California Nat. Living, Inc.*, No. 17 CV 9847, 2019 WL 1046662, at *7 (S.D.N.Y. Mar. 5, 2019). An omission-based claim is sufficient where the complaint explains what information was withheld and why the omission would mislead a reasonable consumer under the circumstances. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015); *see also Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 775 (W.D.N.Y. 2016) (defining "deceptive acts or practices" objectively, as "representations or omissions, limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances").

Here, the Complaint alleges that WW affirmatively misrepresented during the mandatory intake process that it would not share health data beyond what was necessary to provide the WW service (*see* Section II) and, at the same time, failed to disclose it shared private health data with

companies like Meta so the data could be used and monetized both by WW and these third parties. *Id.* Both are sufficient to plead an actionable misrepresentation.[7] *See Kane v. Univ. of Rochester*, No. 23-CV-6027-FPG, 2024 WL 1178340, at *16–17 (W.D.N.Y. Mar. 19, 2024) (finding use of tracking technology, which was represented not to include any "personally identifiable information" but was accompanied by a "Facebook ID" that could be used to identify users, was materially misleading); *Nick v. Target Corp*., No. CV154423, 2017 WL 10442061, at *4 (E.D.N.Y. Sept. 13, 2017) (finding use of data for an undisclosed purpose deceptive under GBL); *Cooper*, 742 F. Supp. 3d at 383 (sustaining GBL § 349 claim where website's privacy policy said information would not be shared but was shared via tracking technology); *see also Fero*, 236 F. Supp. 3d at 776 (holding privacy-policy and website representations concerning data security, together with omission of allegedly inadequate protections, plausibly misled a reasonable consumer under Section 349).

WW's cited cases do not require dismissal. In both *Rider v. Uphold HQ Inc.*, 657 F. Supp. 3d 491, 499 (S.D.N.Y. 2023) and *Prue v. Fiber Composites, LLC*, No. 11-CV-3304, 2012 WL 1314114, at *8 (E.D.N.Y. Apr. 17, 2012), the complaint failed to identify what statement was deceptive or what information should have been disclosed. Here, by contrast, the Complaint identifies both the misrepresentation—WW's promise to limit the sharing of health data (*see* Section II)—and its non-disclosure of its true data sharing practices. *Id.* Nor does *Camm* require dismissal. 2026 WL 861670, at *7–8. The complaint there pointed to an omission but failed to explain why that omission was deceptive to a reasonable consumer. *Id*. Here, by contrast, WW's material misrepresentation and omission are objectively deceptive—creating the belief their private health data would be safeguarded and would not be disclosed, when the opposite was true.

---

[7] WW does not dispute its conduct is consumer oriented or the GBL's injury requirement.

WW's separate argument that any GBL claims premised on statements in its privacy policy must be dismissed because Plaintiffs do not allege they read these policies lacks merit. Mot. at 19. Plaintiffs' GBL claims are not limited to specific places in WW's privacy policy, but rather concern its overall course of conduct in soliciting health information during the intake process without disclosing it would share this data. WW previously conceded that each Plaintiff needed to complete this intake process and thus acknowledged that they each would have seen the misrepresentations and omissions about its handling of health data. *See* Sections II, IV.A. This alone defeats WW's argument.

None of WW's cited cases compel a different result, as the plaintiffs there failed to allege they saw or would have seen the misrepresentation or omission had it been disclosed. *See* Mot. at 19 (citing *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 240 (S.D.N.Y. 2020) (dismissing GBL claims premised on website statements where no plaintiff alleged they ever visited the website prior to making a purchase); *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 100 N.Y.S.3d 227, 229 (2019) (dismissing GBL claim because plaintiffs failed to allege they saw the "Tanbook" containing "inaccuracies and omissions")). The same is not true here, where WW itself has argued every Plaintiff was required to complete a mandatory intake process requiring them to check a box acknowledging WW would only use their health data "to the extent necessary for the provision of the tools and function of WW products." *See* Sections II, IV.A.

