UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERICA BRUCKNER, ANITA CAMPANA, MEGAN CONNOR, DONNA EDWINS, ALLISON GIORGIO, JANINE HENRY, ASHLEY RODRIGUEZ, SUSANNE STROM, JENNIFER TORRES, ANTOINETTE WACHTL, individually and on behalf of all other similarly situated,

Plaintiffs,

-against-

WW INTERNATIONAL, INC., WW.COM, LLC, WEEKEND HEALTH OF TEXAS, PA, WEEKEND HEALTH OF NEW JERSEY P.C., WEEKEND HEALTH OF PENNSYLVANIA, P.C., AND BRANTLEY T. JOLLY, M.D., PROF. CORP.,

Defendants.

Case No.: 1:25-CV-02944-RA

**ORAL ARGUMENT REQUESTED**

# <u>DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT</u>

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ........ 1

II. THE FAC SHOULD BE DISMISSED ........ 1

A. Consent Defeats Rodriguez, Torres, Giorgio, Bruckner, Wachtl, And Campana's Claims ........ 1

B. Claims Based On "Other Tracking Technologies" Must Be Dismissed ........ 3

C. Plaintiff Strom's Claims Must Be Dismissed ........ 4

D. Plaintiffs Do Not Have Statutory Standing To Assert Their GBL Claim ........ 5

E. Plaintiffs' Claims Fail For Additional, Independent Reasons ........ 6

1. Plaintiffs' GBL Claim Fails ........ 6

2. Plaintiffs' ECPA Claim Fails ........ 6

3. Plaintiffs' CIPA Claim Fails ........ 7

4. Plaintiffs' Invasion Of Privacy Claim Fails ........ 9

5. Plaintiffs' Unjust Enrichment Claim Fails ........ 10

6. Plaintiffs' FSCA Claim Fails ........ 10

F. Leave to Amend Should Not Be Granted ........ 11

III. CONCLUSION ........ 11

TABLE OF AUTHORITIES

Page(s)

Cases

*Advanced Knowledge Tech, LLC v. Fleitas*
2021 WL 6126966 (S.D.N.Y. Dec. 28, 2021) ....................10

*Okash v. Essentia Health*
2024 WL 1285779 (D. Minn. Mar. 26, 2024) ....................9

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ....................4

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ....................4

*Caro v. Weintraub*
618 F.3d 94 (2d Cir. 2010) ....................7

*Chiste v. Hotels.com L.P.*
756 F. Supp. 2d 382 (S.D.N.Y. 2010) ....................5

*Devey v. Big Lots, Inc.*
635 F. Supp. 3d 205 (W.D.N.Y. 2022) ....................10

*Doe I v. Google LLC*
2023 WL 6882766 (N.D. Cal. Oct. 18, 2023) ....................7, 8

*Doe v. Eating Recovery Ctr. LLC*
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ....................8

*Doe v. FullStory, Inc.*
712 F. Supp. 3d 1244 (N.D. Cal. 2024) ....................9, 10

*Doe v. GoodRx Holdings, Inc.*
2025 WL 2052302 (N.D. Cal. July 22, 2025) ....................9, 10

*Ghosh v. New York City Hous. Auth.*
2023 WL 3612553 (S.D.N.Y. Feb. 27, 2023) ....................3

*In re Google Inc. Gmail Litig.*
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ....................7

*Hammerling v. Google LLC*
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................9

*Jacome v. Spirit Airlines Inc.*
2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) ....................11

*Kurowski v. Rush Sys. for Health*
683 F. Supp. 3d 836 (N.D. Ill. 2023) ....................9

*Lesh v. Cable News Network, Inc.*
767 F. Supp. 3d 33 (S.D.N.Y. 2025)....................2

*Lewis v. Magnite, Inc.*
2025 WL 3687546 (C.D. Cal. Dec. 4, 2025) ....................8

