**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**MANHATTAN DIVISION**

ERICA BRUCKNER, ANITA CAMPANA, MEGAN CONNOR, ALLISON GIORGIO, JANINE HENRY, JENNIFER TORRES, ANTOINETTE WACHTL, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

WW INTERNATIONAL, INC., WW.COM, LLC, WEEKEND HEALTH OF TEXAS, PA, WEEKEND HEALTH OF NEW JERSEY P.C., WEEKEND HEALTH OF PENNSYLVANIA, P.C., AND BRANTLEY T. JOLLY, M.D., PROF. CORP.,

Defendants.

Case No. 1:25-cv-02944-RA

Hon. Ronnie Abrams

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION**

**TABLE OF CONTENTS**

**PAGE**


I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 2

A. WW's Regular Membership Program Did Not Include an Arbitration Provision Until Approximately December 2024 ........ 2

B. Plaintiff Wachtl Was Not Required to Assent to an Arbitration Provision at Sign-Up & Her Membership Agreement Did Not Contain an Arbitration Clause ........ 3

C. Plaintiffs Bruckner, Campana, and Connor Subsequently Signed Up for WW Clinic ........ 4

D. WW Claims Plaintiffs Connor and Henry Subsequently Signed Up for Additional WW Memberships ........ 7

E. Plaintiffs Wachtl & Plaintiff Henry Subsequently Started, But Did Not Complete, the Sign-up for the Registered Dietician Service and/or Clinic ........ 9

F. No Plaintiff Ever Signed a Membership Agreement ........ 10

G. The Only Actual Terms That Could Possibly Govern Plaintiffs' Claims Are the WW.com Terms and Conditions of Use ........ 11

H. Even If WW's Membership/Clinic Terms Applied, They Do Not Apply Retroactively 13

I. WW's Evidence is Incomplete & Insufficient to Meet its Burden ........ 14

III. CHOICE OF LAW ........ 16

IV. LEGAL STANDARD ........ 17

V. ARGUMENT ........ 17

A. Even if Enforceable, WW's Arbitration Provision Only Applies Prospectively ........ 17

B. WW Cannot Meet Its Burden for Plaintiffs Bruckner, Campana, Connor, and Henry's Post-December 2024 Claims ........ 21

C. WW Cannot Compel Plaintiff Wachtl Based on Terms Applicable to a Product She Did Not Purchase or Use ........ 24

D. The Scope of the Arbitration Provision Is Not an Issue for the Arbitrator ........ 26

E. Plaintiffs' Claims Do Not Fall Within the Scope of the Non-Applicable Arbitration Clause ........ 29

F. The Class Action Waiver Is Unenforceable ........ 32

VI. CONCLUSION ........ 32

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Applebaum v. Lyft, Inc.*,
263 F. Supp. 3d 454 (S.D.N.Y. 2017) .......... 21, 22

*Applied Energetics, Inc. v. NewOak Cap. Markets, LLC*,
645 F.3d 522 (2d Cir. 2011) .......... 17, 25

*Armor All/STP Prods. Co. v. TSI Prods., Inc.*,
337 F. Supp. 3d 156 (D. Conn. 2018) .......... 28, 31

*Arnaud v. Doctor's Assocs. Inc.*,
821 F. App'x 54 (2d Cir. 2020) .......... 21

*Baptist Hosp. of Miami, Inc. v. Medica Healthcare Plans, Inc.*,
376 F. Supp. 3d 1298 (S.D. Fla. 2019) .......... 19

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... 17

*Brooklyn Union Gas Co. v. NewFields Companies, LLC*,
No. 19-CV-6363(EK)(VMS), 2020 WL 7770993 (E.D.N.Y. Dec. 30, 2020) .......... 25

*Cape Flattery Ltd. v. Titan Mar., LLC,*
647 F.3d 914 (9th Cir. 2011) .......... 27, 28

*Castro v. ABM Indus., Inc.*,
No. 17-CV-3026-YGR, 2018 WL 2197527 (N.D. Cal. May 14, 2018) .......... 19

*Centrifugal Force, Inc. v. Softnet Commc'n, Inc.*,
No. 08–cv–5463 (CM)(GWG), 2011 WL 744732 (S.D.N.Y. Mar. 1, 2011) .......... 24

*Coenen v. R.W. Pressprich & Co.*,
453 F.2d 1209 (2d Cir. 1972) .......... 19

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
990 F.3d 173 (2d Cir. 2021) .......... 31

*Dasher v. RBC Bank (USA)*,
745 F.3d 1111 (11th Cir. 2014) .......... 26

*Davitashvili v. Grubhub Inc.*,
131 F.4th 109 (2d Cir. 2025) .......... 30

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*,
6 F.4th 308 (2d Cir. 2021) ........................................ 26, 29

*Edmundson v. Klarna, Inc.*,
85 F.4th 695 (2d Cir. 2023) ........................................ 23, 24

*Faroque v. Park W. Exec. Servs.*,
No. 15 CV 6868 (DLI), 2016 WL 11264720 (E.D.N.Y. Sept. 7, 2016) ........................................ 18

*Flores v. Chime Fin., Inc.*,
No. 21-CV-4735 (RA), 2022 WL 873252 (S.D.N.Y. Mar. 23, 2022) ........................................ 24

*FUJIFILM N. Am. Corp. v. Geleshmall Enters. LLC*,
239 F. Supp. 3d 640 (E.D.N.Y. 2017) ........................................ 31

*Hiteks Sols., Inc. v. Citibank, N.A.*,
No. 25-CV-200 (JPO), 2025 WL 2702128 (S.D.N.Y. Sept. 23, 2025) ........................................ 19

*Holick v. Cellular Sales of New York, LLC,*
802 F.3d 391 (2d Cir. 2015) ........................................ 17, 18

*In re Checking Acct. Overdraft Litig.*,
915 F. Supp. 2d 1363 (S.D. Fla. 2013) ........................................ 17, 26