### F. Plaintiffs State a Claim for Invasion of Privacy

Claims for invasion of privacy under California law require showing (1) "a reasonable expectation of privacy" and (2) that the "intrusion was highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). Courts have no issue finding that

plaintiffs have an objective expectation of privacy in their own health data and that the disclosure and use of this information is highly offensive—both in the context of traditional physicians and more modern forms of health care services like those provided by WW. *See Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1252, 1257 (N.D. Cal. 2024) (finding highly offensive intrusion where telehealth platform disclosed "answers to health questions"); *Doe v. GoodRx Holdings, Inc.*, No. 23-CV-00501-AMO, 2025 WL 2052302, at *15 (N.D. Cal. July 22, 2025) (sustaining privacy claim where prescription coupon company disclosed users' prescription information); *Doe v. Regents of the Univ. of Cal.*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) (finding disclosure of health data through tracking technology on UCSF's website sufficient to sustain privacy claims); *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 926 (S.D. Cal. 2020) (explaining disclosure of medical information "negligently or otherwise . . . so constitutes a serious invasion of privacy"); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 973–74 (S.D. Cal. 2023) (holding plaintiffs plausibly alleged a highly offensive intrusion where a healthcare website allegedly disclosed tracked information concerning users' medical conditions and patient status to a third party for advertising purposes).

WW's argument that the "disclosure" of health data does not constitute an intrusion under California law is inconsistent with the authority cited above. *See* Mot. at 28. It cites no authority for this proposition, relying instead on non-California decisions that have no applicability here. Mot. at 28 (citing *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 848 (N.D. Ill. 2023) (Illinois plaintiffs asserting Illinois privacy claim); *Okash v. Essentia Health*, No. CV 23-482, 2024 WL 1285779, at *7 (D. Minn. Mar. 26, 2024) (Florida plaintiff asserting Minnesota privacy claim)).

WW is also wrong to suggest that only a data breach, hacking incident, or secure patient-

portal disclosure can be sufficiently offensive to support this tort. Cases like *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130 (C.D. Cal. 2021), and *Doe v. Regents* may describe those circumstances, but WW overread them as setting a minimum threshold for offensiveness. They instead reinforce the more basic point that the sensitivity of the information and the context of the disclosure matter. *See Belen v. Ryan Seacrest Prods., LLC*, 65 Cal. App. 5th 1145, 1163 (Cal. App. 2021). That same principle confirms WW's disclosure of sensitive health information—obtained through medical consultation and prescription drug intake flows—constitutes an actionable intrusion. *See M. H. v. Done Glob. Inc.*, No. 24-CV-03040-RFL, 2025 WL 629613, at *2 (N.D. Cal. Feb. 26, 2025) (telehealth platform's disclosure of users' ADHD-related inquiries is a highly offensive intrusion); *FullStory*, 712 F. Supp. 3d at 1252, 1257 (N.D. Cal. 2024) (sustaining privacy claim based on telehealth platform's disclosure of users' "answers to health questions"). If anything, that conclusion is as strong as it is in the context of a patient portal because WW—like a traditional healthcare provider—is regulated by HIPAA and provides prescription weight-loss drugs and medical consultations.

Finally, WW's argument that the internet is categorically a non-private space is equally inconsistent with the cases cited above. That WW cites cases involving non-sensitive data does not change the conclusion that WW's disclosure of health data here was offensive. *See* Mot. at 28-29 (citing *Thomas v. Papa Johns Int'l, Inc.*, No. 22cv2012, 2024 WL 2060140, at *1 (S.D. Cal. May 8, 2024) (pizza delivery website); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 269 (3d Cir. 2016) (video game website); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 525 (C.D. Cal. 2021) (clothing and sneaker website)). Indeed, its own authority recognized this distinction, noting that data like mouse movements and keystrokes from Papa Johns's website "pale[d] in comparison" to cases like *Katz-Lacabe v. Oracle America, Inc.*, which sustained privacy claims related to

"sensitive health" data. *Thomas*, 2024 WL 2060140, at *4 (citing *Katz-Lacabe*, 668 F. Supp. 3d 928 (N.D. Cal. 2023)).