*McVetty v. TomTom N. Am., Inc.*
2021 WL 965239 (S.D.N.Y. Mar. 13, 2021) ....................5

*Mountz v. Glob. Vision Prods., Inc.*
770 N.Y.S.2d 603 (Sup. Ct. 2003)....................5

*Prue v. Fiber Composites, LLC*
2012 WL 1314114 (E.D.N.Y. Apr. 17, 2012) ....................6

*Rider v. Uphold HQ Inc.*
657 F. Supp. 3d 491 (S.D.N.Y. 2023)....................6

*Sussman v. Am. Broad. Companies, Inc.*
186 F.3d 1200 (9th Cir. 1999) ....................6, 7

*Torres v. Prudential Fin., Inc.*
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ....................1, 8

*W.W. v. Orlando Health, Inc.*
2025 WL 722892 (M.D. Fla. Mar. 6, 2025) ....................11

*Wheeler v. Topps Co., Inc.*
652 F. Supp. 3d 426 (S.D.N.Y. 2023)....................5

Other Authorities

Local Civil Rule 7.1(c) and § 4.A....................13

Rule 8....................3, 4

Rule 12(b)(6)....................3, 4

## I. PRELIMINARY STATEMENT

The Opposition goes to extreme lengths to avoid dismissal, misrepresenting WW's sign-up screen, Privacy Policy, and even the Amended Complaint ("FAC").[1] But Plaintiffs cannot escape that they consented to the disclosures they now challenge, and their remaining claims fail on the merits. The FAC should be dismissed with prejudice.

## II. THE FAC SHOULD BE DISMISSED

### A. Consent Defeats Rodriguez, Torres, Giorgio, Bruckner, Wachtl, And Campana's Claims

Rodriguez, Torres, Giorgio, Bruckner, and Campana's claims must be dismissed based on consent,[2] as must Wachtl's claims premised on the Clinic Questionnaire. Mot. at 8. WW provided conspicuous notice of the privacy disclosure and Privacy Policy on the first page of the Intro Questionnaire and Clinic Questionnaire. *Id.* at 9-11. By completing the questionnaires, these Plaintiffs agreed to the disclosure and Privacy Policy, which notified them of the conduct they now challenge. *Id.* at 12-14.

Plaintiffs argue that a sign-up screen promised them that WW would "*only*" use their health data "to the extent necessary for the provision of the tools and function of WW products." Opp. at 4-6 (emphasis added). But the words "solely" and "only" do not appear on this screen. Dkt. 49-1, p. 7; *see also* Dkt. 49-2, pp. 5-6.[3] Plaintiffs also ignore WW required users to click a separate

[1] Capitalized terms have the same meaning as in the Motion.

[2] Bruckner and Campana contend that "WW's suggestion that [they] only completed the Clinic Questionnaire is inconsistent with [their] allegations." Opp. at 5 n.4. But the FAC alleges only that they took the Clinic Questionnaire (FAC ¶¶ 18-31), and they cannot amend their pleading through argument in their Opposition.

[3] Defendants are not ignoring prior evidence; indeed, they asked the Court to consider it. Mot., p. 2, n.2. The Bhatt Declaration reinforces the Cai Declaration. *Compare* Dkt. 49-2, ¶¶ 14-15 *with* Bhatt Decl., ¶ 2.

checkbox acknowledging that they "read and agree[d] to the … Privacy Policy"— hyperlinked in bold, purple font. *Id.* The Privacy Policy, in turn, expressly states in bold, capitalized font that health information may be shared with third parties, as described below. An honest reading of the sign-up confirms consent.

Further, Plaintiffs ignore that not all of them plausibly allege that they signed up for a WW membership before taking a quiz. *See, e.g.*, FAC ¶¶ 46-47, 60-61, 74-75, 81-82 (failing to allege whether a quiz was taken first or a membership sign-up occurred first). Similarly, Plaintiffs never allege they encountered the Notice of Privacy Practices ("Notice"), which is *not* hyperlinked from the screens at issue. Murphy Decl. ¶¶ 2-20; Bhatt Decl. ¶ 2; Dkt. 49-2, pp. 4-8. Plaintiffs' notice argument is therefore misleading. Opp. at 5.