*Khowala v. Vivint Smart Home, Inc.*,
No. 23 CIV. 1068 (AT), 2024 WL 3638265 (S.D.N.Y. Aug. 1, 2024) ........................................ 18, 20

*Klay v. All Defendants*,
389 F.3d 1191 (11th Cir. 2004) ........................................ 17

*Lapina v. Men Women N.Y. Model Mgmt. Inc.*,
86 F. Supp. 3d 277 (S.D.N.Y. 2015) ........................................ 28

*LAVVAN, Inc. v. Amyris, Inc.*,
No. 21-1819, 2022 WL 4241192 (2d Cir. Sept. 15, 2022) ........................................ 27

*Lewis v. Samsung Elecs. Am., Inc.*,
No. 1:22-cv-10882 (JLR), 2023 WL 7623670 (S.D.N.Y. Nov. 14, 2023) ........................................ 23

*Meeg v. Heights Casino*,
No. 17-CV-4059 (NGG) (CLP), 2020 WL 1493658 (E.D.N.Y. Mar. 27, 2020) ........................................ 21

*Meyer v. Uber Tech., Inc.*,
868 F.3d 66 (2d Cir. 2017) ........................................ 24

*Microsoft Corp. v. Samsung Elecs. Co.*,
60 F. Supp. 3d 525 (S.D.N.Y. 2014) ........................................ 31

*Mullo v. DoorDash, Inc.*,
No. 22-CV-2430 (VEC), 2023 WL 1971897 (S.D.N.Y. Jan. 17, 2023) .................................... 32

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
770 F.3d 1010 (2d Cir. 2014) .......................................................................... 26, 27, 28

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) ................................................................................... 22

*PB Life & Annuity Co. v. Universal Life Ins. Co.*,
No. 20-cv-2284 (LJL), 2020 WL 2476170 (S.D.N.Y. May 12, 2020) .................................... 28

*Querette v. Chromalloy Gas Turbine LLC*,
No. 22-CV-00356 (PMH), 2023 WL 145014 (S.D.N.Y. Jan. 10, 2023) .................................. 27

*Ruiz v. New Avon LLC*,
No. 18-CV-9033 (VSB), 2019 WL 4601847 (S.D.N.Y. Sept. 22, 2019) ................................. 25

*Sacchi v. Verizon Online LLC*,
No. 14-CV-423-RA, 2015 WL 765940 (S.D.N.Y. Feb. 23, 2015) ..................................... 19, 20

*Schnabel v. Trilegiant Corp.*,
697 F.3d 110 (2d Cir. 2012) ................................................................................... 16

*Scotti v. Tough Mudder Inc.*,
97 N.Y.S.3d 825 (N.Y. Sup. Ct. 2019) ..................................................................... 21, 24

*Shron v. LendingClub Corp.*,
No. 19 CIV. 6718 (AT), 2020 WL 3960249 (S.D.N.Y. July 13, 2020) .............................. 22, 24

*Specht v. Netscape Commc'ns Corp.*,
306 F.3d 17 (2d Cir. 2002) ........................................................................... 29, 31, 32

*Staley v. Hotel 57 Servs., LLC*,
No. 23-770 (L), 2024 WL 1090816 (2d Cir. Mar. 13, 2024) ................................................ 29

*Starke v. SquareTrade, Inc.*,
913 F.3d 279 (2d Cir. 2019) ................................................................................... 17

*Starke v. Gilt Groupe, Inc.*,
No. 13–cv–5497 (LLS), ECF No. 14-1 (March 19, 2014) .................................................... 24

*Starke v. Gilt Groupe, Inc.*,
No. 13 Civ. 5497 (LLS), 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) .................................. 32

*Suski v. Marden-Kane, Inc.*,
No. 21-CV-04539-SK, 2022 WL 103541 (N.D. Cal. Jan. 11, 2022) ................................ 18, 25

*Valiente v. Nexgen Glob., LLC*,
No. 23-13308, 2025 WL 3140480 (11th Cir. Nov. 10, 2025) .......................................... 16, 17

*Wexler v. AT & T Corp.*,
211 F. Supp. 3d 500 (E.D.N.Y. 2016) ....................................................................... 31

*Whitt v. Prosper Funding LLC*,
No. 1:15-CV-136-GHW, 2015 WL 4254062 (S.D.N.Y. July 14, 2015) ................................ 24

*Zachman v. Hudson Valley Fed. Credit Union,*
49 F.4th 95 (2d Cir. 2022) ........................................................................................ 21

# I. INTRODUCTION

Defendants WW International, Inc., WW.com, LLC, Weekend Health of Texas, PA, Weekend Health of New Jersey P.C., Weekend Health of Pennsylvania, P.C., and WeightWatchers Clinic f/k/a Brantley T. Jolly, M.D.'s ("Defendants" or "WW") Motion to Compel Individual Arbitration ("Motion" or "Mot.") (ECF No. 113) must be denied in its entirety.

At the outset, WW's purported evidence is woefully incomplete, omitting across Plaintiffs: (1) internal records showing Plaintiffs signed up for WW memberships ***years earlier*** than WW claims in its Motion; (2) the sign-up screens Plaintiffs would have seen at the time they signed up for these accounts; and (3) the WW Membership and/or Terms of Use in effect at the time of sign-up. This missing evidence—which is largely (if not exclusively) in WW's control—is fatal to WW's Motion because, without it, WW cannot establish that Plaintiffs received notice of, or assented to, any arbitration agreement when they created their WW accounts. In fact, Plaintiffs' own evidence, and the testimony of WW's own declarant Mr. Edward Cai, confirm WW did not use an arbitration provision at the time Plaintiffs initially signed up for WW.