**G. <u>Plaintiffs' ECPA Claims Are Plausible</u>**

While the ECPA is a one-party consent statute, that rule does not apply where the interception is conducted "for the purpose of committing a crime or tort." *See Cooper*, 742 F. Supp. 3d at 378.

A majority (if not all) of courts in this District to consider the crime-tort exception in the tracking-technology context have applied it on materially identical facts. *See id*. at 381 (applying crime-tort exception because disclosure of identifiable health information violated HIPAA and plaintiffs plausibly alleged defendant acted "knowingly and deliberately" by choosing to "configure[]" the tracking technology to send health-related "events"); *Gay v. Garnet Health,* No. 23-CV-06950 (NSR), 2024 WL 4203263, at *3 (S.D.N.Y. Sept. 16, 2024) (applying crime-tort exception where defendant "installed" the pixel and "routinely" sent identifiable health data for "commercial ends"); *Kane*, 2024 WL 1178340, at *7-8 (applying crime-tort exception where defendant used tracking pixels to send cookies and health data to Meta to "enhance its marketing efforts"); *Pattison v. Teladoc Health, Inc.,* No. 23-CV-11305 (NSR), 2025 WL 1756364, at *3 (S.D.N.Y. June 25, 2025) (same). "Courts in other circuits" have reached the same conclusion: declining to "dismiss ECPA claims based around criminal or tortious use of private and protected data" including identifiable health information. *See Gay,* 2024 WL 4203263, at *4; *see also R.S. v. Prime Healthcare Servs., Inc.,* No. 5:24-CV-00330-ODW (SPX), 2025 WL 103488, at *5 (C.D. Cal. Jan. 13, 2025) (applying crime-tort exception to defendant who disclosed health data through pixel technology); *Castillo v. Costco Wholesale Corp.*, No. 2:23-CV-01548-JHC, 2024 WL 4785136, at *5 (W.D. Wash. Nov. 14, 2024) (applying crime-tort exception where an entity "used

their data to generate targeted advertisements for financial gain" and also violated HIPAA).[8] WW's attempt to distinguish these cases falls flat because they each involve the same type of data and the same type of tracking technology alleged here. Mot. at 21-22.

The same is true for its argument that Plaintiffs fail to allege a "criminal or tortious act" that is "independent of" the interception consistent with the Second Circuit's decision in *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010). *See* Mot. at 20. Like the plaintiffs in the cases above, Plaintiffs here allege not only an interception, but also that WW acted for the purpose of *disclosing* this information to third parties and *using* it for targeted advertising. *See Pattison*, 2025 WL 1756364, at *3 (finding application of crime-tort exception is "consistent with" *Caro* because the act of "disseminat[ing]" the plaintiff's health data is a "separate" and "secondary act" independent of "the interception itself."); *see also Caro*, 618 F.3d at 100 (explaining if the "offender plans to *use the recording* to harm the other party to the conversation" the crime-tort exception applies) (emphasis added). That WW has found one out-of-circuit case to reject these separate purposes is of no moment, as that decision is a clear minority inconsistent with the plain language of the Wiretap Act. *See* Mot. at 22 (citing *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024)); *see also Castillo*, 2024 WL 4785136, at *5 (rejecting the *Kaiser* decision as inconsistent with the plain language of the Wiretap Act, which provides "different subsections" for "interception, use, and disclosure" and thus confirms they are each separate acts) (citing cases).

[8] Even putting HIPAA aside, WW's conduct is separately tortious because it violates each of the laws described herein, including violating Plaintiffs' privacy by monetizing their data without consent. *See Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709, 2025 WL 2210002, at *5 (N.D. Cal. Aug. 4, 2025) (applying crime-tort exception where "purpose" was for "advertising and marketing efforts" even where HIPAA was not implicated).