Plaintiffs' arguments regarding the questionnaire privacy disclosure rest on the same mischaracterizations of the sign-up screen. Opp. at 6-7. They contend that no reasonable user would understand that questionnaire data may be shared with third parties for marketing because the disclosure was "inconsistent with WW's ***earlier*** claim about using health data ***only*** for a limited purpose." *Id.* at 6 (emphasis added). But as explained, nothing supports that Plaintiffs saw the sign-up screen before taking the questionnaires. Even if they did, that screen did not make the claim Plaintiffs assert it did. Plaintiffs further argue the disclosure was inconspicuous because it was in small font and did not require checking a box. Opp. at 6. But they do not distinguish WW's cases, which demonstrate the disclosure was conspicuous and that no checkbox is required. Mot. at 10-11. Their sole case is inapposite: *Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33 (S.D.N.Y. 2025), concerned a "pop-up [that] remain[ed] at the bottom left corner of the screen and notifie[d] users that if they continue using the Website, they consent to the Terms." *Id.* at 43-44. No similar facts exist here.

Plaintiffs' challenge to the Privacy Policy fares no better. They argue that notifying users that WW "collects health data" and uses tracking technologies "is not enough to alert consumers that WW is *disclosing* private *health data*" to third parties. Opp. at 7 (emphasis in original). But the Policy does precisely that: it identifies ***Health Information*** as a category of "personal information" WW collects, and under the heading "**WHEN DO WE DISCLOSE INFORMATION TO THIRD PARTIES**," WW states it shares "personal information with the following third parties: … ***Analytics, Advertising, and Social Media Platforms and Networks***," via "cookies" and "pixels," and that those third parties use the information "to provide [users] with advertisements." ECF No. 49-2, Exs. B-C. Nothing more is required for consent.[4]

**B. Claims Based On "Other Tracking Technologies" Must Be Dismissed**

Plaintiffs' claims premised on tracking technologies from New Relic, Braze, Customer.io, Nextdoor, and "other third parties" should be dismissed because Plaintiffs do not allege sufficient factual matter to support them. Mot. at 18. Plaintiffs respond that they provided "fair notice" under Rule 8. Opp. at 8. But WW invoked the plausibility standard under Rule 12(b)(6)—not Rule 8. Mot. at 18 (citing *Twombly* and *Iqbal*); *see also Ghosh v. New York City Hous. Auth.*, 2023 WL 3612553, at *8 (S.D.N.Y. Feb. 27, 2023), *report and recommendation adopted,* 2023 WL 3746617 (S.D.N.Y. Mar. 20, 2023) (a complaint meeting Rule 8's requirements may still be dismissed under Rule 12(b)(6) "if it fails to present sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" (citations and quotations omitted)). Plaintiffs do not address the *Twombly/Iqbal* plausibility standard. Opp. at 8-9. Nor could they satisfy it.

---

[4] Plaintiffs' argument that, even if they consented, the crime-tort exception saves their ECPA claim (Opp. at 7-8) conflates two distinct inquiries: the crime-tort exception limits the one-party consent rule—where one party to a communication consents to its interception—not situations where the user herself consented to the interception.

Plaintiffs allege no "factual content" about the "other tracking technologies", such as how each functions, what data each collects, how those companies use the data, or why such use violates any applicable law . *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While it may be "conceivable" that these technologies operate like those used by Meta, Google, and Amplitude, Plaintiffs do not allege plausible facts supporting that inference. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Having already had one opportunity to add such allegations, their claims based on these technologies should be dismissed with prejudice.