While that alone dooms WW's Motion, its alternative theory fares no better. [redacted] But, for Plaintiff Bruckner, WW again submits zero evidence reflecting the sign-up screens she would have seen at the time she completed this questionnaire. Instead, [redacted]. This is not evidence; WW cannot compel Plaintiff Bruckner.

A number of additional issues plague WW's attempt to compel Plaintiffs to arbitration. Most importantly, WW's Terms of Use do not apply retroactively and thus cannot encompass

Plaintiffs' claims that ***predate*** the completion of the WW Clinic Questionnaire or subsequent Membership Agreements that WW claims they agreed to. On top of that, [redacted]

But even then, and if these screens were sufficient to create some type of agreement, Plaintiffs' claims do not fall within the scope of those terms. Plaintiffs' claims do not arise from WW Clinic's prescription-drug services, dietician service, or point-counting program. They arise from WW's collection and disclosure of information submitted through online questionnaires made available to prospective, current, and former WW customers—conduct governed, if at all, by WW's separate Website Terms of Use. These terms require claims to be brought in federal court, ***not*** arbitration.

For these reasons, the Court should deny WW's Motion in its entirety.

## II. STATEMENT OF FACTS

### A. WW's Regular Membership Program Did Not Include an Arbitration Provision Until Approximately December 2024

The First Amended Class Action Complaint (ECF No. 96) ("Amended Complaint") alleges that Plaintiffs Bruckner, Campana, Connor, and Henry, each signed up for a WW Membership no later than January 2023. *See* Amended Complaint ¶¶ 18-19 (Bruckner, Mar. 2020); 25-26 (Campana, Aug. 2019); 32-33 (Connor, Aug. 2019); 52-53 (Henry, Jan. 2023).[1] Plaintiffs' records

[1] WW's own records would contain the same information, [redacted] *See, e.g.*, ECF No. 75-2 (internal WW records showing Plaintiff Wachtl's "Started On" date and listing subscriptions); *see also* ECF No. 75-4 at 182:12-19 (Cai testifying "there would have been a record" if a plaintiff signed up for additional subscriptions).

confirm these allegations are accurate. *See* Exs. D-G;[2] *see also* Declaration of Anita Campana; Declaration of Megan Connor.

At the time these Plaintiffs signed up for these WW Memberships, they provided their health information for WW as part of their sign-up process. *Id.* ¶¶ 99-103. When they provided this information, WW disclosed their health data to third parties, including Meta and Google. *Id.* ¶¶ 140-44.

WW submits no evidence that it had an arbitration provision at the time any of these Plaintiffs signed up for these WW memberships and had their health data disclosed to third parties. Plaintiffs' own evidence, and the testimony of WW's declarant Mr. Edward Cai, suggest WW did not use an arbitration provision at this time. *See* ECF No. 75-4 at 114:1-12 (Cai explaining it was only "sometime before December 31st, [2024] we created the — Weight Watchers I think added a — a new terms page called the Membership Agreement, and that had new language [with the arbitration provision] that was live on that date."); Ex. B ([redacted]); ECF No. 75-6 (WW Membership Agreement emailed to customers lacking an arbitration provision as recently as of December 31, 2024).

### B. Plaintiff Wachtl Was Not Required to Assent to an Arbitration Provision at Sign-Up & Her Membership Agreement Did Not Contain an Arbitration Clause

With respect to the only remaining plaintiff, Plaintiff Wachtl, she signed up for a WW membership on December 31, 2024. *See* ECF No. 75-2. As described in Plaintiffs' January 6, 2026 Opposition to Motion to Compel, this multi-screen signup included numerous checkboxes, as well as bold and capitalized language, to direct Plaintiff Wachtl's attention to certain provisions. *See* ECF No. 75 at 13-16. The lone sentence referencing the Membership Agreement incorporated

[2] "Ex. __" or "Exs. __" refers to Exhibits to Declaration of Amanda Fiorilla in support of Plaintiffs' Opposition to Defendants' Motion to Compel Individual Arbitration.

none of these features. *Id.* at 14.

After completing this process, WW emailed Plaintiff Wachtl a formal "receipt" that advised Plaintiff Wachtl to "reference the Membership Agreement." *See id.* at 5. The Membership Agreement linked to the receipt did not contain any arbitration provision. *See* ECF No. 75-6 (Membership Agreement); ECF No. 75-4 at 113:15-20 (Cai testifying "I am aware that in the e-mail that Toni Wachtl received in her receipt – as her receipt, the URL link had not been updated for the most up-to-date terms.").

[redacted] and thus waives its right to compel Plaintiff Wachtl's claims relating to her December 31, 2024 completion of the Intro Questionnaire.

**C. Plaintiffs Bruckner, Campana, and Connor Subsequently Signed Up for WW Clinic**

Plaintiffs Bruckner, Campana, and Connor all subsequently signed up for WW Clinic. *See* Amended Complaint ¶¶ 20, 27, 34. When Plaintiffs completed this process, WW again disclosed their health data to third parties. *Id.* ¶¶ 145-51. WW's declarant [redacted]. Bhatt Decl. ¶¶ 8-20. [redacted] *See id.* ¶ 6.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

**D. WW Claims Plaintiffs Connor and Henry Subsequently Signed Up for Additional WW Memberships**

[redacted] (Bhatt Decl. ¶¶ 15-16) and [redacted] *Id.* ¶ 32. WW does not present any evidence of the sign-up process at those times, or what terms were applicable at the time of sign-up, for any of these instances aside from Plaintiff Henry's March 2026 renewal. *See id.* Accordingly, WW waives any argument it can compel Plaintiffs Connor or Henry for their additional memberships from July 23, 2024 and January 16, 2025, and June 2025, respectively, or any other time beyond Plaintiff Henry's March 2026 renewal.