### H. Plaintiffs' CIPA Claims Are Plausible

Plaintiffs allege WW violated CIPA § 631 because it aided and allowed third parties to intercept and use Plaintiffs' private communications, including health data. *See Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 839–40 (E.D. Cal. 2025) (finding the installation of Meta Pixel on one's own website sufficient to allege the entity "aided, agreed, employed, or conspired with Meta in the alleged interception of their information and data") (citing cases); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1083 (C.D. Cal. 2021) (sustaining CIPA aiding and abetting claims when one of the "willing conversation participant[s] . . . surreptitiously allows [a] third party to wiretap" through technology secretly embedded on their web property). WW's attempts to dismiss this claim are inconsistent with the law.

***Rule of Lenity.*** WW's claim that CIPA is vague under the rule of lenity and that it has "no way of telling whether their . . . business activities will subject them to liability" (Mot. at 23) makes little sense. The rule of lenity only applies if "after seizing everything from which aid can be derived, [the court] can make no more than a guess" as to what the legislature intended. *See United States v. Hertler*, 776 F.3d 680, 686 (9th Cir. 2015). Courts have no problem applying CIPA or understanding its contours, such that the rule of lenity has no applicability here. *See Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1094 (N.D. Cal. 2025) (finding there is "no role for [the rule of lenity]" because CIPA's "express language" contains no "egregious ambiguity and uncertainty").

Notably, WW does not identify any actual ambiguities in CIPA, staking its entire argument on one outlier case, *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1112 (N.D. Cal. 2025). Mot. at 23. But not only is that case against the weight of authority applying CIPA in the internet context, but its holding—that the rule of lenity requires "something more" than the interception of

a communication with the immediate purpose to "learn" or "read" its contents—would eviscerate the application of these subsections in *any context*, not just online. It is thus unsurprising that very few (if any) courts have followed this decision.

***Violation of CIPA's Second Clause.*** Plaintiffs adequately allege predicate violations of CIPA § 631(2) because the Complaint outlines that third parties immediately capture and understand the content of Plaintiffs' communications while the same are occurring on WW web properties. *See* ¶¶ 9, 116-17, 125-27, 132-35, 138, 209. This is enough to plead a violation of CIPA § 631(2). *See D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1198 (S.D. Cal. 2024) (finding code embedded on a website that "directs" the "communications to be routed directly to [a third party] . . . sufficient to withstand a motion to dismiss") (citing cases); *Hazel v. Prudential Fin., Inc.*, No. 22-cv-07465-CRB, 2023 WL 3933073, at *3 (N.D. Cal. June 9, 2023) (denying dismissal where complaint alleged real time interception); *Tenet Healthcare Corp.*, 789 F. Supp. 3d at 838 ("Courts have held allegations of simultaneous duplication and interception of communications sufficient to plead 'interception' while 'in transit' under CIPA at the motion to dismiss stage.").

The allegations WW cites ***confirm*** that dismissal would be improper. Mot. at 24-25. As WW notes, Plaintiffs here clearly allege that data is "processed" (i.e., read and understood by third parties) *before* it is stored or reaches its final destination. WW's focus on how third parties *later* repurpose this data to provide analytics reports and dashboards (Mot. at 24-25) does not change that the communications are *first* read and processed while the same is in transit. *See Frasco v. Flo Health, Inc.*, 3:21-cv-00757 (N.D. Cal.), ECF No. 749 at 426:4-20 (technical expert testifying that Facebook SDK reads the contents of a user's interaction "instantaneous[ly]").

The cases WW cites do not support dismissal either, as they each were at different stages of litigation (i.e., summary judgment) implicating a heightened standard or simply involve

different technologies or allegations. Mot. at 24 (citing *Torres v. Prudential Fin.,* Inc., 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) (dismissing CIPA 631 on summary judgment where contents of employees' communications are "undecipher[able]" in transit and can then only be accessed and read post-storage by specific "superuser[s]"); *DellaSala v. Samba TV, Inc.*, 2026 WL 1138358, at *6 (N.D. Cal. April 21, 2026) (involving ACR technology in TVs and dismissing CIPA claim because allegations were "conclusory"); *R.C. v. Sussex Publishers, LLC*, No. 24-CV-02609-JSC, 2025 WL 948060, at *7 (N.D. Cal. Mar. 28, 2025) (plaintiff pled that data was not "view[ed]" "read[]" "process[ed]" or "organize[d]" until after it was "receive[d]")). And, finally, *Eating Recovery Ctr. LLC*, 806 F. Supp. 3d at 1117–18, which was also a summary judgment decision, dismissed the claims under the rule of lenity which, as discussed herein, does not apply.