### C. **Plaintiff Strom's Claims Must Be Dismissed**

Strom's claims must be dismissed because she does not allege she took the Intro Questionnaire, the Clinic Questionnaire, or the Consultation Questionnaire. Mot. at 14-15. She argues she provided "fair notice" under Rule 8 (Opp. at 9), but as explained, the applicable test is the *plausibility* standard under Rule 12(b)(6). *See supra* Section II.B. She cannot satisfy that standard. Her claims are premised on those three questionnaires, yet she does not allege she took any of them. Mot. at 14-15. Her argument that she need not identify which questionnaire she took because "*every* questionnaire results in the interception of health data" (Opp. at 9) is unavailing because the paragraphs she cites (¶¶ 141-153) concern only those three questionnaires—not the unidentified one she took. Indeed, that Strom alleges only that she took "a questionnaire" (FAC ¶ 68) suggests it was not one of the three on which the FAC is premised. Strom cites the Bhatt Declaration from WW's motion to compel arbitration to try to cure these deficiencies (Opp. at 9), but she cannot amend her complaint in this manner nor rely on extrinsic facts to satisfy her pleading burden. Her claims are therefore implausible and must be dismissed.

### D. Plaintiffs Do Not Have Statutory Standing To Assert Their GBL Claim[5]

Plaintiffs cannot assert a GBL claim because they do not allege that the purportedly deceptive transaction (i.e., their WW membership purchases) occurred in New York. Mot. at 15-17; *see Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 403 (S.D.N.Y. 2010) (no GBL standing where plaintiffs "paid for their hotel reservations on the Internet ***from their respective home states***"). It is not enough that WW allegedly "orchestrated and consummated" the conduct from its New York headquarters (Opp. at 10), or that it "owns and controls the WW Websites" and "installed and configured" the challenged tracking technologies. *Id. See Mountz v. Glob. Vision Prods., Inc.*, 770 N.Y.S.2d 603, 608 (Sup. Ct. 2003) ("[T]he New York action of a defendant cannot merely be 'hatching a scheme or originating a marketing campaign in New York.'"); *Wheeler v. Topps Co., Inc.*, 652 F. Supp. 3d 426, 431 (S.D.N.Y. 2023) ("Courts have consistently rejected claims under § 349 and § 350 based solely on an out-of-state customer's interacting with a website controlled in New York"). Nor is it enough that WW's Terms & Conditions select New York law and a New York forum. Opp. at 11 n.6; *McVetty v. TomTom N. Am., Inc.*, 2021 WL 965239, at *3 (S.D.N.Y. Mar. 13, 2021) ("As to choice of law, the purported consumer agreement with the New York choice of law provision is not mentioned in the [FAC] but, even if it were, territorial connection is established through the facts of the alleged transaction or deception and not the parties' preferences."). The Plaintiffs cases (Opp. at 11) allege connections to New York *beyond* defendant's principal place of business and website ownership (e.g., that defendant was paid in New York, required customer communications be sent to its physical office in New York, etc.). The FAC contains no such allegations, and the GBL claim should be dismissed with prejudice.

---

[5] Plaintiffs admit that the Florida Plaintiffs cannot assert a CIPA claim and that the California Plaintiffs cannot assert an FSCA claim. Opp. at 10 n.5.

**E. Plaintiffs' Claims Fail For Additional, Independent Reasons**

***1. Plaintiffs' GBL Claim Fails***

Plaintiffs' GBL claim also fails because they do not allege an actionable misrepresentation or omission. Mot. at 19. Plaintiffs point to the sign-up screen as demonstrating both, arguing that WW promised to "only use … health data 'to the extent necessary for the provision of the tools and function of WW products.'" Opp. at 14-15. But Plaintiffs allege nothing about the sign-up screen in their FAC, and as explained, the sign-up screen made no such promise. *See supra* Section II.A. Plaintiffs therefore cannot distinguish *Rider v. Uphold HQ Inc.*, 657 F. Supp. 3d 491 (S.D.N.Y. 2023), or *Prue v. Fiber Composites, LLC*, 2012 WL 1314114 (E.D.N.Y. Apr. 17, 2012) because like the plaintiffs in those cases, they have failed to identify an actionable misrepresentation or omission. Plaintiffs' cases are distinguishable because those defendants affirmatively promised not to share user information and then did so. Opp. at 14 (citing *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369 (S.D.N.Y. 2024)). WW made no such promise. The claim should be dismissed.