[redacted]

[redacted]

### E. Plaintiffs Wachtl & Plaintiff Henry Subsequently Started, But Did Not Complete, the Sign-up for the Registered Dietician Service and/or Clinic

Plaintiffs Wachtl and Henry began, but did not complete, the sign-up process for WW Registered Dietician Service and/or Clinic Service. *See* Bhatt Decl. ¶ 27 ([redacted]); Ex. A ("Cai Dep.") 150:1-151:14 (last step of RD Flow is checkout for cash-pay visits, which Wachtl "declined" and "did not check out"); *id.* at 155:24-156:3 (confirming Wachtl "never actually checked out on the registered dietician flow"); ECF No. 75-8 (WW's database record showing Wachtl completed the Clinic Questionnaire); Amended Complaint ¶ 54 (alleging Henry "completed the Clinic Questionnaire" but did not purchase the Clinic service). At this time, WW disclosed Plaintiff Wachtl's and Plaintiff Henry's health data to third parties. Amended Complaint ¶¶ 145–51.

WW does not argue that it can compel Plaintiffs Wachtl and Henry's claims arising out of the Clinic sign-up process that they began but did not complete. *See* Mot. at 9-14. WW thus waives this argument and cannot compel these claims to arbitration.

[redacted] Bhatt Decl. ¶ 28. [redacted] *See* Ex. C; *see also* Fig. 4. Because Plaintiff Wachtl did not complete this flow, or check this box, the Clinic Terms do not apply to her.

[redacted]

[redacted]

**F. No Plaintiff Ever Signed a Membership Agreement**

WW's Motion submits as Exhibit A [redacted]. *See* ECF

No. 114-1. To be clear, WW did not present Plaintiffs with agreements for their signature and Plaintiffs never signed any documents. WW's prior declarant, Edward Cai, confirmed it is WW's system that [redacted] whenever a WW customer clicks the button to continue to the next page of the sign-up flow. *See* Cai Dep. 151:21-152:8 (explaining the system [redacted] and saves the terms as a PDF to the user's account); *id.* at 152:9-23 (explaining "agreed" means only that the user "click[ed] 'next'"); *id.* at 156:17-157:3 ([redacted]). Accordingly, [redacted]. *See* Mot. at 18 n.6; *see also* Bhatt Decl. ¶¶ 5, 12, 19, 30.

### G. The Only Actual Terms That Could Possibly Govern Plaintiffs' Claims Are the WW.com Terms and Conditions of Use

As described in the Amended Complaint, Plaintiffs' claims arise out of their use of the WW websites—not any particular membership agreement. WW maintains separate terms that govern the use of its website. *See* ECF No. 75-12.

**FIGURE 5**[3]

## 1. Scope of Terms & Conditions

Unless we indicate otherwise, these Terms & Conditions apply to your use of the websites which are owned or operated by WW.com, LLC ("WW.com") and its affiliates (collectively, "we," "us," or "our"),

[redacted] *See* Ex. B ([redacted])); ECF No. 114-1 ([redacted]

[3] *See* ECF No. 75-12 (WW.com's Terms and Conditions of Use).

[redacted])) (emphasis in original); ECF No. 114-2 ([redacted]); *id.* ([redacted]).

[redacted] *See* Ex. B ([redacted]). This confirms it is these terms—not any Clinic or Membership agreement—that specifically govern Plaintiffs' claims. These terms do not contain an arbitration provision.

[redacted]

[redacted]

Quite the opposite, the WW.com Terms and Conditions say that disputes must be brought "<u>only</u>" in state or federal courts in New York State. ECF No. 75-12 (emphasis added). There is no mistaking this provision requiring disputes to be brought in New York court applies to the claims at hand because the provision explicitly states it applies to "any **<u>action . . . arising out of or relating to your use of this Website</u>** or these Terms & Conditions." *Id.* (emphasis added); *see also* Fig. 7.

**FIGURE 7**

# 17. Governing Law and Choice of Forum

These Terms & Conditions shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to any principles of conflicts of law. You agree that any action at law or in equity arising out of or relating to your use of this Website or these Terms & Conditions shall be filed only in the state or federal courts located in New York County in the State of New York and you hereby consent and submit to the personal jurisdiction of such courts for the purposes of litigating any such action.

### H. Even If WW's Membership/Clinic Terms Applied, They Do Not Apply Retroactively

[redacted] *See* ECF No. 114-1 § 10, at 11, 32, 53, 74, 95 (WW Clinic Terms); ECF No. 114-2 ([redacted] Accordingly, even if these terms were applicable (and they are not for a host of reasons), they would only apply on a forward-looking basis.

[redacted]

[redacted]

[redacted]

[redacted]

## I. WW's Evidence is Incomplete & Insufficient to Meet its Burden

Given the gaps highlighted above, WW's evidence is woefully incomplete to compel Plaintiffs to arbitration. As depicted in the following chart, WW omits the following evidence from its Motion:

| Plaintiff | Transaction (Date / Type) | Sign-Up Screens | Terms | Citation / Evidence |
|---|---|---|---|---|
| **Bruckner** | March 2020 [confirmed to be May 2020] | **No** | **No** | Amended Complaint ¶ 19; Ex. D |
| | April 2024 | **No** | **No** | Amended Complaint ¶ 20; [redacted] Ex. E |
| | [redacted] | [redacted] | [redacted] | [redacted] |
| | [redacted] | [redacted] | [redacted] | [redacted] |