***Violation of CIPA's Third Clause.*** The same third parties violate CIPA's third clause because they use this data for their own benefit, including serving targeted advertisements. *See Rodriguez v. Aquatic Sales Sols. LLC*, 735 F. Supp. 3d 1208, 1227–28 (C.D. Cal. 2024) (finding clause three of § 631 established where a similar entity used the intercepted data for "targeted . . . advertising"). WW does not mount a separate challenge to this prong.

***Violation of CIPA's Fourth Clause.*** WW's final argument—that it lacked the requisite knowledge and intent to "aid[]," "agree[]," or "conspire[]" with third parties (Mot. at 25)—also fails. As alleged, no third party could obtain or use Plaintiffs' and the Class's private data absent WW's deliberate decision to deploy these tracking technologies across its webpages. The breadth of WW's implementation demonstrates an intentional effort to share user health information for WW's own advertising and analytics purposes, not an inadvertent disclosure. *See Tenet Healthcare Corp.,* 789 F. Supp. 3d at 839 (finding decision to install just one tracking technology sufficient to show intentional conduct). The Complaint further alleges that WW was previously sued for using

at least some of these technologies in violation of VPPA, foreclosing any claim that it was unaware of how these technologies operated. *See Lopez v. Apple, Inc.,* 519 F. Supp. 3d 672, 684 (N.D. Cal. 2021) (holding failure "to take remedial action" of a known issue satisfies "intentional" requirement).

The cases WW cites are therefore inapposite.[9] Unlike here, those cases involved allegations that third parties exceeded the scope of the defendant's authorization or used data in ways the defendant neither directed nor approved. *See* Mot. at 25-26 (citing *Heiting v. Taro Pharms. U.S., Inc*., 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023) (no intent where the parties' contract prohibited the third party from using or retaining customer data); *Smith v. Yeti Coolers, LLC*, No. 24-CV-01703-RFL, 2025 WL 877127, at *1 (N.D. Cal. Mar. 14, 2025) (allegations that a vendor retained information beyond its fraud-prevention function were conclusory)). Here, by contrast, Plaintiffs allege WW intentionally deployed these technologies precisely so the third parties could receive and use the data at issue. *See* ¶¶ 88-96.

***The "Party Exception."*** WW's argument that New Relic, Braze, Customer.io, and Nextdoor are not actual third parties but mere extensions of WW also fails. Mot. at 26 (citing *Rogers v. Ulrich*, 52 Cal. App. 3d 894 (1975)). Consistent with *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023), each of these entities has the "capability" to use Plaintiffs' data for its own purposes, which is why Plaintiffs allege their technologies are "substantially similar" to those provided by companies like Meta, Google, and Amplitude. *See* ¶¶ 120-21, 128-29, 136, 138, 154. Given this functionality, they cannot plausibly be considered mere "tape recorder[s]" like WW suggests. Mot. at 26; *see also Tate v. VITAS Healthcare Corp.,* 762 F. Supp.

---

[9] WW also claims in passing that it does not have "knowledge of an unlawful act." Mot. at 25-26. This is not required. *See U.S. v. Christensen*, 828 F.3d 763, 775 (9th Cir. 2015) (explaining knowledge of unlawfulness is not a requirement).