***2. Plaintiffs' ECPA Claim Fails***

The Parties agree the ECPA's one-party consent rule is inapplicable where the interception is conducted "***for the purpose of*** committing a crime or tort." Mot. at 20; Opp. at 18 (emphasis added). Plaintiffs argue that "WW acted ***for the purpose of*** disclosing this information to third parties and using it for targeted advertising." Opp. at 19 (emphasis added). But that is not an allegation that WW acted ***for the purpose of*** violating HIPAA. Rather, Plaintiffs allege the *effect* of WW's stated purpose—disclosing information to third parties for targeted advertising—*resulted in* a purported HIPAA violation. *Id.* That is insufficient. *See Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202-03 (9th Cir. 1999) ("Where the purpose is not illegal or tortious, but the

means are, the victims must seek redress elsewhere."). Even if Plaintiffs plausibly alleged WW's purpose was to violate HIPAA, that the interception itself violates the law is not enough. The interception must be "done for the purpose of facilitating ***some further impropriety***" for the crime-tort exception to apply. *Id.* at 1202 (emphasis added); *accord Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010); *see also Doe I v. Google LLC*, 2023 WL 6882766, at *2 (N.D. Cal. Oct. 18, 2023) (rejecting crime-tort exception in web tracking case because no further impropriety). No "further impropriety" is present here.[6]

***3. Plaintiffs' CIPA Claim Fails***

As a preliminary matter, while the Rule of Lenity requires that any ambiguity in CIPA's language be interpreted in WW's favor, Mot. at 23, no such favorable interpretation is required for WW to prevail. That is because Plaintiffs fail to allege fundamental elements of their CIPA claim:

***Second Clause***. Plaintiffs fail to allege a second clause violation because they do not allege the Website Vendors read or attempted to read their communications while in transit. Mot. at 24. Plaintiffs argue this test does not apply (Opp. at 20-21), but this is contrary to the statute's plain language and multiple cases requiring such an allegation. Mot. at 23-24. The cases Plaintiffs rely on (Opp. at 21) are distinguishable because they address whether a message was "intercepted," not whether a third party "read" or "attempt[ed] to read" it, as the statute requires. Further, Plaintiffs'

---

[6] While Plaintiffs argue that courts have found the requisite tortious conduct where the "purpose" was for "advertising and marketing efforts" (Opp. at 19 n.8, citing *Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002, at *5 (N.D. Cal. Aug. 4, 2025)), those cases incorrectly treat a defendant's use of PII for advertising, in contravention of its privacy policy, as an independent tort "beyond the act of intercepting" alone. *Id.* However, using PII for advertising is not, itself, a tort; the purported tortious conduct is the <u>disclosure</u> in contravention of the privacy policy—i.e., ***the interception itself***. Because this is not independent of the interception, it cannot support the crime-tort exception. *See In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014).

characterization of *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109 (N.D. Cal. 2025), as an "outlier" is unfounded—courts have cited *Doe* with approval,[7] none have criticized it, and *Doe* followed other decisions imposing the same requirement. *Id.* at 1116. Pivoting, Plaintiffs contend they have alleged reading in transit because they "allege that data is 'processed' (i.e., read and understood by third parties) *before* it is stored or reaches its final destination." Opp. at 21. But they cite no authority that treats "processing" as "understanding the substantive meaning of the message [or] communication." *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025). Nor do their cited allegations establish that any such "processing" occurs while the communication is in transit. Opp. at 21; Mot. at 24-25. Finally, Plaintiffs' argument that WW's authorities are distinguishable because they arose at different stages of litigation or concern different technologies is unavailing, as all support WW's interpretation of the second clause.