| Plaintiff | Transaction (Date / Type) | Sign-Up Screens | Terms | Citation / Evidence |
|---|---|---|---|---|
| **Campana** | August 2019 | **No** | **No** | Amended Complaint ¶ 26; Declaration of Anita Campana ¶ 1 |
| | January 2025 | **No** | **No** | Amended Complaint ¶ 27; Declaration of Anita Campana ¶ 2 |
| | [redacted] | [redacted] | [redacted] | [redacted] |
| | [redacted] | [redacted] | [redacted] | [redacted] |
| | [redacted] | [redacted] | [redacted] | [redacted] |
| **Connor** | August 2019 | **No** | **No** | Amended Complaint ¶ 33; Ex. F |
| | December 2023 | **No** | **No** | Amended Complaint ¶34; Declaration of Megan Connor ¶ 2 |
| | [redacted] | [redacted] | [redacted] | [redacted] |
| | [redacted] | [redacted] | [redacted] | [redacted] |
| | [redacted] | [redacted] | [redacted] | [redacted] |
| | [redacted] | [redacted] | [redacted] | [redacted] |
| **Henry** | January 2023 (Regular) | **No** | **No** | Amended Complaint ¶¶ 53–54; Ex. G |
| | January 2023 (Clinic) | **No** | **No** | Amended Complaint ¶ 54 |
| | [redacted] | [redacted] | [redacted] | [redacted] |
| | [redacted] | [redacted] | [redacted] | [redacted] |

| Plaintiff | Transaction (Date / Type) | Sign-Up Screens | Terms | Citation / Evidence |
|---|---|---|---|---|
| Wachtl | [redacted] | [redacted] | [redacted] | [redacted] |
| | [redacted] | [redacted] | [redacted] | [redacted] |
| | [redacted] | [redacted] | [redacted] | [redacted] |

Thus, even if WW's evidence was capable of meeting its burden (and it is not) WW could, at best, compel Plaintiff Campana for her claims after March, 2026, Plaintiff Connor after December, 2025, and Plaintiff Henry after March 2026.

## III. CHOICE OF LAW

As described in Plaintiffs' prior opposition brief (ECF No. 75 at 9-10), the Court need not decide choice of law issues now because the laws of the respective forums (i.e., New York, California, and Florida) do not vary in any material way as they pertain to WW's Motion. *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012) (explaining the Court need not decide choice of law issues because the laws are "substantially similar" for purposes of "determining whether the parties have mutually assented to a contract term."); *see also Valiente v. Nexgen Glob., LLC*, No. 23-13308, 2025 WL 3140480, at *3 (11th Cir. Nov. 10, 2025) (declining to resolve choice of law issue because "California and Florida law point to the same outcome" on the issue of arbitration). WW's assertion that [redacted]

## IV. LEGAL STANDARD

Arbitration "is a matter of consent, not coercion." *Holick v. Cellular Sales of New York, LLC,* 802 F.3d 391, 395 (2d Cir. 2015). Where a plaintiff lacks actual notice (which WW cannot and does not argue here), they can only be bound by terms "if he is on inquiry notice of them and assents to them through conduct that a reasonable person would understand to constitute assent." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019); *Valiente*, 2025 WL 3140480, at *6 (explaining enforcement hinges on whether terms were "conspicuous" and "mutual assent"); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (explaining inquiry notice requires "reasonably conspicuous notice of the terms" and that "the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms").

## V. ARGUMENT

### A. Even if Enforceable, WW's Arbitration Provision Only Applies Prospectively

As described in Sections II.A-B, WW has offered no evidence that, at the time Plaintiffs Wachtl, Henry, Campana, and Connor signed up for a regular WW Membership, they were provided with or assented to a valid arbitration agreement. Plaintiffs' own evidence, coupled with testimony from WW's own declarant, confirms there was no arbitration agreement. *See* Sections II.A-B. Having failed to meet its burden, WW cannot compel Plaintiffs' claims arising out of the time they signed up for WW. *See Applied Energetics, Inc. v. NewOak Cap. Markets, LLC*, 645 F.3d 522, 525 (2d Cir. 2011) (reversing district court decision compelling arbitration because "contract" did not contain an arbitration clause and stated disputes would be "adjudicate[d]" by "specified courts[.]"); *In re Checking Acct. Overdraft Litig.*, 915 F. Supp. 2d 1363, 1339 (S.D. Fla. 2013) (refusing to compel arbitration where the "version of the account agreement" sent to each customer "did not contain an arbitration clause.") (citing cases); *Klay v. All Defendants*, 389 F.3d 1191, 1203

(11th Cir. 2004) ("Because arbitration is strictly a matter of contract, we cannot compel arbitration for disputes which arose during time periods in which no effective contract requiring arbitration was governing the parties."); *Suski v. Marden-Kane, Inc.*, No. 21-CV-04539-SK, 2022 WL 103541, at *6 (N.D. Cal. Jan. 11, 2022) *aff'd sub nom. Suski v. Coinbase, Inc.*, 55 F.4th 1227 (9th Cir. 2022), *aff'd*, 602 U.S. 143 (2024) (refusing to compel arbitration where terms did not contain an arbitration clause and, instead, stated disputes should be resolved by "California courts").

[redacted]. *See* Bhatt Decl. ¶¶ 27-31 ([redacted]); *id.* ¶¶ 16-19 ([redacted]); *id.* ¶¶ 9-13 ([redacted]); *id.* ¶¶ 32-37 ([redacted]).

[redacted]

This [redacted] dooms any argument that WW's terms apply retroactively, rather than prospectively. *See Holick*, 802 F.3d at 399 (refusing to compel arbitration where there was "positive assurance that the parties did not intend for the arbitration agreement to be retroactive"); *Khowala v. Vivint Smart Home, Inc.*, No. 23 CIV. 1068 (AT), 2024 WL 3638265, at *4 (S.D.N.Y. Aug. 1, 2024) (rejecting motion to compel where "[t]he 2022 arbitration clause neither expressly states nor necessarily implies that it applies retroactively."); *Faroque v. Park W. Exec. Servs.*, No. 15 CV 6868 (DLI), 2016 WL 11264720, at *8 (E.D.N.Y. Sept. 7, 2016), *report*

*and recommendation adopted*, No. 15-CV-6868 (DLI) (CLP), 2017 WL 1214482 (E.D.N.Y. Mar. 31, 2017) (refusing to apply arbitration provision retroactively where the agreement "provide[s] no indication that the parties intended" for retroactive application and was limited only to "this" agreement not "any claims arising at any time during the parties' relationship"); *Baptist Hosp. of Miami, Inc. v. Medica Healthcare Plans, Inc.*, 376 F. Supp. 3d 1298, 1308 (S.D. Fla. 2019) (holding an arbitration provision cannot apply retroactively absent "language" that "makes the arbitration provision apply retroactively"); *Castro v. ABM Indus., Inc.*, No. 17-CV-3026-YGR, 2018 WL 2197527, at *4 (N.D. Cal. May 14, 2018) (explaining an arbitration provision with a "temporal limitation" such as the future-tense "arising" instead of "arose" confirms an arbitration clause does not apply retroactively).