3d 949, 956 (E.D. Cal. 2025) (rejecting party exception where plaintiff alleged the third party "has the capability to analyze the data" and "reserves the ability to use that data"). The same is true if this Court followed the more restrictive, and less widely adopted, standard from *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832–33 (N.D. Cal. 2021), which requires allegations that a vendor use the communications for its own purpose. While *Graham* is itself inconsistent with CIPA's plain language,[10] Plaintiffs *also* make these allegations (¶¶ 10, 154) and discovery will confirm the same. *See Doe v. Call-On Doc, Inc.,* No. 24CV2095-GPC(KSC), 2025 WL 1677632, at *14 (S.D. Cal. June 13, 2025) (rejecting party exception under *Graham* because plaintiff alleged third parties "use her intercepted communication[s] for purposes other than just to benefit Defendant"). The cases WW cites lacked these allegations. *See Valenzuela v. Super Bright Leds Inc.*, No. EDCV2301148JAKSPX, 2023 WL 8424472, at *7–8 (C.D. Cal. Nov. 27, 2023) (applying party-exception under *Javier* because complaint only alleged third parties "receive[d] and store[d] communications."); *Cody v. Boscov's, Inc.*, 658 F. Supp. 3d 779, 782 (C.D. Cal. 2023) (same).

## I. <u>Plaintiffs' FSCA Claims Are Plausible</u>

WW's claim that Florida courts have held the "FSCA does not apply to the tracking technologies at issue" is patently false. Mot. at 30. It cites no case to actually hold this, which is unsurprising as several Florida courts have had no issue applying the FSCA to the technologies at issue in this case. *See W.W. v. Orlando Health, Inc.,* No. 6:24-CV-1068-JSS-RMN, 2025 WL 722892, at *3 (M.D. Fla. Mar. 6, 2025) (finding use of Meta and Google's pixels to send health data violates the FSCA); *D.S. v. Tallahassee Mem'l HealthCare,* No. 4:23CV540-MW/MAF, 2024 WL 2318621, at *1 (N.D. Fla. May 22, 2024) (declining to dismiss FSCA claims premised on the

---

[10] *See Turner v. Nuance Commc'ns, Inc.,* 735 F. Supp. 3d 1169, 1184 (N.D. Cal. 2024) (citing cases rejecting *Graham* as inconsistent with CIPA's language and California Supreme Court precedent).

interception of health data through the Meta Pixel at the motion to dismiss stage).

The cases WW stretches to claim the FSCA does not apply all involve a separate type of software—session replay technology—that plainly is not at issue in this case. *See* Mot. at 30 (citing *Jacome v. Spirit Airlines Inc.*, No. 2021-000947-CA-01, 2021 WL 3087860, at *3 (Fla. Cir. Ct. June 17, 2021) (involving session-replay technology); *Cardoso v. Whirlpool Corp.*, No. 21-CV-60784-WPD, 2021 WL 12313079, at *2 (S.D. Fla. Sept. 15, 2021) (same); *Connor v. Whirlpool Corp.*, No. 21-CV-14180-WPD, 2021 WL 3076477, at *1–2 (S.D. Fla. July 6, 2021) (same); *Goldstein v. Luxottica of Am., Inc.*, No. 21-80546-CIV, 2021 WL 4093295, at *1 (S.D. Fla. Aug. 23, 2021) (same)). While WW argues that session replay software is "materially indistinguishable" from the tracking technologies at issue in this case (Mot. at 31), that is incorrect. The technologies record different information (i.e., video recordings vs. actual health data), for different purposes (troubleshooting vs. advertising/analytics), and third parties often are not free to use the videos from session replay technology for their own purposes, unlike the technologies at issue in this case. WW's attempt to analogize these technologies must be rejected. *See Orlando Health, Inc.,* 2025 WL 722892, at *3 (distinguishing *Jacome* as involving a "different technology" that only tracked "movements on Defendants' website" whereas Google and Meta's technology tracks "communications").

### J. <u>Plaintiffs State a Claim for Unjust Enrichment</u>

WW argues that the unjust enrichment claim fails because Plaintiffs have an adequate remedy at law and because the claim is duplicative of their other causes of action. But that principle does not require dismissal here, because Plaintiffs plead a distinct equitable theory: that WW obtained and retained a concrete commercial benefit from disclosing and using Plaintiffs' health data, and that equity requires restitution of that benefit. *See Schneider v. Colgate-Palmolive Co.*,