***Third Clause***. Because Plaintiffs have not alleged a first- or second-clause violation, they cannot allege a third-clause violation. Mot. at 25.

***Fourth Clause***. Plaintiffs argue that WW aided and abetted the Website Vendors in violating CIPA by deploying their tracking technology on the Websites. Opp. at 23-24. But Plaintiffs must allege that WW *knew* the Website Vendors intercepted and read communications in transit, not merely that WW deployed the technologies. Mot. at 25-26. That WW was previously sued for violating a different statute (the VPPA) does not demonstrate knowledge that the Website Vendors were violating *CIPA*, nor do Plaintiffs identify other allegations of such knowledge.

***Party Exception***. Plaintiffs do not dispute that they bear the burden of establishing that the party exception does not apply to New Relic, Braze, Customer.io, and Nextdoor. Mot. at 27; Opp. at 23-24. They contend their allegations suffice because these companies' tracking technologies

[7] *See, e.g.*, *Lewis v. Magnite, Inc.*, 2025 WL 3687546, at *12 (C.D. Cal. Dec. 4, 2025).

function the same as the other Website Vendors'. Opp. at 23. Alleging similar functionality says nothing about these companies' capabilities in using questionnaire data or how they used it. The party exception therefore applies.

#### *4. Plaintiffs' Invasion Of Privacy Claim Fails*

The Florida Plaintiffs do not contest they cannot assert an invasion of privacy claim, so it should be dismissed with prejudice. Mot. at 27-28.

The California Plaintiffs' claim fails because they do not allege an intrusion that was highly offensive to a reasonable person. *Id.* at 28-29. Plaintiffs argue that courts uphold invasion of privacy claims based on disclosure of health data from services similar to WW. Opp. at 16. But Plaintiffs' cases are distinguishable because in each the defendant promised not to share health data with third parties, creating an expectation of privacy absent here. *See Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1251 (N.D. Cal. 2024); *Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *1 (N.D. Cal. July 22, 2025).

Plaintiffs also argue that their cited cases demonstrate that a disclosure of health data may be considered an intrusion and that WW's Illinois and Minnesota authorities are inapplicable under California law. Opp. at 16. Plaintiffs' cases do not address the intrusion argument WW advances (*id.*), and courts apply the same intrusion-upon-seclusion standard under Illinois, Minnesota, and California law. *Compare Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022) (requiring an "intrusion into a private place") *with Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 848-49 (N.D. Ill. 2023) (same) *and Okash v. Essentia Health*, 2024 WL 1285779, at *7 (D. Minn. Mar. 26, 2024) (same).

In arguing that the disclosure was "highly offensive," Plaintiffs insist that "the sensitivity of the information and context of the disclosure matter." Opp. at 17. Context does matter—and it

dooms their claim. This was not a confidential consultation behind closed doors but a questionnaire on a public website, that notified users their responses would be disclosed. Mot. at 28-29. In that context, sharing questionnaire data for advertising is not highly offensive. Plaintiffs' cases are thus distinguishable. *See, e.g.*, *FullStory, Inc.*, 712 F. Supp. 3d at 1251; *GoodRx Holdings, Inc.*, 2025 WL 2052302, at *1.