[redacted]

[redacted]

In any event, WW's cases are separately distinguishable on other grounds. Unlike most of those cases,[4] this case involves [redacted] (*see* Section II.G) [redacted] (*see* Section II.A-B). [redacted] Nothing in WW's cited authority supports that result.

---

[4] [redacted]

### B. WW Cannot Meet Its Burden for Plaintiffs Bruckner, Campana, Connor, and Henry's Post-December 2024 Claims

With respect to Plaintiff Bruckner, WW cannot meet its burden because it presents no evidence [redacted]. *See* Bhatt Decl. ¶ 6; *see Meeg v. Heights Casino*, No. 17-CV-4059 (NGG) (CLP), 2020 WL 1493658, at *3 (E.D.N.Y. Mar. 27, 2020) ("Under New York law, a court may only compel arbitration when 'the evidence establishes . . . [a] clear, explicit and unequivocal agreement to arbitrate.'"); *Scotti v. Tough Mudder Inc.*, 97 N.Y.S.3d 825, 833 (N.Y. Sup. Ct. 2019) (holding defendant's evidence was "woefully inadequate" to meet its burden to compel arbitration where the defendant failed to submit the relevant "webpage[s]" as they appeared "when the plaintiffs registered" and instead relied on an "affidavit" of "little evidentiary value" claiming what this process would have been like); *Zachman v. Hudson Valley Fed. Credit Union,* 49 F.4th 95, 104 (2d Cir. 2022) (vacating district court decision compelling arbitration where "the record does not contain screenshots of the webpage(s) used to register HVCU customers for online banking" and thus had an "evidentiary gap in the record").

WW also cannot compel [redacted] *See* Figs. 1-3; *Arnaud v. Doctor's Assocs. Inc.*, 821 F. App'x 54, 56 (2d Cir. 2020) (finding no inquiry notice where the interface is "relatively cluttered" and "did not use a conspicuous size or font for the terms and conditions link"); *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 466 (S.D.N.Y. 2017) (finding no inquiry notice despite being a clickwrap agreement where there was a "jumbo-sized" next button and text next to checkbox stating "I agree to Lyft's Terms

of Service" was in the "smallest font"); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 236 (2d Cir. 2016) (finding no notice where "critical sentence" was in a "smaller font", despite the use of hyperlinks, and presented alongside other information "summariz[ing] the user's purchase" and other "links" that drew away the user's attention).

[redacted] *See* Fig. 2. [redacted] which do not "indicate the legal significance" of the document or that it would "affect the scope of [one's] legal rights and remedies" necessary to establish inquiry notice. *See Shron v. LendingClub Corp.*, No. 19 CIV. 6718 (AT), 2020 WL 3960249, at *5 (S.D.N.Y. July 13, 2020), *vacated on other grounds,* No. 19 CIV. 6718 (AT), 2020 WL 10223227 (S.D.N.Y. Nov. 30, 2020) (rejecting clickwrap agreement that used the terms "Borrower Agreement" and "Credit Score Notice" as insufficient to provide inquiry notice of arbitration provisions).

Courts have found even *less* cluttered screens to be unenforceable. For instance, in *Applebaum*, the court found Lyft failed to provide inquiry notice—despite using a checkbox—because the hyperlinked "Terms of Service" were presented in a small font, as opposed to other provisions like "Add Phone Number" that were bolded to draw the user's attention and the large "Next" button the user could click to continue the transaction. *See Applebaum*, 263 F. Supp. 3d at 458; *see also* Fig. 10.

**FIGURE 10**




[redacted] *See* Figs. 1-3.

[redacted]

[redacted]

[redacted] But the mere fact that a clickwrap agreement is used is not enough to find notice under controlling law. *See Scotti*, 97 N.Y.S.3d at 832 (citing *Meyer v. Uber Tech., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017) (explaining that pursuant to *Meyer*, the "[c]lassification of web-based contracts alone, however, does not resolve the notice inquiry. Insofar as it turns on the reasonableness of notice, the enforceability of a web based agreement is clearly a fact-intensive inquiry."); *Shron*, 2020 WL 3960249, at *5 (explaining mere use of a clickwrap agreement is a "technical requirement" that is "not tantamount to establishing that Plaintiff was on inquiry notice."). The inquiry turns on the design elements deployed by the Defendant which, for the reasons described above, were insufficient to provide conspicuous notice here.

### C. WW Cannot Compel Plaintiff Wachtl Based on Terms Applicable to a Product She Did Not Purchase or Use

WW also cannot meet its burden to compel Plaintiff Wachtl. As described in Section II.E,

Plaintiff Wachtl began but did not complete any purchase for WW's Registered Dietician service, [redacted] *See* Mot. at 10. [redacted] *See* Fig. 4. Because Plaintiff Wachtl did not complete this screen and purchase the Registered Dietician service, the Clinic Terms did not supersede her regular WW Membership Agreement. *See Brooklyn Union Gas Co. v. NewFields Companies, LLC*, No. 19-CV-6363(EK)(VMS), 2020 WL 7770993, at *5 (E.D.N.Y. Dec. 30, 2020) (refusing to subject a party to a subsequent agreement that it did not sign because a "modification of a contract requires the mutual assent of both, or all, parties to the contract.").