677 F. Supp. 3d 91, 105 (N.D.N.Y. 2023) (recognizing that unjust enrichment is unavailable where it merely duplicates other claims, but declining to dismiss where plaintiffs sufficiently explained why the claim was not merely duplicative of their Section 349 theory). Several courts have sustained unjust enrichment claims on the same (or similar) theories. *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) (explaining plaintiffs may bring unjust enrichment claims to "recover the gains" the defendant "realized" from its misappropriation of the plaintiffs' data regardless of their legal claims for "breach of contract"); *Wallace v. Health Quest Sys., Inc.*, No. 20 CV 545, 2021 WL 1109727, at *11 (S.D.N.Y. Mar. 23, 2021) (sustaining unjust enrichment claim where defendant failed to safeguard sensitive information); *Orlando Health, Inc.*, 2025 WL 722892, at *10 (sustaining legal claims and unjust enrichment claim to recover "benefits" defendant received in the form of "valu[able]" "medical information" that it "used . . . for its own gain"). Like these cases, Plaintiffs here seek restitution of the benefit WW allegedly obtained from the challenged data flows themselves, not simply another label for the same injury-based claims.

WW's cited cases do not require dismissal. *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010), states the general rule that unjust enrichment is an equitable claim unavailable where an adequate legal remedy exists, but it did not involve a pleading-stage consumer privacy case in which plaintiffs alleged that a defendant retained the commercial value of their data through third-party tracking. Meanwhile, *Brumfield v. Trader Joe's Co.*, No. 17-CV-3239, 2018 WL 4168956, at *5 (S.D.N.Y. Aug. 30, 2018), dismissed unjust enrichment because the claim there merely repackaged the same deceptive-labeling theory and same injury theory asserted elsewhere in the complaint. And *Rabin v. Google LLC*, No. 22-CV-04547-BLF, 2023 WL 4053804, at *13 (N.D. Cal. June 15, 2023) and *Emondson v. 2001Live, Inc.*,

No. 8:16-CV-3243-T-17AEP, 2017 WL 10085028, at *3 (M.D. Fla. Mar. 30, 2017), applied the same anti-duplication principle under California and Florida law. Here, as noted, Plaintiffs allege a distinct equitable theory: that WW obtained and retained a concrete commercial benefit from transmitting and using Plaintiffs' health data, and that equity requires restitution of that benefit. ¶¶ 243-48. At the pleading stage, that is enough to allow the unjust enrichment claim to proceed.

### K. At a Minimum, Leave to Amend Should Be Granted

WW argues that leave should be denied because Plaintiffs had an opportunity to address "WW's arguments." Mot. at 31. This is false. To the contrary, WW's second motion to dismiss (ECF No. 107) takes an entirely different tack than its first motion to dismiss (ECF No. 49-1), incorporating, at least: (1) an entirely new declaration from a new declarant; (2) new consent arguments found nowhere in its prior motion; (3) new case law that was available to WW at the time it filed its first motion to dismiss. Any claim that Plaintiffs previously could have addressed WW's new arguments before seeing them is nonsensical and should be rejected.

If the Court is inclined to dismiss any claim, leave should be freely given. *See Baroni v. Port Auth. of New York & New Jersey*, 161 F.4th 48, 62 (2d Cir. 2025) ("A district court 'should freely give leave' to amend a complaint 'when justice so requires.'").

## V. CONCLUSION

WW's Motion should be denied in its entirety.

Dated: June 17, 2026

*/s/ Amanda Fiorilla*
Christian Levis
Amanda Fiorilla
Rachel Kesten
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel.: (914) 997-0500

Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com

Vicki J. Maniatis (NY Bar No. 2578896)
**MILBERG, PLLC**
405 East 50th Street
New York, NY 10022
Tel.: (516) 491-4665
vmaniatis@milberg.com

Gary M. Klinger (*pro hac vice*)
William J. Edelman (*pro hac vice*)
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com
wedelman@milberg.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF COMPLIANCE**

As required by the United States District Court for the Southern District of New York Local Rule 7.1(c), I certify that the document contains 8,702 words, excluding the parts of the document that are exempted by the United States District Court for the Southern District of New York Local Rule 7.1(c). I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 17, 2026 *<u>/s/ Amanda Fiorilla</u>*