### *5. Plaintiffs' Unjust Enrichment Claim Fails*

Plaintiffs' unjust enrichment claim is premised on the same allegations as their statutory and tort claims. Mot. at 29. While Plaintiffs argue that they "plead a distinct equitable theory" (Opp. at 25), they "make[] no ***factual allegations*** unique to [their] unjust enrichment claim." *Advanced Knowledge Tech, LLC v. Fleitas*, 2021 WL 6126966, at *5 (S.D.N.Y. Dec. 28, 2021) (emphasis added). Because the claim "relies on the same operative facts as [their] other claims … to the extent these claims ultimately succeed, the unjust enrichment claim would be duplicative, and to the extent the claims fail, the basis for plaintiff[s'] unjust enrichment claim would necessarily crumble." *Devey v. Big Lots, Inc.*, 635 F. Supp. 3d 205, 219 (W.D.N.Y. 2022). Nor does Plaintiffs' attempt at distinguishing *Fed. Treasury Enter. Sojuzplodoimport*, Opp. at 26, do anything to address the fact that an unjust enrichment claim is unavailable where an adequate remedy at law exists and nowhere in the FAC do Plaintiffs allege they lack an adequate remedy at law. Mot. at 29. The claim must be dismissed.

### *6. Plaintiffs' FSCA Claim Fails*

Plaintiffs' FSCA claim should be dismissed because Florida courts have dismissed claims based on similar tracking technologies collecting similar information and, separately, Plaintiffs lack a reasonable expectation of privacy in their questionnaire responses. Mot. at 30-31.

Plaintiffs contend the session-replay cases WW cited involve "a separate type of software" that "record[s] different information" for "different purposes." Opp. at 25. But the tracking technologies at issue here capture the same categories of data—"specific information [users] input into the website," "what pages they visit[ed]," and "clicks." FAC ¶¶ 117, 125, 133. That is the very conduct Florida courts hold falls outside the FSCA. *See Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860, at *1 (Fla. Cir. Ct. June 17, 2021). That session-replay videorecords such data does not alter the analysis, nor do Plaintiffs explain how the use of such data changes it. Plaintiffs' reliance on *W.W. v. Orlando Health, Inc.*, 2025 WL 722892 (M.D. Fla. Mar. 6, 2025) is misplaced for the reasons explained in the Motion. Mot. at 31 n.15.

### F. Leave to Amend Should Not Be Granted

Plaintiffs argue leave to amend should be granted because this Motion "takes an entirely different tack" than WW's prior motion. Opp. at 27. But their Opposition belies this: they contend WW's arguments fail "on the same grounds described in Plaintiffs' last opposition brief." Opp. at 1. The Court directed Plaintiffs to address the original Motion to Dismiss arguments in their FAC (Dkt. 89) but they did not. All claims should be dismissed with prejudice.

## III. CONCLUSION

The Amended Complaint should be dismissed with prejudice.

DATED: June 24, 2026

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: */s/ Abby H. Meyer*

P. Craig Cardon (Admitted Pro Hac Vice)
Kevin Murphy (Admitted Pro Hac Vice)
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067
Telephone: (310) 228-3700
ccardon@sheppardmullin.com
kemurphy@sheppardmullin.com

Abby Meyer (Admitted Pro Hac Vice)
650 Town Center Drive, 10th Floor
Costa Mesa, CA 92626-1993
Telephone: (714) 513-5100
ameyer@sheppardmullin.com

Sylvia Waghorne
30 Rockefeller Plaza
New York, New York 10112-0015
Telephone: (212) 653-8700
Swaghorne@sheppardmullin.com

*Attorneys for Defendants*
*WW International, Inc., WW.Com, LLC, Weekend Health of Texas, PA, Weekend Health of New Jersey P.C., Weekend Health of Pennsylvania, P.C., and WeightWatchers Clinic f/k/a Brantley T. Jolly, M.D.*

**WORD COUNT LIMIT CERTIFICATION**

I, Abby H. Meyer, hereby certify that the foregoing memorandum of law complies with the word count limit set forth in S.D.N.Y. Local Civil Rule 7.1(c) and Section 4.A of the Individual Rules & Practices in Civil Cases of Hon. Ronnie Abrams. According to the word count of the word-processing program used to prepare the memorandum, and exclusive of the portions of it that are excluded by the rule, there are 3,449 words in the document.

*/s/ Abby H. Meyer*
Abby H. Meyer