As described in Section II.B, Plaintiff Wachtl (1) did not receive conspicuous notice of any arbitration provision at the time she signed up for a regular WW Membership; (2) WW does not argue Plaintiff Wachtl can be compelled to arbitration based on this separate sign-up process; and (3) the regular WW Membership Agreement that was emailed to Plaintiff Wachtl did not contain an arbitration clause. Because there was no valid arbitration provision, WW cannot compel Plaintiff Wachtl to arbitration. *See Applied Energetics, Inc.*, 645 F.3d at 525 (reversing district court decision compelling arbitration because "contract" did not contain an arbitration clause and stated disputes would be "adjudicate[d]" by "specified courts[.]"); *Ruiz v. New Avon LLC*, No. 18-CV-9033 (VSB), 2019 WL 4601847, at *8 (S.D.N.Y. Sept. 22, 2019) (similar); *see also Suski*, 2022 WL 103541, at *6 (refusing to compel arbitration where terms did not contain an arbitration clause

and, instead, stated disputes should be resolved by "California courts"); *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1122 (11th Cir. 2014) (finding new terms lacking an arbitration provision "renders a prior agreement's arbitration clause ineffective"); *In re Checking Acct. Overdraft Litig.*, 915 F. Supp. 2d at 1339 (refusing to compel arbitration where the "version of the account agreement" sent to each customer "did not contain an arbitration clause.") (citing cases).

### D. The Scope of the Arbitration Provision Is Not an Issue for the Arbitrator

[redacted] because, as described above, there is no valid arbitration provision at all. *See* Sections V.A-C. But even if there were, the threshold issue of the scope of arbitrability would still be a question for this Court. This is because the "law generally treats arbitrability as an issue for judicial determination" unless "the parties clearly and unmistakably provide otherwise." *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014). Here, [redacted] *See* ECF No. 114-1 § 20, at 20, 83 ([redacted] ECF No. 114-2 § 19, at 67 ([redacted]); *see also* ECF No. 114-1 § 19, at 40, 61, 104 ([redacted]); ECF No. 114-2 § 18, at 23 ([redacted] is too narrow to encompass a dispute about whether the terms even apply in the first instance. *See DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 320 (2d Cir. 2021) (explaining arbitration provision that has a "limited scope" creates "ambiguity as to whether the parties clearly and unmistakably intended to delegate the question of arbitrability to the arbitrator" such that it is an issue for the court to decide).

[redacted] *See* ECF No. 114-1 § 1.B, at 4, 25, 46, 67, 88 ([redacted]); ECF No. 114-2 § 1.B, at 4-5, 41 ([redacted]). These terms very clearly govern "WW.com"—in light of their title—and state in all caps they apply to "YOUR USE OF OUR WEBSITE." *See* ECF No. 75-12. These terms contain a <u>mandatory</u> provision requiring disputes that specifically relate to the "Website" to "only" be brought in state or federal court in New York—not in arbitration. *See* Section II.G. This carve-out for the precise types of claims Plaintiffs bring here forecloses any "clear and unmistakable" delegation of arbitrability, requiring this Court—not an arbitrator—to decide the question of arbitrability. *See NASDAQ OMX Grp., Inc.*, 770 F.3d at 1032 (holding "we cannot conclude" the parties "clearly and unmistakably committed questions of arbitrability to an arbitrator rather than the court" when certain "type[s] of claim[s]" were carved out, despite language that "all claims, disputes, controversies, and other matters in question between the Parties" be brought to arbitration); *LAVVAN, Inc. v. Amyris, Inc.*, No. 21-1819, 2022 WL 4241192, at *2 (2d Cir. Sept. 15, 2022) (holding that there was no "clear and unmistakable evidence" of an intent to arbitrate arbitrability where the agreement "commits some types of disputes to litigation"); *Querette v. Chromalloy Gas Turbine LLC*, No. 22-CV-00356 (PMH), 2023 WL 145014, at *4 (S.D.N.Y. Jan. 10, 2023) (holding that the agreement "does not reflect a clear and unmistakable intent to delegate the issue of arbitrability to an arbitrator" where "the parties consented to arbitrate a limited subset of disputes and that arguably this dispute could be brought in a forum other than arbitration").

[redacted]

[redacted]

[redacted]*ee* ECF No. 114-1 § 19, at 40, 61, 104 ([redacted]); *id.* § 20, at 20, 83 ([redacted]); ECF No. 114-2 § 18, at 23 ([redacted]); *id.* § 19, at 67 ([redacted]); *see also NASDAQ OMX Grp., Inc.*, 770 F.3d at 1032 (rejecting similar argument because the "Services Agreement does not clearly and unmistakably direct that questions of arbitrability be decided by AAA rules; rather, it provides for AAA rules to apply to such arbitrations as may arise under the Agreement."); *Armor All/STP Prods. Co. v. TSI Prods., Inc.*, 337 F. Supp. 3d 156, 165 (D. Conn. 2018) (applying New York law and

rejecting argument that incorporation of AAA rules meant the arbitrator should decide the question of arbitrability in light of similar "carve-out provision"); *DDK Hotels*, 6 F.4th at 320-21 (affirming denial of motion to compel arbitration where "narrow scope of the arbitration provision . . . obscures the import of the incorporation of the AAA Rules and creates ambiguity as to the parties' intent to delegate arbitrability to the arbitrator"); *Staley v. Hotel 57 Servs., LLC*, No. 23-770 (L), 2024 WL 1090816, at *3 (2d Cir. Mar. 13, 2024) (finding that given the limited nature of the arbitration provision, which included additional dispute carve-outs, "the incorporation of the AAA's rules, standing alone, does not provide clear and unmistakable evidence of the parties' intent to arbitrate threshold questions of arbitrability"). WW, as the drafter of its own terms, cannot insist on a broader interpretation than the plain language it chose to use.

### E. Plaintiffs' Claims Do Not Fall Within the Scope of the Non-Applicable Arbitration Clause

As described in Section V.D, [redacted]. *See* ECF No. 114-1 § 19, at 40, 61, 104 ([redacted]); *id.* § 20, at 20, 83 ([redacted]; ECF No. 114-2 § 18, at 23 ([redacted]; *id.* § 19, at 67 ([redacted]). Plaintiffs' claims, however, have nothing to do with any WW membership; they arise out of WW's disclosure of their private health data while they interact with the WW ***website***. *See Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 36 (2d Cir. 2002) (explaining that in "determining whether a particular claim falls within the scope of the parties' arbitration agreement, [the] Court 'focus[es] on the factual allegations[']" and whether "those allegations 'touch matters' covered by the [arbitration agreement]").

Anyone can use the WW website regardless of membership. *See* ECF No. 75-12 (WW.com Terms and Conditions of Use) ("[customers] do not have to become a registered user to use [WW's]

Website."). Thus, several members of the Class will have claims even though they never actually purchased a membership from WW and, accordingly, could not possibly be bound by any Membership Agreement. This includes individuals like Plaintiffs Wachtl and Henry, who completed the Clinic Questionnaires but did not themselves purchase those services and thus are not bound by those terms. *See* Section II.E; *see* ECF No. 75-4 at 144:23-145:4 (Q: "So with your correction here today, your representation is Plaintiff Wachtl did not sign up for Weight Watchers using the clinic questionnaire you describe in paragraph 13 through 17 of this declaration?" A: "Yes . . .").

WW acknowledges the website, and claims relating to it, are different from its memberships by maintaining a separate "WW.com Terms and Conditions of Use" which it admits can be used by non-registered users. *See* ECF No. 75-12 (stating these terms apply "to [customers'] use of the websites . . . including, without limitation, [WW.com] and any other website that [WW] may own or operate currently or in the future[.]" ); *id.* ("***[customers] do not have to become a registered user to use [WW's] Website***."). These terms do not contain an arbitration provision and state that disputes relating to or arising out of the use of the "Website" will be resolved in a New York court. *Id.* [redacted] *See* ECF No. 114-1 § 1.B, at 4, 25, 46, 67, 88 ([redacted]); ECF No. 114-2 § 1.B, at 4-5, 41 ([redacted]).

The existence of these separate terms leaves little doubt that Plaintiffs' claims here do not arise out of, and are not covered by, WW's arbitration provisions found in the Membership Agreements and Clinic Terms. *See Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 119 (2d Cir. 2025) (finding plaintiffs' claims fell outside Grubhub's terms because their claims "have nothing to do with" the "use of Grubhub[]" but plaintiffs' "access and use of *other* platforms and restaurants")

(emphasis in original); *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 183 (2d Cir. 2021) (relying on Ninth Circuit precedent and finding arbitration provision in employee agreement did not cover claims relating to separate investment decisions); *FUJIFILM N. Am. Corp. v. Geleshmall Enters. LLC*, 239 F. Supp. 3d 640, 649 (E.D.N.Y. 2017) (finding "gray market claims" were not subject to arbitration because they "exist separate and apart from the conduct that is the subject of the 2014 Agreement."); *Wexler v. AT&T Corp.*, 211 F. Supp. 3d 500, 504 (E.D.N.Y. 2016) (invalidating arbitration clause and explaining a reasonable consumer would not understand an arbitration provision in a cellular company's terms of service would include "every possible dispute" including those "unrelated to cell phone coverage"); *Microsoft Corp. v. Samsung Elecs. Co.*, 60 F. Supp. 3d 525, 531 (S.D.N.Y. 2014) (finding claims fell outside the Royalty and Credit Calculation Reports and Annual Invoices even though the action would require "interpretation of substantive provisions of both agreements" because the "real controversy" did not concern "the discrete accounting and invoicing issues that the parties have agreed to arbitrate"); *see also Armor All/STP Prods. Co.*, 337 F. Supp. 3d at 170 (finding agreement to provide consulting services did not encompass separate claims for "intellectual property rights and unfair competition").

The Second Circuit's decision in *Specht*, 306 F.3d at 37, is particularly instructive on this point. There, plaintiffs downloaded the defendant's "Communicator" product, which was subject to the Communicator license agreement containing an arbitration provision. *Id.* at 38. The Second Circuit affirmed the District Court's decision finding that plaintiffs' privacy and eavesdropping claims fell outside this agreement because it was not the Communicator product that actually performed the eavesdropping, but a separate product offered by the defendant called "SmartDownload." *Id.* Notable to the Court was the fact that, like here, plaintiffs and class members could use the eavesdropping SmartDownload software "even if they are not installing or

upgrading Communicator." *Id.* The same is true here—Plaintiffs and Class Members need not be WW members to have their private health data intercepted from the WW website—confirming their claims fall outside the scope of any membership agreement.

**F. The Class Action Waiver Is Unenforceable**

WW's class action waiver is unenforceable for the same reasons described above, including because the Membership Agreement and Clinic Terms do not apply at all, and certainly do not apply retroactively. *See* Sections V.A and V.E. [redacted] *See* Mot. at 30-31 ([redacted]). The same is not true here.

## VI. CONCLUSION

WW's Motion should be denied in its entirety.

Dated: July 10, 2026

*/s/ Amanda Fiorilla*
Christian Levis
Amanda Fiorilla
Rachel Kesten
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com

Gary M. Klinger (*pro hac vice*)
William J. Edelman (*pro hac vice*)
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com
wedelman@milberg.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

As required by the United States District Court for the Southern District of New York Local Rule 7.1(c), I certify that the document contains 7,847 words, excluding the parts of the document that are exempted by the United States District Court for the Southern District of New York Local Rule 7.1(c). I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 10, 2026

*/s/ Amanda Fiorilla*